SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
BRANDON C. MARTIN (CA Bar No. 269624)
bmartin@hosielaw.com
DARRELL R. ATKINSON (CA Bar No. 280564)
datkinson@hosielaw.com
FRANCESCA M. S. GERMINARIO (CA Bar No. 326208)
fgerminario@hosielaw.com
HOSIE RICE LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111
(415) 247-6000 Tel.
(415) 247-6001 Fax

*Attorneys for Plaintiff*
*SERENIUM, INC.*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

|  |  |
|---|---|
| SERENIUM, INC.,<br><br>              Plaintiff,<br><br>      v.<br><br>JASON ZHOU; JIA XIAOFENG; NEW CENTURY HEALTHCARE HOLDING CO. LIMITED; BEIJING JIARUN YUNZHONG HEALTH TECHNOLOGY COMPANY LTD.; AND JUAN ZHAO;<br><br>              Defendants. | Case No.  5:20-cv-02132<br><br>**COMPLAINT FOR:**<br><br>1. BREACH OF WRITTEN CONTRACT<br>2. MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. § 1836 & 1837;<br>3. MISAPPROPRIATION OF TRADE SECRETS UNDER ILLINOIS TRADE SECRETS ACT;<br>4. TORTIOUS INTERFERENCE WITH CONTRACT;<br>5. CIVIL CONSPIRACY<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Serenium Inc. ("Serenium") by its undersigned attorneys, hereby files its Complaint against Defendants Jason Zhou ("Zhou"); Jia Xiaofeng ("Jia"); New Century Healthcare Holding Co. Limited ("New Century"); Beijing Jiarun Yunzhong Health Technology Company Ltd. ("Beijing Jiarun"), Xin Hong; Zhou Hong; Xu Han; and Juan Zhao (collectively, "Defendants").   For its complaint, Plaintiff alleges, on personal knowledge as to its own acts and on information and belief as to all other matters, as follows:

## I.   INTRODUCTION AND SUMMARY

1.     Serenium is a start-up company founded by a group of seasoned entrepreneurs, executives, and renowned physicians to develop a ground-breaking sleep apnea screening and diagnosis technology (Serenium's "Technology"). Serenium's Technology was developed in collaboration with Dr. David Gozal and his wife, Dr. Leila Kheirandish-Gozal, who are both leading practitioners in pediatric sleep medicine.  Both Drs. Gozal and Kheirandish-Gozal are celebrated professors of pediatrics, widely considered pioneers in the study of childhood sleep disorders.  Dr. Gozal is the current Chair of Child Health at the University of Missouri, editor of numerous sleep medicine journals, and former President of the American Thoracic Society.  Dr. Kheirandish-Gozal is a tenured professor of pediatrics, and Chair of the American Thoracic Society's Sleep and Respiratory Neurobiology Program Committee.

2.     Serenium's other founders are equally accomplished.  David Rosen is an MIT-educated former Managing Director of a Japanese investment bank, and his MIT colleague Cory Zwerling has extensive operations and finance experience in the pharmaceutical and medical device business.

3.     In 2014, prompted by Drs. Gozal and Kheirandish-Gozal's research surrounding the serious neurological and cardiovascular effects of sleep disorders, Serenium's team developed a novel technology for inexpensively testing patients for sleep apnea.  Pediatric sleep apnea is an affliction that harms millions of children because it usually goes undiagnosed due screening costs. Screening for sleep apnea generally requires a full sleep study (polysomnography), which entails an overnight stay in a hospital or clinic.  However, Serenium streamlines the diagnostic process, and rendered wide-scale screening feasible.  Serenium's Technology only requires a proprietary

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1  oximeter, a phone application and a cloud system, which analyzes patient data using Serenium's

2  proprietary neural network-based algorithms.

3      4.    The vastly improved cost-effectiveness of sleep apnea testing provided by Serenium's

4  Technology held obvious appeal for large medical treatment facilities. In 2017, Serenium was

5  approached by Defendant Jason Zhou ("Zhou"), a Canadian businessman whose known business

6  ventures span the British Virgin Islands, Cayman Islands, Hong Kong, and China. Zhou's interest

7  in Serenium was purportedly in his capacity as the founder, CEO, Chairman, and controlling

8  shareholder of New Century Healthcare Holding Co. Limited ("New Century"), a company that

9  operates a series of hospitals in China. New Century is a registered Cayman Islands corporation,

10 which is publicly traded on the Hong Kong Stock Exchange and has significant equity capitalization.

11     5.    Shortly after first contact, Serenium (then based in both Chicago and Palo Alto)

12 entered into a non-disclosure agreement (the "NDA") under Illinois law with New Century. The

13 NDA protected Serenium's proprietary information and trade secrets while the parties discussed their

14 potential business relationship and completed due diligence. Under the NDA, Serenium sent

15 numerous communications and documents, and engaged in dozens of discussions, explaining how

16 its algorithms worked, and how its system operated. Serenium also provided trade secrets relating

17 to its business plan and approach to market.

18     6.    Zhou proposed a Chinese joint venture with a Chinese company, then held out to be

19 part of New Century, called Beijing Jiarun Yunzhong Health Technology Company Ltd. ("Beijing

20 Jiarun"). Zhou claimed that Beijing Jiarun did business as "Panda Pediatrics," an online

21 "community" with over 1 million registered users. New Century's infrastructure for delivering

22 pediatric medical services in China made New Century an attractive business partner to Serenium,

23 but Serenium refused to establish and operate a Chinese joint venture.

24     7.    Zhou then proposed that Serenium form a holding company in Hong Kong with a

25 New Century subsidiary in Hong Kong. The parties entered into a "Framework Contract" under

26 which they committed to forming a Hong Kong "Holding Company" to bring Serenium's technology

27 to China and certain other Asian countries. The Holding Company would be funded by New

28 Century's subsidiary, with Serenium contributing its technology and expertise. Under this

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

SERENIUM, INC.'S COMPLAINT FOR, *INTER ALIA,*
TRADE SECRET MISAPPROPRIATION   - 2 -         Case No. 5:20-cv-02132

arrangement, Beijing Jiarun was to play no part aside from providing secure computer hosting services (internet content provider (ICP) services) in China.

8.      Throughout 2018, and pursuant to the NDA, Serenium continued to provide Zhou and New Century with large amounts of proprietary information and trade secrets, including many trade secrets relating to its Technology and business plans.

9.      However, Zhou delayed, and New Century never formed or funded the Holding Company as required by the Framework Contract.  Then, asserting various pretexts, Zhou purported to terminate the Framework Contract on behalf of the New Century subsidiary, a right neither he nor the subsidiary possessed.

10.      When the Holding Company deal fell through in mid-2019, Zhou and Jia refused to return Serenium's trade secrets, including prototypes of Serenium's proprietary oximeters, technical information regarding Serenium's algorithm, and numerous trade secrets involving business methods, training and planning.   This refusal also breached the terms of the parties' NDA.

11.      Upon breakdown of the relationship between Zhou and Serenium, Serenium discovered that, until March 2019, Beijing Jiarun was actually fully owned by Zhou's wife, Juan Zhao, and not New Century, as Zhou had represented.  Now, Beijing Jiarun—which never provided any sleep services prior to Serenium's disclosures to Zhou and New Century under NDA—is offering services competing with Serenium.  The service purports to allow parents the ability to monitor their children's sleep quality by making use of "wearable smart devices and AI intelligent algorithms" and is marketing an app displaying a watch oximeter visibly similar to the one used by Serenium.

12.      New Century is also diagnosing and treating patients using Serenium's proprietary trade secret information. New Century is, even now, using Serenium's misappropriated intellectual property to sell millions of dollars' worth of services competing directly with Serenium.

## II.    PARTIES

13.      Plaintiff, Serenium Inc. is a Delaware corporation with its principal place of business at 4065 Wilkie Way, Palo Alto, California 94306, and a substantial presence in Chicago, Illinois.

14.      Defendant, Jason Zhou is a resident of China who renounced his Chinese citizenship

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

in 2012 to become a citizen of Canada.  He resides at 7 Kenaston Gardens, North York, Ontario, Canada, M2K1G7.  He is a corporate officer and controlling shareholder of New Century Healthcare Holding Co. Limited ("New Century"), owning 32% of New Century's shares.

15.     Defendant New Century Healthcare Holding Co. Limited is a company incorporated in the Cayman Islands, and listed on the Hong Kong Stock Exchange (listed as: HK 01518).  New Century's address is Cosco Tower, Unit 3214, Grand Millennium Plaza, 183 Queen's Road, Central Sheung Wan, Hong Kong.  New Century also has a principal place of business in Beijing, China.

16.     Defendant Beijing Jiarun Yunzhong Health Technology Company Ltd. ("Beijing Jiarun") is a privately-held Chinese company with its principal place of business in Beijing, China. At relevant times, Beijing Jiarun was entirely owned by Zhou's wife, Juan Zhao.  Beijing Jiarun shares extensive business ties with New Century, including holding closely-related trademarks, sharing numerous employees and officers, and engaging in widespread cross-promotion and physician scheduling.

17.     Defendant Jia Xiaofeng (hereinafter "Jia") is the Company Secretary of New Century, as well as the Director, Legal Representative, and—as of March 2019—the CEO and partial owner of Beijing Jiarun.  He is believed to be a citizen of China.  He was actively involved in all aspects of Zhou's negotiations with Serenium, and Beijing Jiarun's misappropriation of Serenium's trade secrets.

18.     Defendant Juan Zhao ("Zhao") is Zhou's wife.  She was the only shareholder and 100% owner of Beijing Jiarun, and a corporate officer of the company up until March 2019.  Zhao is Beijing Jiarun's controlling shareholder, between her direct and indirect ownership through Zhuhai Yunzhong Equity Investment Enterprise (Limited Partnership).

## III.   INTRADISTRICT ASSIGNMENT

19.     Pursuant to Civil Local Rule 3-2(c), a substantial part of the events giving rise to the claims alleged in this Complaint occurred in Palo Alto, California.  Thus, assignment to the San Jose Division would be proper.

## IV.   JURISDICTION AND VENUE

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

20.     This Court has personal jurisdiction over Zhou, Jia, Zhao, New Century and Beijing Jiarun based on their contacts with California, including:

a.   Zhou contacting Serenium, knowing that Serenium was headquartered in California, to propose a business venture with New Century;

b.   Zhou signing as officer of New Century and entering into the Non-Disclosure Agreement with Serenium, a company headquartered in California;

c.   New Century sending written correspondences to Rosen in Palo Alto as part of the business relationship with Serenium;

d.   Zhou and Jia repeatedly communicating with and conducting conference calls with Serenium executives in Serenium's offices in Palo Alto and San Diego as part of their efforts to misappropriate Serenium's trade secrets;

e.   Zhou, Zhao, and Jia downloading and/or directing others to download electronic files constituting trade secrets from California;

f.   Zhou and Jia directing New Century to send sleep studies to California to be analyzed and evaluated by Serenium in California;

g.   Zhou, Zhao, and Jia causing Beijing Jiarun and New Century to misappropriate trade secrets provided by Serenium to New Century, knowing the injury would occur mostly in California, where Serenium developed its trade secrets and where much of its business was conducted;

h.   Zhou calling from Los Angeles into a New Century Board meeting on August 28, 2018 to discuss Serenium, while visiting his child, who is a student at a university in Southern California.

21.     In addition, with respect to all Defendants, the Court has personal jurisdiction over them because they engaged in a concerted conspiracy to misappropriate Serenium's trade secrets, which caused injury to Serenium in California, and which involved extensive tortious actions directed at California, including those set forth in paragraph 19 above.

22.     Finally, in the absence of minimum contacts with California, personal jurisdiction over Defendants is also proper under Fed. R. Civ P. 4(k)(2), because each has minimum contracts

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

1   with the United States and is no more amenable to personal jurisdiction in any particular state than

2   in California.

3       23.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the

4   parties are citizens of different states and the amount in controversy exceeds $75,000.

5       24.     This Court also has federal question jurisdiction over the Defend Trade Secrets Act,

6   18 U.S.C. § 1836.  This Court has original jurisdiction over this controversy for misappropriation of

7   trade secrets claims pursuant to 18 U.S.C. § 1836(c) and 35 U.S.C. § 1331.  This Court has

8   supplemental jurisdiction over the controversy for all other claims asserted herein pursuant to 28

9   U.S.C. § 1367.

10      25.     Venue is proper in this District under 28 U.S.C. §§ 1391(c)-(d) and 1400(b) because

11  this is a District in which Defendants are subject to the Court's personal jurisdiction with respect to

12  this action, and/or the District in this State where Defendants have the most significant contacts.

13  **V.     FACTUAL ALLEGATIONS**

14      **A.   Serenium's Groundbreaking Technology**

15      26.     In 2014, Serenium was founded to develop products to diagnose and treat sleep apnea.

16      27.     Sleep apnea is common and significantly under-diagnosed problem in children.  It is

17  estimated that one to five percent of children suffer from obstructive sleep apnea.  All children who

18  snore (12% of children) are considered "high risk" and should be evaluated for sleep apnea.  Sleep

19  apnea in children is associated with numerous negative health consequences, including impaired

20  growth, cognitive problems, cardiac and metabolic problems, and even death.

21      28.     However, in order to effectively screen for sleep apnea in children, a clinician is

22  required to conduct a sleep study (the formal medical term is "polysomnography"), typically

23  performed in an in-patient setting, with various devices monitoring 11 different bodily functions.

24  Such sleep studies are costly and, for certain populations, cost- and capacity-prohibitive as a

25  screening or diagnosis tool.

26      29.     Dr. David Gozal is one of the key consultants to Serenium's product development.

27  Dr. Gozal is widely recognized as the world's leading expert in pediatric sleep apnea.  He is presently

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1  the Chair of Child Health at the University of Missouri.  He has published over 600 peer-reviewed

2  articles, was the former president of the American Thoracic Society, and up until 2018, was the

3  Herbert T. Abelson Professor at the University of Chicago School of Medicine as a Pritzker scholar.

4     30.     Through years of research and development, Dr. Gozal, on behalf of Serenium, led a

5  team in the development of a novel way to screen for sleep apnea in both children and adults.

6     31.     Dr. Gozal's team gathered data from extensive sleep studies, and then developed an

7  algorithm that reliably detects sleep apnea using readings from fewer clinical data inputs.  The

8  algorithm applies machine learning and artificial intelligence to a smaller subset of data, all of which

9  can be captured with a consumer-grade oximeter, modified to certain proprietary specifications.

10     32.     Serenium's research and development of its product included two significant peer-

11  reviewed studies, which utilized Dr. Gozal's own long-standing relationship with Beijing Children's

12  Hospital ("BCH") (owned by Capital Medical University).

13     33.     In 2017, Serenium's algorithm was tested in 4,191 patients from 13 different clinical

14  centers around the world (with about 700 from BCH).   The data supported the analytical quality of

15  this algorithm.  The study resulted in a paper published in the *American Journal of Respiratory and*

16  *Critical Care Medicine*. *See* Roberto Hornero, et al., Nocturnal Oximetry–based Evaluation of

17  Habitually Snoring Children, 196 *American Journal of Respiratory and Critical Care Medicine*

18  1591–1598 (2017).

19     34.     Serenium thereafter conducted a study of both the algorithm and a prototype of its

20  modified oximeter on 432 patients in collaboration with BCH. This study showed strong diagnostic

21  testing for the prototype system, which correctly identified 96% of the children with sleep apnea,

22  and resulted in a peer-reviewed paper in 2018 accepted for publication by the *European Respiratory*

23  *Journal*. *See* Zhifei Xu, Gozal, et al., Cloud algorithm-driven oximetry-based diagnosis of

24  obstructive sleep apnoea in symptomatic habitually snoring children*, 53 *European Respiratory*

25  *Journal* 1801788 (2019).

26     35.     Serenium's ability to reliably screen for pediatric sleep apnea using only a consumer-

27  grade oximeter and an algorithm was unique.  There are no known peer-reviewed studies showing

28  that any system, other than Serenium's, can effectively screen for pediatric sleep apnea other than

through a full sleep study.  Nor are there any other companies in the world known to have developed such a system.

36.    Serenium's Technology provides two tremendous benefits:

37.    First, it allows medical providers to screen their patients for sleep apnea by providing parents with Serenium's proprietary oximeter and a mobile phone application. The study can be conducted entirely at home, while children sleep in their own beds.  This makes screening for sleep apnea far less intrusive and far less expensive than a comprehensive sleep study, which requires an overnight stay in a clinic of hospital with sensors monitoring 11 bodily functions.

38.    Second, Serenium's technology will eventually allow patients to directly and reliably screen for sleep apnea at home, with *no* doctor involvement at all.

39.    Serenium's system and pre-existing relationship with BCH presented a significant business opportunity.  Each year, BCH sees over 30 million patients, of whom approximately 1.25 million should be annually screened for sleep apnea.  Traditional testing for sleep apnea, for children in particular, is cost-prohibitive and impractical in China.  In view of its pre-existing relationship with BCH, the large patient population in China and at BCH, and the need for cost-effective diagnosis there, Serenium focused its business efforts on entering the Chinese market.

40.    Recognizing this opportunity, Serenium developed numerous proprietary business plans and methods relating to bringing its Technology to the Chinese market.

### B.  Zhou Approaches Serenium and Proposes a Joint Venture

41.    On November 13, 2017, Serenium's co-founder, David Rosen, was contacted by Jason Zhou over "WeChat," a Chinese internet communication tool that allows real time communications in multiple languages.

42.    At the time, Rosen knew Zhou only as the Chairman and CEO of New Century, a company that runs several private hospitals in China including a private children's hospital adjacent to, and in collaboration with, BCH.

43.    Given Serenium's focus on the Chinese market, New Century's existing infrastructure for providing health care to the Chinese market, and New Century's own relationship with BCH,

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

New Century seemed like a natural business partner for Serenium.

44.     Following initial discussions over WeChat, Rosen met with Zhou in Beijing on November 21, 2017.  After this meeting, on November 24, 2017, New Century and Serenium executed a Mutual Non-Disclosure Agreement (the "NDA"), allowing Serenium to share its proprietary information with New Century while the parties evaluated the feasibility of collaboration. *See* Ex. A (NDA).  The NDA sets forth Serenium's principal place of business as Palo Alto, California.

45.     The NDA broadly defined "Confidential Information" to include, among other things, business plans, technical information, know-how, concepts and trade secrets. *See* Ex. A, at D.

46.     The NDA required New Century to take steps to protect any Confidential Information provided by Serenium.  It prohibited New Century from sharing Serenium's Confidential Information with anyone who was not its employee or agent.  With respect to employees and agents, the NDA required New Century to use the provided Confidential Information "solely for the purposes of determining whether or not [New Century] would like to be part of an Agreement with [Serenium] for the distribution of [Serenium's] services." *Id.* at B.

47.     The NDA also provided that "all provisions of confidentiality concerning Confidential Information" shall survive the termination this Agreement. *Id.* at E.

48.     The NDA also provided that it was governed by Illinois law. *See id.* at I.

49.     Following execution of the NDA—at Zhou, Jia, and New Century's request— Serenium sent to New Century, from Palo Alto and Chicago, hundreds of confidential and proprietary electronic company files regarding its company, technology, business plans, and methods.

50.     In follow-up meetings with Zhou, Jia, and others, Serenium explained in detail the problems posed by sleep apnea testing in both children and adults.  Serenium also discussed the logistical challenges of screening for pediatric sleep apnea, and the way Serenium's technology addressed this problem specifically.

51.     Neither Zhou nor New Century had detailed knowledge or expertise with respect to pediatric sleep apnea, which at the time was typically not treated within at New Century hospitals, but rather referred to other institutions.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

SERENIUM, INC.'S COMPLAINT FOR, *INTER ALIA,*
TRADE SECRET MISAPPROPRIATION          - 9 -

Case No.  5:20-cv-02132

52.     Zhou understood, however, that there was an enormous business opportunity provided by Serenium's technology. The population in China, the pre-existing relationship Serenium had forged with BCH, and the widespread occurrence of both adult and pediatric sleep apnea were all perfectly poised to bring new patients into New Century's existing and planned hospitals and clinics across China.

53.     Zhou also represented to Serenium that an arm of New Century called "Panda Pediatrics" had a "community" of over 1 million registered users and a wide network of doctors (currently over 1,000 doctors) who provide consultations over the internet.

54.     At Zhou's direction and with Serenium's help, New Century developed a financial model for the revenues that it expected from launching a direct to consumer product in China. The model estimated hundreds of millions of dollars in revenue over the next few years.

55.     Although Serenium was then discussing its technology with a number of other companies, Zhou insisted that a deal with New Century would be most profitable for both parties.

56.     Given New Century's established infrastructure for providing pediatric medical services in mainland China, New Century was an attractive business partner for Serenium.

57.     New Century and Serenium so agreed to a Term Sheet for a potential deal to bring Serenium's technology to market. The term sheet contemplated a joint venture between New Century and Serenium. The joint venture would be funded by New Century, which would take a 60% ownership while Serenium would take a 40% ownership. In addition to Serenium's ownership, New Century would pay Serenium a fee and the joint venture would pay Serenium royalties for use of its technology.

### C.     Zhou Unsuccessfully Attempts to Insert Beijing Jiarun Into the Joint Venture

58.     Following the term sheet, Zhou proposed a "framework contract" with Serenium.

59.     However, the counterparty to Serenium in the Proposed Framework Contract was not New Century, but rather Beijing Jiarun, the Chinese company that does business as "Panda Pediatrics."

60.     At the time, Beijing Jiarun was held out by Zhou and Jia, and the officers of New

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1  Century, to be part of New Century.  Zhou even named Beijing Jiarun as a "related party" in the

2  Framework Contract he proposed.

3        61.    That Beijing Jiarun was part of New Century was echoed by Jia, New Century's

4  company secretary, who repeatedly explained that the New Century Board of Directors was fully

5  informed of the Proposed Framework Agreement, suggesting the Board, too, treated it as part of New

6  Century.

7        62.    For example, in a WeChat conversation between Rosen and Jia on January 22, 2018,

8  Jia represented that the New Century Board would be receiving a full presentation about the Proposed

9  Framework Contract involving Serenium and Beijing Jiarun.

10        63.    However, as described below, Serenium has since discovered that these

11  representations by Zhou and New Century's officers about Beijing Jiarun were false, and meant to

12  conceal self-dealing by Zhou.

13        64.    Regardless, while it had no knowledge at the time of Zhou's attempt at self-dealing,

14  Serenium would not close a contract with Beijing Jiarun as the counter-party for other reasons.

15  Serenium discovered various issues unique to China that posed significant risks to Serenium if it

16  formed a Chinese joint venture.  In particular, because of the manner in which China accounted for

17  intangible assets, which were the only asset Serenium would be contributing to the joint venture,

18  there was risk that Chinese authorities would not recognize Serenium's ownership interest in the

19  joint venture—a result that could dramatically impact Serenium's ability to profit from the joint

20  venture.

21        65.    Serenium so refused to do a deal with Beijing Jiarun directly as a Chinese joint

22  venture, and the parties appeared to be unable to reach agreement.

23        **D.**  **New Century and Serenium Enter The Framework Contract**

24        66.    Facing a complete collapse of his negotiations with Serenium, Zhou again approached

25  Rosen via WeChat, knowing that Serenium was based in Palo Alto, California.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

67.     Zhou proposed that, [1] instead of a Chinese joint venture, the counterparty to Serenium could instead be a Hong Kong entity, and that the parties would form a Hong Kong Holding Company, which would in turn work with a Chinese entity. This structure eliminated the risk of that Serenium's ownership interest would not be honored.

68.     However, a Chinese entity would still be required to host Serenium's algorithm on the internet for use in China.  Thus, Zhou inserted Beijing Jiarun into the Framework contract as the company that would solely provide the cloud hosting services within China.  Beijing Jiarun was not itself a party to the Framework Contract.

69.     Ultimately, on April 13, 2018, New Century Healthcare (International) Co. Limited ("New Century Sub") and Serenium executed the Framework Contract.

70.     The Framework Contract provided for the creation of a Hong Kong "Holding Company" that would hold exclusive license to Serenium's technology in China, Hong Kong, Macao, Taiwan, Japan and South Korea (the "Cooperation Territories.") under a separate Licensing Agreement.

71.     Serenium would provide technical expertise and would license its technology to the Holding Company for a combination of (1) a series of payments totaling $1 million—$500,000 within 72 hours of execution of the Framework Contract, $250,000 upon formation of the Holding Company within 60 days of signing the Framework Contract, and the final $250,000 upon various development goals; (2) a 9% royalty on all gross product end-user sales by the Holding Company until its IPO; and (3) a 40% interest in the Holding Company.

72.     New Century Sub would have a 60% equity stake, with New Century Sub providing initial funding for the holding company and would also receive a 3% royalty.  The Framework Contract contemplated that the Holding Company would have an initial public offering with a valuation of at least 4 billion HKD or approximately $500 million USD, at which point, with appropriate financial guarantees on Serenium's ownership percentage of the company on the IPO

---

[1] New Century and Serenium also discussed New Century acquiring Serenium's Technology outright for use in the Cooperation Territories for $75 million.

date, Serenium would grant the Holding Company a perpetual license of its technology.

73.     The Framework Contract represented that New Century Sub had already conducted due diligence for creation of the Holding Company and that all due diligence was "completed and acceptable" at the time of execution.

### E.   Zhou Kills The Holding Company But Acquires Serenium's Trade Secrets Anyways

74.     After signing the Framework Agreement, New Century made the first $500,000 payment into Serenium's account with JP Morgan Chase Bank, in Palo Alto, California.

75.     Serenium, in turn, continued to both detail and supply Serenium trade secrets, as well as work to develop the pediatric diagnostic system contemplated by the Framework Contract.

76.     In May, Zhou and Jia, New Century's Company secretary, met with Rosen and Dr. Gozal in Shanghai to discuss the project.

77.     However, in breach of the Framework Agreement, at the direction of Zhou, New Century Sub did not form the Holding Company by June 13, 2018 as contractually required, and did not make the next scheduled payment to Serenium.

78.     Pursuant to continuous assurances by Zhou, Jia and other officers at New Century represented that they still intended to form the Holding Company, Serenium continued to send its trade secrets to officers and agents of New Century.

79.     As the Holding Company remained unformed, Serenium was forced to engage regulatory consultants on its own to conduct the diligence that New Century Sub had represented it had already completed. During this process, Serenium learned that Chinese regulatory requirements mandated clinical involvement to deliver even a screening test.  When Serenium shared this problem with Zhou, Zhou declared that it was no impediment to offering the test direct-to-consumer, and that the parties could simply ignore Chinese regulatory requirements.

80.     Serenium refused to disregard Chinese regulatory requirements.  Instead, it pivoted to a work-around business method.  Serenium designed a physician-diagnosis model, whereby a physician would review the Serenium test results and offer their independent endorsement of the results.  Serenium disclosed this model to Zhou and New Century.  While this work-around would

1    slightly delay the launch of the technology, it would still allow the Holding Company to bring

2    Serenium's technology to the Chinese market.

3        81.    Moreover, following Chinese FDA approval in 2020 or 2021, Serenium's technology

4    could be used for a consumer diagnostic medical product (a "Medically Approved Activity

5    Product").

6        82.    Despite Serenium's new projections of a slight delay to the overall launch schedule,

7    the physician-diagnosis model was approved by Zhou, Jia, and other corporate officers at New

8    Century in early July 2018.

9        83.    Jia and other New Century employees represented that New Century was prepared to

10   form the Holding Company.  Plans and presentations were developed and reviewed with Rosen for

11   an investor "road show" supporting the Interim Report for the first half of 2018.  The road show's

12   purpose was to communicate the optimistic potential for New Century's future by promoting this

13   new Holding Company and touting the projected treatment of millions of additional children in

14   China.

15       84.    In preparation for the road show, New Century asked Dr. Gozal to prepare a separate

16   consulting agreement between himself and New Century.  New Century then prepared a joint press

17   release with Serenium, announcing the formation of the joint business relationship and consulting

18   agreement, and the joint plans to test 50 million patients within the next ten years. This press release

19   also was reviewed by BCH.  New Century further prepared a disclosure of the Framework Agreement

20   to be included into New Century's Interim Report for the first half of 2018, scheduled to be released

21   following New Century's board of directors' meeting on August 28, 2018.

22       85.    New Century also requested that Serenium send New Century examples of its

23   proprietary oximeter from the United States, which Serenium did in anticipation for the

24   announcement of the joint venture.

25       86.    New Century also requested that Serenium score various sleep studies using its

26   technology and shipped them to Serenium, in this country.   Serenium scored them in California and

27   returned them as requested.

28       87.    At the time of the New Century board meeting, preparing to move forward as planned

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

with the launch of the Holding Company, Rosen was in New Century's offices in Beijing.  Rosen was informed that Zhou was not in China, but would be calling into the board meeting from Los Angeles, where he was visiting one of his children in college.

88.     However, at the August 28, 2018 board meeting, New Century, at Zhou's direction and with the Board's approval, resolved not to form the Holding Company.

89.     Following the board meeting, New Century did not issue the planned press release, execute the consulting agreement with Dr. Gozal, or disclose the Framework Contract in the Interim Report, as it had represented to Serenium it would do.

90.     Zhou made this decision because he intended to have Beijing Jiarun use Serenium's trade secrets to launch its own internet-based pediatric sleep services.

91.     However, he still wanted Serenium to provide further information about its trade secrets so that Beijing Jiarun and New Century could continue to misappropriate them.

92.     Thus, following the board meeting, New Century purported to need further proof of the efficacy of Serenium's technology, beyond the existing clinical trial with 432 patients from BCH.

93.     Serenium continued to share its proprietary information, business plans and methods, testing equipment, and trade secrets to evince its system's proven effectiveness.

94.     In October 2018, Serenium trained approximately 200 doctors—represented to be employees of New Century—in how to use Serenium's system to diagnose and treat pediatric and adult sleep apnea. Serenium also trained a subset of these doctors in BCH's sleep lab facility.

95.     However, even though this event was described as a great success and touted on New Century's website and in social media, New Century omitted any reference to Serenium, and Zhou still refused to form the Holding Company.

### F.   Zhou Fails To Return Serenium's Trade Secrets

96.     After Zhou still refused to form the Holding Company in late 2018, relations became increasingly heated between Serenium and New Century.

97.     New Century officers, at Zhou's direction, began to invent causes for the delay, and complained of issues with the technology that had no basis in fact.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

98.     Jia, on behalf of Zhou, threatened Serenium that if they did not deliver their product, New Century would terminate the Framework Contract and, notwithstanding the NDA, attempt to provide pediatric sleep testing through a competitor.

99.     Following further unsuccessful discussions and negotiations, in March 2019, New Century Sub purportedly terminated the Framework Agreement, citing certain conditions precedent allegedly not being met.   Serenium responded that it had met all relevant deadlines, but the relationship had clearly broken down by this point.

100.    Although New Century Sub purported to terminate the relationship, it failed to return and/or destroy Serenium's trade secrets.  Indeed, despite Serenium's explicit and repeated requests that Zhou, Jia, and New Century return Serenium's proprietary oximeters, Defendants have—to this day—refused do so.

101.    New Century is now diagnosing and treating patients using the trade secrets disclosed by Serenium.  Additionally, New Century is providing pediatric insurance services in partnership with several Chinese insurance companies that now cover insured sleep diagnostics and services in China—a particularly unconventional offering among insurers.

### G.  Beijing Jiarun Uses Serenium's Trade Secrets

102.    Serenium also has discovered that Beijing Jiarun appears to be using Serenium's trade secrets to provide its own pediatric sleep services. Prior to Serenium providing its trade secrets to New Century, Beijing Jiarun never offered sleep-related services.  However, now, Beijing Jiarun provides online patient consultations through its Panda Pediatrics app, a product that it did not have prior, and many of the New Century doctors previously trained under NDA by Serenium in pediatric sleep apnea in October 2018 are identified by Beijing Jiarun as providing patient consultations on its behalf.   That is, Beijing Jiarun is using the doctors Serenium trained, along with Serenium's proprietary technology, to test patients. The company is doing exactly what the joint venture intended to do, but now simply without its former partners.

103.    Beijing Jiarun is purporting to offer parents the ability to monitor their children's sleep through its App.  Moreover, it is marketing its App (both a consumer version and a pediatrician

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

version) by displaying a watch oximeter similar to the one used and tested by Serenium. It also references the use of "wearable smart devices and AI intelligent algorithms" to monitor sleep quality.

104.    Beijing Jiarun is scaling rapidly, and based on public reports, expects to double its revenues by the next fiscal year. Beijing Jiarun is selling millions of dollars of services exploiting Serenium's misappropriated trade secrets.

105.    Additional events suggest that Zhou and his companies further misappropriated Serenium's trade secrets.

106.    For example, on December 22, 2018, Serenium's Chief Technology Officer, Shimon Shmueli left Serenium.  Shmueli had direct access to Serenium's algorithm, the one major trade secret not shared in full with New Century.

107.    In ongoing negotiations at the time, New Century mentioned they had been in contact with Shmueli.

108.    Shmueli later informed Serenium's CEO that he was joining or forming an unidentified "joint venture" that would compete with Serenium. Other than Serenium, there are no other companies known to have developed this sort of system for screening for pediatric sleep apnea, nor are there any published studies supporting this type of system other than the studies supporting Serenium's system.

109.    When Serenium then demanded return of its company laptop, Shmueli deleted all files and re-formatted the hard drive before sending the laptop back to Serenium's offices.

## H. <u>Zhou's Self-Interested Self-Dealing</u>

110.    Finally, even though he is a corporate officer of New Century, Zhou can be held personally liable for his conduct because he is additionally acting out of self-interest and not solely in the interests of New Century.

111.    Contrary to Zhou and Jia's representations to Serenium, Beijing Jiarun is ***not*** owned by New Century at all, but instead is a separate vehicle for Zhou to enrich himself.  Until March 2019, Beijing Jiarun was owned entirely by Zhou's wife, Juan Zhao, with no recorded ownership interests flowing back to New Century.  Zhao's direct ownership, outside of New Century, is

confirmed by Beijing Jiarun's publicly filed documents in China, which Serenium has now located. New Century's own corporate filings, which neither mention any ownership interest in Beijing Jiarun. nor disclose the numerous interconnected business activities of New Century and Beijing Jiarun, confirm that Beijing Jiarun was never owned by New Century.

112.     Because he has an interest in Beijing Jiarun outside of New Century, many of the benefits of misappropriating Serenium's trade secrets, and causing New Century to breach the NDA, flow directly to Zhou and not to New Century.

## I. New Century Officers and Zhao Facilitated the Misappropriation Out of Self-Interest

113.     Zhou's conduct was supported and assisted by other New Century's officers (and ratified by its Board of Directors).

114.     Jia, New Century's Company Secretary, is also Beijing Jiarun's CEO.

115.     In March 2019, in an apparent effort to obscure his own control of Beijing Jiarun and to reward executive officers at New Century, Zhou changed the ownership of Beijing Jiarun. Zhao's direct ownership was significantly reduced to 9.5%. The other new owners, at least nominally, are Jia, at 4.5%, and another entity, Zhuhai Yunzhong Equity Investment Enterprise Limited Partnership ("hereinafter, "Zhuhai"), with controlling ownership of 86% of shares.

116.     Zhuhai has four limited partners, with Zhao owning 49%, Jia owning 13.5%, and three other New Century executive officers, Xin Hong (New Century's Chief Operation Officer), Zhou Hong (New Century's Chief Medical Officer), and Xu Han (New Century's Chief Financial Officer) owning 12.5% each.

117.     Thus, Jia a New Century officer with access to Serenium's trade secrets, profits personally from helping Beijing Jiarun misappropriate Serenium's trade secrets.[2]

---

[2] Zhou, Xin Hong, and Xu Han all sit on New Century's Board of Directors. Given the extensive business dealings between New Century and Beijing Jiarun, including Board approval of the Framework Contract, and the failure to disclose any such dealings in any of New Century's corporate filings, the Board clearly possesses some knowledge of the misappropriated material's disclosure to Beijing Jiarun, and has abetted it.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

118.    Zhao, Zhou's wife, was not an officer of New Century. However, in addition to owning 100% of Beijing Jiarun's shares, she was an officer of Beijing Jiarun until March 2019. Zhao has knowledge of Beijing Jiarun's misappropriation of Serenium's trade secrets, and benefits personally from the continuing misappropriation of Serenium's trade secrets.

119.    All Defendants were involved in New Century's refusal to return Serenium's trade secrets, and each is aware that New Century and Beijing Jiarun are using Serenium's disclosed trade secrets without permission.

120.    This course of conduct by each Defendant has now cost Serenium the opportunity to bring its technology to the Chinese market.

121.    Accordingly, Serenium brings this lawsuit.

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT
### (Against New Century, Zhou, Jia)

122.    Plaintiff incorporates by reference paragraphs 1 through 121 of this Complaint as if fully stated herein.

123.    Serenium was a California corporation with its principal place of business in Palo Alto, California.  New Century entered into a Nondisclosure Agreement ("NDA") with Serenium on November 25, 2017.  The NDA constituted a valid and enforceable contract between Serenium and New Century. The NDA is attached hereto as Ex. A, and incorporated by reference.

124.    Serenium performed or substantially performed under the NDA and/or any non-performance by Serenium was excused.

125.    New Century and its officers and agents were subject to the NDA.

126.    The NDA is reasonable and serves to protect Plaintiff's Confidential Information and Trade Secrets, customer relationships and goodwill, and its investments in labor and resources.

127.    The NDA prohibited New Century from sharing any of Serenium's Confidential Information with any employees or agents unless the employee or agent had a "need-to-know" and

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

1    New Century secured such employee's or agent's agreement to abide by the terms of the NDA. *See*

2    Ex. A at B.  Provisions regarding confidentiality "survive the termination" of the NDA.  *See id.* at E.

3    Zhou and Jia were aware that they were subject to the provisions of the NDA, as officers of New

4    Century.  Zhao was aware that her husband, Zhou, was subject to the NDA.

5          128.   The NDA further prohibited New Century from using Serenium's Confidential

6    Information for any purpose other than evaluating whether or not New Century would like to be part

7    of an Agreement with Serenium for the distribution of Serenium's services.  *See* Ex. A at B.

8    Defendants' use of Serenium Confidential Information, including certain information identified as

9    trade secrets, in connection with Defendants' own sleep apnea diagnostic and treatment system, as

10   opposed to solely in relation to Defendants' assessment of whether to form a separate formal business

11   venture with Serenium, was a violation of, at least, Paragraph B of the NDA.

12         129.   New Century, Zhou, and Jia breached the NDA by, among other things, using

13   Serenium's Confidential Information outside the scope of use of the Confidential Information under

14   NDA, Ex. A at B; using Serenium's Confidential Information to provide sleep apnea services at New

15   Century facilities, *id.* at B; disclosing Serenium's Confidential Information to agents or employees

16   of third parties without Serenium's knowledge or consent; failing to obtain Beijing Jiarun's

17   agreement to be bound by the NDA, *id.* at B; using Serenium's Confidential Information to help

18   Beijing Jiarun develop and launch its own pediatric sleep apnea diagnostic services, *id.* at B; and/or

19   wrongfully retaining and refusing to return Serenium's trade secrets, *id.* at B.

20         130.   Serenium has suffered damage, including the loss of its trade secrets and the loss of

21   its business opportunity in China, and will continue to be damaged as a direct and proximate result

22   of Defendants' breach of the NDA.  Defendants have also been unjustly enriched by their use of

23   Serenium's Confidential Information in violation of the NDA.

24         131.   The NDA further permits the prevailing party in any litigation to enforce its terms to

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1   recover its reasonable attorney's fees and litigation costs.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 AND 1837 *ET SEQ.*, (Against Zhou, Jia, New Century and Beijing Jiarun)

132.   Serenium incorporates by reference paragraphs 1 through 131 of this Complaint as if fully stated herein.

133.   The actions of Defendants, as described above, constitute violations of one or more provisions of the Defend Trade Secrets Act of 2016 ("DTSA").

134.   The DTSA provides, in relevant part: "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).

135.   Serenium's proprietary, confidential technical and business information disclosed to Defendants constitutes trade secrets under 18 U.S.C. § 1839(3).  The misappropriated trade secrets include:

    a.   Detailed technical information about how Serenium's screening system worked;

    b.   Serenium's proprietary modified oximeters;

    c.   Clinical data underlying the creation of Serenium's algorithm;

    d.   Hundreds of files constituting business models, methods, and ideas about how to market Serenium's system and how to monetize the diagnosis and treatment of sleep apnea in China;

    e.   A business model for how the joint venture could use the Serenium system by including doctors in the diagnosis and treatment while the system was waiting for Chinese approval as a direct-to-consumer or patient system; and

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

1

f.   Physician sleep test score reports for the system tested with New Century.

2

136.   Serenium's trade secrets, and other confidential information, were disclosed under

3

the NDA between Serenium and Defendant New Century.

4

137.   Serenium's confidential information and trade secrets shared with New Century,

5

Zhou, and Jia derive independent economic value from not being generally known to the public, or

6

to others who can obtain economic value from its disclosure or use.  They formed the backbone for

7

Serenium's technology and business plans and their possession and use by another company caused,

8

and continues to cause, significant competitive damage to Serenium.

9

138.   Serenium took reasonable measures for maintaining the secrecy of this information,

10

including treating the information as highly confidential, marking the information "Confidential,"

11

monitoring Serenium facilities, maintaining password controls for network and system access,

12

providing this information to third parties only under NDA, and otherwise limiting access to its

13

material to Serenium employees.  Serenium provided Confidential Information to New Century in

14

confidence, only after execution of the NDA, and only subject to the NDA.

15

16

139.   New Century and its officers and agents were subject to the NDA.  Zhou, as signatory

17

for New Century, knew that New Century was subject to the NDA.  Jia, through his interactions with

18

Serenium and Zhou, knew that New Century was subject to the NDA.  Beijing Jiarun, through its

19

CEO Jia and its involvement in discussions about a business venture between New Century and

20

Serenium, knew that New Century was subject to the NDA.  Zhao knew or should have known that

21

New Century was subject to the NDA due at least to her majority ownership of Beijing Jiarun, and

22

23

close personal relationship with New Century's signatory on the NDA.

24

140.   Zhou, Jia, and New Century have misappropriated Serenium's trade secrets by,

25

among other things, obtaining them pursuant to a non-disclosure agreement, and using the protected

26

27

information outside the scope of the NDA without Serenium's authorization and in violation of New

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

Century, Zhou, and Jia's contractual commitments to Serenium to provide sleep apnea treatment and services through New Century. New Century is now diagnosing and treating patients using the trade secrets disclosed by Serenium

141. New Century, Zhou, and Jia have also wrongfully retained and refused to return Serenium's trade secrets.

142. Zhou, Jia, and New Century have misappropriated Serenium's trade secrets by, among other things, wrongfully disclosing Serenium's trade secrets to Beijing Jiarun.

143. Zhao and Beijing Jiarun have misappropriated Serenium's trade secrets by, among other things, wrongfully acquiring Serenium's trade secrets from Zhou, Jia, and New Century, knowing the same to have been disclosed without Serenium's authorization and in violation of New Century, Zhou, and Jia's contractual commitments to Serenium.

144. Zhao and Beijing Jiarun have also misappropriated Serenium's trade secrets by, among other things, wrongfully using the protected information to offering pediatric sleep services through Beijing Jiarun and advertising a system nearly identical to Serenium's Technology, using that wrongfully acquired Technology.

145. Defendants' wrongful acquisition, disclosure, and use of Serenium's Technology constituted, and continues to constitute, trade secret misappropriation.

146. Defendants have acted willfully and maliciously in misappropriating Serenium's trade secrets.

147. Defendants have misappropriated or threatened to misappropriate Serenium's trade secrets related to a product or service used in, or intended for use in, foreign commerce.

148. Serenium has been damaged by Defendants' misappropriation of its trade secrets by, among other things, losing the business opportunities that Beijing Jiarun and New Century are now pursuing, and by losing the opportunity to sell its Technology to Zhou or others. Serenium will

1    continue to be damaged as a direct and proximate result of Defendants' misappropriation of

2    Serenium's trade secrets.  Defendants have also been unjustly enriched by their misappropriation of

3    Serenium's trade secrets.

4
5    149.    Defendants misappropriated Serenium's trade secret information willfully and

6    maliciously, entitling Serenium to recover attorney's fees from Defendants, pursuant to 18 U.S.C.

7    §1836(b)(3)(D), and punitive or exemplary damages from Defendants, pursuant to 18 U.S.C. §

8    1836(b)(3)(C).

9                                    **THIRD CLAIM**

10
11   **BREACH OF THE ILLINOIS TRADE SECRETS ACT,**
     **765 ILCS 1065/1, *ET SEQ*.,**
     **(Against Zhou, Jia, New Century and Beijing Jiarun)**

12
13   150.    Serenium incorporates by reference paragraphs 1 through 150 of this Complaint as if

14   fully stated herein.

15   151.    Serenium's confidential information and trade secrets shared with New Century,

16   Zhou, and Jia constitute "trade secrets" within the meaning of the Illinois Trade Secrets Act, 765

17   ILCS § 1065 *et seq.*  The misappropriated trade secrets are comprised of Confidential Information

18   including:

19
20          a.  Detailed technical information about how Serenium's screening system worked;

21          b.  Serenium's proprietary modified oximeters;

22          c.  Clinical data and proprietary analysis underlying the creation of Serenium's

23              algorithm;

24          d.  Hundreds of files constituting business models, methods, and ideas about how to

25              market Serenium's system and how to monetize the diagnosis and treatment of

26              sleep apnea in China;

27          e.  A business model for how the joint venture could use the Serenium system by

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

including doctors in the diagnosis and treatment while the system was waiting for Chinese approval as a direct-to-consumer or patient system; and

    f.   Physician sleep test score reports for the system tested with New Century.

152.   The Confidential Information derives independent economic value from not being generally known to the public and not being readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use.  The Confidential Information formed the backbone of Serenium's technology and business plans, and its possession and use by another company caused, and continues to cause, significant competitive damage to Serenium.

153.   The information also derives independent economic value because the information is the subject of reasonable efforts to maintain its secrecy.  Serenium took reasonable measures for maintaining the secrecy of this information, including treating the information as highly confidential, marking the information "Confidential," monitoring Serenium facilities, maintaining password controls for network and system access, providing this information to third parties only under NDA, and otherwise limiting access to its material to Serenium employees.  Serenium provided Confidential Information to New Century in confidence, only after execution of the NDA, and only subject to the NDA.

154.   New Century and its officers and agents were subject to the NDA.  Zhou, as signatory for New Century, knew that New Century was subject to the NDA.  Jia, through his interactions with Serenium and Zhou, knew that New Century was subject to the NDA.  Beijing Jiarun, through its CEO Jia and its involvement in discussions about a business venture between New Century and Serenium, knew that New Century was subject to the NDA.  Zhao knew or should have known that New Century was subject to the NDA due at least to her majority ownership of Beijing Jiarun, and close personal relationship with New Century's signatory on the NDA.

155.   Zhou, Jia, and New Century have misappropriated Serenium's trade secrets by

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

obtaining them pursuant to a non-disclosure agreement, and using the protected information outside the scope of the NDA without Serenium's authorization and in violation of New Century, Zhou, and Jia's contractual commitments to Serenium to provide sleep apnea treatment and services through New Century.  Zhou, Jia, and New Century have incorporated the misappropriated trade secrets into products and services New Century offers.  New Century began, and continues to, diagnosing and treating patients using the trade secrets disclosed by Serenium.

156.    New Century, Zhou, and Jia have also wrongfully retained and refused to return Serenium's trade secrets.

157.    Zhou, Jia, and New Century have misappropriated Serenium's trade secrets by, among other things, wrongfully disclosing Serenium's trade secrets to Beijing Jiarun.

158.    Zhao and Beijing Jiarun have misappropriated Serenium's trade secrets by, among other things, wrongfully acquiring Serenium's trade secrets from Zhou, Jia, and New Century, knowing the same to have been disclosed without Serenium's authorization and in violation of New Century, Zhou, and Jia's contractual commitments to Serenium.

159.    Zhao and Beijing Jiarun have also misappropriated Serenium's trade secrets by, among other things, wrongfully using the protected information to offering pediatric sleep services through Beijing Jiarun and advertising a system nearly identical to Serenium's Technology, using that wrongfully acquired Technology.

160.    Defendants knew or should have known that the information they acquired, disclosed, and used consisted of protected Serenium trade secrets.  Defendants' acquisition, disclosure, and use of that trade secret compilation constituted trade secret misappropriation. Defendants have acted willfully and maliciously in misappropriating Serenium's trade secrets.

161.    Defendants have misappropriated or threatened to misappropriate Serenium's trade secrets related to a product or service used in, or intended for use in, foreign commerce.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

162.    Serenium has suffered actual damages, in an amount yet to be determined, as a result of Defendants' continued misappropriation.  Serenium is damaged by, among other things, the loss of the business opportunities that Beijing Jiarun and New Century are now pursuing, and the loss of the opportunity to sell its Technology to Defendants or others.  Serenium will continue to be damaged as a direct and proximate result of Defendants' misappropriation of Serenium's trade secrets. Defendants have also been unjustly enriched by their misappropriation of Serenium's trade secrets.

163.    In the alternative, Serenium is entitled to a reasonable royalty pursuant to 765 ILCS § 1065(4)(a).

164.    Defendants misappropriated Serenium's trade secret information willfully and maliciously, entitling Serenium to additionally recover exemplary damages pursuant to 765 ILCS 1065(4)(b), and attorney's fees from Defendants.

### FOURTH CLAIM FOR RELIEF

### TORTIOUS INTERFERENCE WITH CONTRACT
**(Against Zhou, Jia, Zhao, Beijing Jiarun)**

165.    Plaintiff incorporates by reference paragraphs 1 through 164 of this Complaint as if fully stated herein.

166.    Serenium was a California corporation with its principal place of business in Palo Alto, California.  New Century entered into a Nondisclosure Agreement ("NDA") with Serenium on November 25, 2017.  The NDA constituted a valid and enforceable contract between Serenium and New Century.

167.    Serenium performed or substantially performed under the NDA and/or any non-performance by Serenium was excused.

168.    New Century and its officers and agents were subject to the NDA.  Zhou, as signatory for New Century, knew that New Century was subject to the NDA.  Jia, through his interactions with Serenium and Zhou, knew that New Century was subject to the NDA.  Beijing Jiarun, through its

CEO Jia and its involvement in discussions about a business venture between New Century and Serenium, knew that New Century was subject to the NDA.  Zhao knew or should have known that New Century was subject to the NDA due at least to her majority ownership of Beijing Jiarun, and close personal relationship with New Century's signatory on the NDA.

169.     The NDA is reasonable and serves to protect Plaintiff's Confidential Information and Trade Secrets, customer relationships and goodwill, and its investments in labor and resources.

170.     The NDA prohibited New Century from using Serenium's Confidential Information for any purpose other than evaluating whether or not New Century would like to be part of an Agreement with Serenium for the distribution of Serenium's services.  *See* Ex. A at B.  Defendants intentionally and/or knowingly encouraged and incentivized New Century to breach the NDA.  New Century's use of Serenium Confidential Information, including certain information identified as trade secrets, in connection with Beijing Jiarun and/or New Century's sleep apnea diagnostic and treatment system, as opposed to solely in relation to New Century's assessment of whether to form a separate formal business venture with Serenium, was a violation of Paragraph B of the NDA.

171.     Zhou, Jia, Zhao, and Beijing Jiarun interfered with the NDA by encouraging or bringing about New Century's breaches of the NDA as detailed in the First Claim for Relief.

172.     New Century actually breached the NDA, as evidenced by its use of Serenium's Confidential Information in its own business, as detailed in the First and Second Claims for Relief, above.

173.     Serenium has suffered damage, including, among other things, the loss of its opportunity to derive value from its Confidential Information by selling or licensing it to Defendants, and the loss of its business opportunity in China.  Serenium is, and will continue to be, damaged as a direct and proximate result of Defendants' tortious interference with the NDA.  Defendants have also been unjustly enriched by their tortious interference with the NDA. Serenium has been damaged

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

1    in an amount to be proven at trial.

2                          **FIFTH CLAIM FOR RELIEF**

3                              **CIVIL CONSPIRACY**
4                            **(Against All Defendants)**

5        174.    Serenium incorporates by reference paragraphs 1 through 173 of this Complaint as if

6    fully stated herein.

7        175.    All Defendants formed and operated a conspiracy to accomplish through concerted

8    action the disclosure of Serenium's Confidential Information in violation of the NDA executed by

9    Serenium and New Century at least as of a Board Meeting in August 2018.  Defendants additionally

10   agreed to accomplish through concerted action the misappropriation of trade secrets provided by

11   Serenium to New Century.

12

13       176.    Defendants acted in concert at the August 2018 Board meeting by deciding to end its

14   business relationship with Serenium, yet continuing to make material misrepresentations to

15   Serenium's employees in California to induce Serenium to train New Century medical professionals

16   in the diagnosis and treatment of pediatric and adult sleep apnea in October 2018.

17       177.    This agreement had an unlawful purpose—interfering with contractual relations under

18   the NDA, and misappropriating Serenium's trade secrets.

19

20       178.    Defendants committed multiple tortious acts in furtherance of this purpose, including:

21           a.  Making material misrepresentations to Serenium to induce it to share its trade

22               secrets, including representing that New Century had continued interest in a

23               business venture;

24           b.  Inducing New Century to breach the NDA by providing Serenium's Trade Secrets

25               to Beijing Jiarun

26           c.  Acquiring, disclosing, and using Serenium's Confidential Information to benefit

27               New Century and Beijing Jiarun's businesses;

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

d.   Refusing to return the trade secrets provided by Serenium to New Century.

179.    Serenium was damaged by this civil conspiracy by, among other things, being unable to obtain value for its trade secrets, and by losing the opportunity to market its technology to others. Serenium has been damaged in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Serenium prays for entry of judgment as follows:

180.    Judgment in Serenium's favor and against Zhou, Jia, Zhao, New Century, and Beijing Jiarun on all causes of action alleged herein;

181.    That Defendants breached the NDA;

182.    That Defendants have wrongfully misappropriated Serenium's trade secrets;

183.    That Defendants have conspired to misappropriated Serenium's trade secrets and conspired to cause New Century to breach the NDA;

184.    That this Court require Defendants to return and/or destroy the trade secrets provided by Serenium;

185.    That Serenium be granted compensatory damages in an amount to be proven at trial, but not less than the jurisdictional limit of this Court;

186.    That Defendants be ordered to disgorge, restore and/or make restitution to Serenium for all sums constituting unjust enrichment from their wrongful conduct, as allowed by law according to proof;

187.    That Defendants' misappropriation of Serenium's trade secrets was willful and malicious;

188.    That Serenium be granted punitive and exemplary damages as allowed by law, according to proof;

189.    That Serenium be granted both pre- and post-judgment interest, at the maximum legal rates provided by statute or law, on any amounts awarded;

190.    That Serenium be granted such other and further relief as may be just and proper.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

1

## **DEMAND FOR JURY TRIAL**

2

Serenium demands a trial by jury of all claims in this Complaint so triable. Serenium also

3

respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment

4

is needed for trial.

5

Respectfully submitted,

6

7

Dated:  March 27, 2020          _/s/ *Spencer Hosie*_____
                                         SPENCER HOSIE (CA Bar No. 101777)
8                                        shosie@hosielaw.com
                                         DIANE S. RICE (CA Bar No. 118303)
9                                        drice@hosielaw.com
                                         BRANDON C. MARTIN (CA Bar No. 269624)
10                                       bmartin@hosielaw.com
                                         DARRELL R. ATKINSON (CA Bar No. 280564)
11                                       datkinson@hosielaw.com
                                         FRANCESCA M. S. GERMINARIO (CA Bar No.
12                                       326208)
                                         fgerminario@hosielaw.com
13                                       HOSIE RICE LLP
                                         600 Montgomery Street, 34th Floor
14                                       San Francisco, CA 94111
                                         (415) 247-6000 Tel.
15                                       (415) 247-6001 Fax
16

17                                       *Attorneys for Plaintiff*
                                         *SERENIUM, INC.*
18

19

20

21

22

23

24

25

26

27

28

SERENIUM, INC.'S COMPLAINT FOR, *INTER ALIA,*                    Case No.  5:20-cv-02132
TRADE SECRET MISAPPROPRIATION                    - 31 -