SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
BRANDON C. MARTIN (CA Bar No. 269624)
bmartin@hosielaw.com
DARRELL R. ATKINSON (CA Bar No. 280564)
datkinson@hosielaw.com
FRANCESCA M. S. GERMINARIO (CA Bar No. 326208)
fgerminario@hosielaw.com
HOSIE RICE LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111
(415) 247-6000 Tel.
(415) 247-6001 Fax

*Attorneys for Plaintiff*
*SERENIUM, INC.*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

|  |  |
|---|---|
| SERENIUM, INC., | Case No.  5:20-cv-02132-BLF |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR:** |
| v. | 1. BREACH OF WRITTEN CONTRACT; |
| JASON ZHOU; JIA XIAOFENG; NEW CENTURY HEALTHCARE HOLDING CO. LIMITED; BEIJING JIARUN YUNZHONG HEALTH TECHNOLOGY COMPANY LTD.; AND JUAN ZHAO; | 2. MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. §§ 1836 & 1837; AND |
| | 3. MISAPPROPRIATION OF TRADE SECRETS UNDER CALIFORNIA CIVIL CODE § 3426, *ET SEQ*. |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Serenium Inc. ("Serenium" or "Plaintiff") by its undersigned attorneys, hereby files its First Amended Complaint against Defendants Jason Zhou ("Zhou"); Jia Xiaofeng ("Jia"); New Century Healthcare Holding Co. Limited ("New Century"); Beijing Jiarun Yunzhong Health Technology Company Ltd. ("Beijing Jiarun"), and Juan Zhao ("Zhao") (collectively, "Defendants"). For its complaint, Serenium alleges, on personal knowledge as to its own acts and on information and belief as to all other matters, as follows:

## I.   <u>INTRODUCTION AND SUMMARY</u>

1.     Serenium is a start-up company founded by a group of seasoned entrepreneurs, executives, and renowned physicians.  The group founded Serenium to develop a ground-breaking sleep apnea screening and diagnosis technology (Serenium's "Technology").  Serenium's operational headquarters is in Palo Alto, California, and the company also had a presence in San Diego and Illinois.

2.     Serenium's Technology was developed in collaboration with Dr. David Gozal and his wife, Dr. Leila Kheirandish-Gozal.  Both are leading practitioners in pediatric sleep medicine.  Drs. Gozal and Kheirandish-Gozal are celebrated professors of pediatrics, widely considered pioneers in the study of childhood sleep disorders.  Dr. Gozal is the former Professor and Chairman of Pediatrics and Physician-in-Chief at the Comer Children's Hospital at the University of Chicago, and held a Pritzker Chair.  He is the current Chair of Child Health at the University of Missouri, editor of numerous sleep medicine journals, and former President of the American Thoracic Society.  Dr. Kheirandish-Gozal is a tenured professor of pediatrics and Director of the Child Health Institute at the University of Missouri, and Chair of the American Thoracic Society's Sleep and Respiratory Neurobiology Program Committee.  In 2018, Drs. Gozal and Kheirandish-Gozal were ranked as number one and number four, respectively, of sleep apnea practitioners in the world.

3.     Serenium's other founders are equally accomplished.  David Rosen is an MIT-educated former Managing Director of a Japanese investment bank, and his MIT colleague Cory Zwerling was a biotech CEO and has extensive operations and finance experience in the pharmaceutical and medical device business.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

FIRST AMENDED COMPLAINT FOR,                                    Case No. 5:20-cv-02132-BLF
*INTER* ALIA, TRADE SECRET MISAPPROPRIATION    - 1 -

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

1    4.    In 2014, prompted by Drs. Gozal and Kheirandish-Gozal's research surrounding the

2  hitherto largely unknown serious neurological and cardiovascular effects of sleep disorders,

3  Serenium's team developed a novel technology for inexpensively testing patients for sleep apnea.

4  Pediatric sleep apnea, *i.e.*, a temporary pause in breathing, is an affliction that harms millions of

5  children, as set forth below.  It is also an ailment that largely goes undiagnosed due to screening

6  costs.  Screening for sleep apnea generally requires a full sleep study (known as a polysomnography

7  or "PSG"), which entails an overnight stay in a hospital or clinic, while connected to as many as 12

8  monitors.  Serenium Technology streamlines the diagnostic process, and renders wide-scale

9  screening feasible.  Serenium's Technology only requires a proprietary oximeter (a device that

10  measures blood oxygen levels), a phone application, and an extensively trained AI algorithm resident

11  in the cloud.  At bottom, the system analyzes patient data using Serenium's proprietary neural

12  network-based algorithms, as set forth below.

13    5.    The vastly improved cost-effectiveness of sleep apnea testing provided by Serenium's

14  Technology held obvious appeal for large medical treatment facilities.  This was nowhere more true

15  than in China, which has both a dense population with large medical centers and a high incidence of

16  respiratory disease given prevalent air pollution and other factors.

17    6.    In 2017, Serenium was approached by Defendant Jason Zhou.  Zhou's known

18  business empire spans the British Virgin Islands, Cayman Islands, Hong Kong, and China.  He is

19  nominally a billionaire.  Zhou's interest in Serenium came in his capacity as the founder, CEO,

20  Chairman, and controlling shareholder of New Century Healthcare Holding Co. Limited, a company

21  that operates a series of hospitals in China.  New Century is a registered Cayman Islands corporation,

22  is publicly traded on the Hong Kong Stock Exchange, and has significant equity capitalization.

23  Directly and indirectly, Zhou owns 44.12% of New Century's shares, and controls the company

24  through a seemingly captive Board of Directors.

25    7.    Shortly after this first contact, Serenium entered into a non-disclosure agreement (the

26  "NDA") with New Century.  The NDA protected Serenium's proprietary information and trade

27  secrets while the parties discussed their potential business relationship and completed due diligence.

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

8.     Under the NDA, Serenium sent numerous communications and documents, and engaged in dozens of discussions, explaining how its algorithms worked, and how its propriety system operated.  Serenium also provided trade secrets and confidential information relating to its business plans, finances, and approaches to marketing, as set out within.

9.     Zhou initially proposed a Chinese joint venture with a Chinese company, then held out to be part of New Century, called Beijing Jiarun Yunzhong Health Technology Company Ltd. Zhou claimed that Beijing Jiarun did business as "Panda Pediatrics," an online "community" with over 1 million registered users.  New Century's infrastructure for delivering pediatric medical services in China made New Century an attractive business partner for Serenium.  Serenium refused, however, to establish and operate a Chinese joint venture, believing that its IP and economic return might not remain safe in China, and being concerned about a lack of recourse in China itself.

10.    Zhou then proposed that Serenium form a jointly owned holding company in Hong Kong with a New Century subsidiary.  Serenium and this New Century subsidiary thereafter entered into a "Framework Contract" under which they committed to forming jointly a Hong Kong "Holding Company" to bring Serenium's technology to China and certain other Asian countries.  The Holding Company would be funded by New Century's subsidiary, with Serenium contributing its technology and expertise.  Under this arrangement, Beijing Jiarun was to play no part aside from providing secure computer hosting services (internet content provider (ICP) services) in China.

11.    Throughout 2018, and pursuant to the NDA, Serenium continued to provide Zhou and New Century with large amounts of proprietary information and trade secrets, including many trade secrets relating to its technology and business plans.  Serenium worked particularly closely with Defendant Jia Xiaofeng: New Century's Corporate Secretary, Beijing Jiarun's CEO, and Zhou's right-hand man.

12.    As this process unfolded, New Century proposed that it in-license for the China market for a flat fee at $75 million USD.  Alternatively, it proposed a rolling royalty licensing agreement with Serenium to receive costs up front and a percentage of the royalty.  *See* below, § V.K.

13.     However, Zhou delayed, and New Century never formed or funded the holding company.  Then, asserting various pretexts, Zhou purported to terminate the Framework Contract on behalf of the New Century subsidiary, a right neither he nor the subsidiary possessed.

14.     Zhou and Jia refused to return Serenium's trade secrets, including prototypes of Serenium's proprietary oximeters, technical information regarding Serenium's algorithm, and numerous trade secrets involving business methods, training, and planning.  New Century explicitly said it was holding this IP "hostage."  This refusal breached the terms of the parties' NDA, as set forth below.

15.     Upon the breakdown of the relationship between Zhou and Serenium, Serenium discovered that, until March 2019, Beijing Jiarun was in fact fully owned and controlled by Zhou's wife, Juan Zhao, and not New Century, as Zhou had represented to Serenium in June 2018.  In an effort to distance himself from Beijing Jiarun, Zhou set up a shell company established solely to hold Zhao and Zhou's Beijing Jiarun shares.  Then, in June 2019, New Century acquired a controlling majority of Beijing Jiarun's shares (57.5% to be exact) from Beijing Jiarun shareholders—the shell company, Zhao, and Jia.

16.     Serenium now knows that Beijing Jiarun—which never provided any sleep services prior to Serenium's disclosures to Zhou and New Century under NDA—is offering services paralleling those offered by Serenium.  The service purports to allow parents the ability to monitor their children's sleep quality by making use of "wearable smart devices and AI intelligent algorithms" and is marketing an app displaying a watch oximeter visibly similar to the one used by Serenium.  In short, New Century has thus rolled out Serenium's business exactly, but without Serenium as its partner.

17.     New Century is right now diagnosing and treating patients using Serenium's proprietary trade secret information, and using Chinese doctors Serenium itself trained.  New Century is using Serenium's misappropriated intellectual property to sell millions of dollars' worth of services and so competing directly with Serenium.

18.     Serenium filed its Complaint in this action to right this wrong.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

FIRST AMENDED COMPLAINT FOR, *INTER ALIA*         Case No. 5:20-cv-02132-BLF
TRADE SECRET MISAPPROPRIATION         - 4 -

## II.   **PARTIES**

19.   Plaintiff, Serenium Inc., is a Delaware corporation with its principal place of business at 4065 Wilkie Way, Palo Alto, California 94306.

20.   Defendant, Jason Zhou, is a peripatetic resident of both China and Canada.  He renounced his Chinese citizenship in 2012 to become a citizen of Canada.  While in Canada, he nominally resides at 7 Kenaston Gardens, North York, Ontario, Canada, M2K1G7 (nominally, as the address appears to be a staff apartment and maildrop).  He is a corporate officer and controlling shareholder of New Century, owning or controlling 44.12% of New Century's shares.

21.   Defendant, New Century Healthcare Holding Co. Limited, is a company incorporated in the Cayman Islands, and listed on the Hong Kong Stock Exchange (listed as: HK 01518).  New Century's address is Cayman Corporate Centre, 27 Hospital Road, George Town, Grand Cayman KY1-9008, Cayman Islands.   Its Hong Kong offices are at Cosco Tower, Unit 3214, Grand Millennium Plaza, 183 Queen's Road, Central Sheung Wan, Hong Kong.   New Century has its principal place of business in Beijing, China. *See* below § V.D.

22.   Defendant, Beijing Jiarun Yunzhong Health Technology Company Ltd., is a privately-held Chinese company with its principal place of business in Beijing, China.  Until mid-2019, Beijing Jiarun was entirely owned by Zhou's wife, Juan Zhao.  Beijing Jiarun shares extensive business ties with New Century, including holding closely-related trademarks, sharing numerous employees and officers, and engaging in widespread cross-promotion, physician scheduling, and telemedicine.  In June of 2019, New Century quietly bought a controlling interest in Beijing Jiarun.

23.   Defendant, Jia Xiaofeng, is the Company Secretary of New Century, as well as the Director, Legal Representative, and—as of March 2019—the CEO and partial owner of Beijing Jiarun.  He is believed to be a citizen of China.  He was actively involved in all aspects of Zhou's negotiations with Serenium, and likewise actively involved in both New Century and Beijing Jiarun's misappropriation of Serenium's trade secrets.

24.   Defendant, Juan Zhao, is Zhou's wife.  She was the only shareholder and 100% owner of Beijing Jiarun until mid-2019, and a corporate officer of the company up until March 2019.  Until

mid-2019, Zhao was Beijing Jiarun's controlling shareholder, between her direct and indirect ownership through Zhuhai Yunzhong Equity Investment Enterprise (Limited Partnership).

## III. INTRADISTRICT ASSIGNMENT

25. Pursuant to Civil Local Rule 3-2(c), a substantial part of the events giving rise to the claims alleged in this Complaint occurred in Palo Alto, California. Thus, assignment to the San Jose Division would be proper.

## IV. JURISDICTION AND VENUE

26. The Defendants repeatedly availed themselves of the privilege of doing business in this State, including entering several contracts with Serenium, a company with its operational headquarters in Palo Alto. Without limitation, these acts include the following:

   a. Zhou approached Serenium about entering into a joint venture, knowing that Serenium had its operational headquarters in Palo Alto, California;

   b. Zhou and the Defendants asked that Serenium send its trade secrets from California to the Defendants; Serenium did so over many months, as set out below;

   c. The Defendants initiated and participated in many calls placed to California;

   d. The Defendants sent raw sleep studies from Beijing to Palo Alto and San Diego to be analyzed and scored. Serenium completed this work as requested and returned the analytical material from Palo Alto and San Diego to China;

   e. The Defendants entered into contracts with Serenium, a company they knew had its operational headquarters in Palo Alto, including an NDA and a "Framework Contract," as set out below. Although Defendant New Century was not directly party to the Framework Contract, Defendant Zhou was a signatory;

   f. Both the NDA and the Framework Contract explicitly required that New Century send all notices to Serenium's Palo Alto office, as set out below;

   g. New Century wired funds to Serenium in Palo Alto, with the funds to be used to grow Serenium's operations in California, all as part of the joint venture;

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

1             h.   The funds New Century invested were in fact used by Serenium to develop

2                 technology in its Palo Alto and San Diego offices;

3             i.   New Century offered shares for sale in California and sold shares to California

4                 buyers; and,

5             j.   The Defendants misappropriated Serenium's trade secrets, knowing this

6                 wrongful act would cause injury in California, as indeed it did.

7      27.    In addition, with respect to all Defendants, the Court has personal jurisdiction over

8 them because they engaged in a concerted conspiracy to misappropriate Serenium's trade secrets,

9 which caused injury to Serenium in California, and which involved extensive tortious actions

10 directed at California, including those set forth in paragraph 26 above.

11      28.    Finally, in the absence of minimum contacts with California, personal jurisdiction

12 over Defendants is also proper under Fed. R. Civ P. 4(k)(2), because each has minimum contacts

13 with the United States and is no more amenable to personal jurisdiction in any particular state other

14 than in California.

15      29.    This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332

16 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

17      30.    This Court also has subject matter jurisdiction over the Defend Trade Secrets Act

18 claims pursuant to 18 U.S.C. § 1836(c) and 35 U.S.C. § 1331.  This Court has supplemental

19 jurisdiction over the controversy for all other claims asserted herein pursuant to 28 U.S.C. § 1367.

20      31.    Venue is proper in this District under 28 U.S.C. §§ 1391(c)-(d) because this is a

21 District in which Defendants are subject to the Court's personal jurisdiction with respect to this

22 action, and/or the District in this State where Defendants have the most significant contacts.

23 **V.**      **STATEMENT OF THE FACTS**

24      **A.**    **The Problem Serenium Sought to Solve**

25      32.    Obstructive sleep apnea ("sleep apnea") is a pernicious but largely underdiagnosed

26 problem, particularly for children.  Sleep apnea refers to the temporary failure to breathe during

27 sleep (defined as the cessation of breathing for ten seconds or more during sleep)

28

FIRST AMENDED COMPLAINT FOR, *INTER ALIA*       Case No. 5:20-cv-02132-BLF
TRADE SECRET MISAPPROPRIATION     - 7 -

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

33.     While this condition may sound trivial, it is not.  Numerous studies, including many by Doctors David Gozal and Leila Kheirandish-Gozal, have documented the causal relationships between sleep apnea and profound physical and psychological conditions.  The data prove that sleep apnea can cause significant physical ailments, including reduced cognitive function, behavioral issues (ADHD), hypertension, diabetes, depression and other conditions.

34.     Even transitory apnea—say ten seconds—can lead to measurable hypoxia (inadequately oxygenated blood).  This, in turn, leads to erratic heart rhythms, elevated blood pressure, cortisol spikes, and other physical ailments.

35.     Despite its profound and pernicious effects, sleep apnea—particularly pediatric sleep apnea—is rarely tested for, and even more rarely diagnosed.

36.     There are two principal causes for this public health failure.  First, until recently, the physiological effects of sleep apnea were poorly understood.  Kids snore.  Second, the traditional diagnostic test for sleep apnea requires an overnight stay in a sleep lab whilst hooked up to as many as 12 sensors.  Testing requires extensive training to implement, analyze and report.  The process is slow and expensive.

37.     Serenium and its founders sought to develop a new way to diagnose and treat sleep apnea, including pediatric sleep apnea.  They envisioned an inexpensive, portable, out-patient procedure, driven by cloud-based machine learning algorithms trained by extensive clinical data, customized wearable oximeters, and mobile phone apps, all working together in a scalable solution.

**B.     Serenium's Groundbreaking Technology**

38.     In 2014, Serenium was founded to develop products to diagnose and treat sleep apnea.

39.     Dr. David Gozal is one of the key consultants to Serenium's product development. Dr. Gozal is widely recognized as the world's leading expert in pediatric sleep apnea.  He is presently the Chair of Child Health at the University of Missouri.  He has published over 600 peer-reviewed articles, was the former president of the American Thoracic Society, and up until 2018, was the Herbert T. Abelson Professor at the University of Chicago School of Medicine as a Pritzker scholar.

40.     Through years of research and development, Dr. Gozal, on behalf of Serenium, led a

team in the development of a novel way to screen for sleep apnea in both children and adults.

41.     Dr. Gozal's team gathered data from extensive sleep studies, and then developed an algorithm that reliably detects sleep apnea using readings from fewer clinical data inputs.   The algorithm applies machine learning and artificial intelligence to a smaller subset of data, all of which can be captured with a consumer-grade oximeter (which reads blood oxygen levels), modified to certain proprietary specifications.

42.     Serenium's research and development of its product included two significant peer-reviewed studies, which utilized Dr. Gozal's own long-standing relationship with Beijing Children's Hospital ("BCH") (owned by Capital Medical University). BCH is a nationwide network of 26 regional pediatric hospitals across China.

43.     In 2017, Serenium's algorithm was peer-tested in 4,191 patients from 13 different clinical centers around the world (with about 700 from BCH).   The data supported the analytical quality of this algorithm.   The study resulted in a paper published in the *American Journal of Respiratory and Critical Care Medicine*.   Access to this unprecedented volume of data for use in Serenium's algorithm development was worth millions of dollars, and was only possible through Serenium's relationship with Dr. Gozal.

44.     Serenium thereafter conducted a study of both the algorithm and a prototype of its modified oximeter on 432 patients in collaboration with BCH.   This study demonstrated the strength of diagnostic testing by the prototype system.   Serenium's system correctly identified 96% of the children with sleep apnea, and resulted in a peer-reviewed paper accepted for publication in 2018 by the *European Respiratory Journal*.[1]

45.     Serenium's ability to reliably screen for pediatric sleep apnea using only a consumer-grade oximeter and an algorithm was unique.   There are no known peer-reviewed studies showing that any system, other than Serenium's, can effectively diagnose pediatric sleep apnea other than

---

[1] Neither published study disclosed Serenium's trade secrets. For example, the extensive patient data underlying the algorithms has never been publicly disclosed.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

1   through a full sleep study (PSG).  Nor are there any other companies in the world known to have

2   such a system (until New Century copied Serenium's technology in 2019).

3        46.    Serenium's Technology provides two tremendous benefits:

4        47.    First, it allows medical providers to screen their patients for sleep apnea by providing

5   parents with nothing more than Serenium's proprietary oximeter and a mobile phone application.

6   The study can be conducted entirely at home, while children sleep in their own beds.  This makes

7   screening for sleep apnea far less intrusive and expensive than a comprehensive sleep study, which

8   requires an overnight stay in a clinic or hospital with sensors monitoring numerous bodily functions.

9        48.    Second, Serenium's technology will eventually allow patients to directly and reliably

10   screen for sleep apnea at home, with *no* doctor involvement at all.

11        49.    Serenium's system and pre-existing relationship with BCH presented a significant

12   business opportunity.  Each year, BCH sees over 15 million unique patients, of whom approximately

13   1.8 million should be annually screened for sleep apnea.  Traditional testing for sleep apnea, for

14   children in particular, is cost-prohibitive and impractical in China.  This is a real problem, given that

15   air pollution can aggravate sleep apnea.  In view of its pre-existing relationship with BCH, the large

16   patient population in China and at BCH, and the need for cost-effective diagnosis there, Serenium

17   focused its business efforts on entering the Chinese market.

18        50.    Recognizing this opportunity, Serenium developed numerous proprietary business

19   plans and methods relating to bringing its technology to the Chinese market.

20   **C.**    **Why China**

21        51.    China provided a perfect market for Serenium's technology.

22        52.    Serenium already had a fruitful preexisting relationship with BCH, and therefore

23   had access to one of the largest markets in the country.

24        53.    Given China's notorious pollution, pediatric sleep apnea is a prevalent problem.

25        54.    China has few full sleep labs, and a PSG is slow and expensive.

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

55.     Of all the cities in the world, Beijing was perhaps the perfect venue to roll out Serenium's disruptive technology.  This point was not lost on Zhou and New Century, as set out below.

**D.     Zhou Approaches Serenium and Enters Into a Comprehensive NDA**

56.     On November 13, 2017, Serenium's co-founder, David Rosen, was contacted by Jason Zhou over "WeChat," a Chinese internet communication tool that allows real time communications in multiple languages.

57.     At the time, Rosen knew Zhou only as the Chairman and CEO of New Century, a company that runs several private hospitals in China including a private children's hospital adjacent to, and in collaboration with, BCH.  In 2018, New Century had approximately 36% of the hospital market share in Beijing.  It is publicly traded and has been significantly profitable.  It went public in 2017.

58.     Given Serenium's focus on the Chinese market, New Century's existing infrastructure for providing health care to the Chinese market, and New Century's own relationship with BCH, New Century seemed like a natural business partner for Serenium.  New Century's network of 26 regional pediatric hospitals across China, in addition to their cooperation with BCH, would reach approximately 250 million children (aged 0 – 14).

59.     Following initial discussions over WeChat, Rosen met with Zhou in Beijing on November 21, 2017.  After this meeting, on November 24, 2017, New Century and Serenium executed a Mutual Non-Disclosure Agreement (the "NDA"), allowing Serenium to share its proprietary information with New Century while the parties evaluated the feasibility of collaboration. *See* Ex. A (NDA).

**E.     The NDA**

60.     The NDA sets forth Serenium's principal place of business as Palo Alto, California ("having its principal place of business at 4065 Wilkie Way, Palo Alto, CA").

61.     The NDA broadly defined "Confidential Information" to include, among other things, business plans, technical information, know-how, concepts and trade secrets.  *See* Ex. A, § D.  To

1    quote the NDA:

2    "Confidential Information" shall mean **all information** disclosed under this
     Agreement, including, without limitation: (a) any data or information that
3    is competitively sensitive material, and not generally known to the public,
     including, but not limited to, information relating to product plans,
4    marketing strategies, finance, operations, customer relationships, customer
     profiles, sales estimates, business plans, and internal performance results of
5    a party, its parent corporation, its subsidiaries and affiliated companies and
     the customers, clients and suppliers of any of the foregoing; (b) any
6    scientific or technical information, design, process, procedure, formula, or
     improvement that is commercially valuable and secret in the sense that its
7    confidentiality affords a party a competitive advantage over its competitors;
     and (c) all confidential or proprietary concepts, documentation, reports,
8    data, specifications, computer software source code, object code, flow
     charts, databases, inventions, know-how, show-how, and trade secrets,
9    whether or not patentable or copyrightable.

10   62.     The NDA required New Century to take reasonable steps to protect any Confidential

11   Information provided by Serenium.   It prohibited New Century from sharing Serenium's

12   Confidential Information with anyone who was not a New Century employee or agent.   And, even

13   with respect to employees and agents, the NDA required New Century to use the provided

14   Confidential Information **"solely for purposes of determining whether or not [New Century]**

15   **would like to be part of an Agreement with [Serenium] for the distribution of [Serenium's]**

16   **services."** *Id.*, § B.  That is, the NDA had an explicit intra-New Century "need to know" disclosure

17   limitation.

18   63.     The only exception to "Confidential Information" was information that New

19   Century—the receiving party—could prove was in the public domain or "independently developed

20   by the Receiving Party's employees, consultants or agents without reference to the Confidential

21   Information." *See* Ex. A, § C.  In this fashion, the NDA squarely puts the burden on New Century

22   to prove a confidentiality exception.

23   64.     The NDA also provided that "all provisions of confidentiality concerning

24   Confidential Information" would survive the termination of this Agreement.  *Id.*, § E.  There is no

25   confidentiality sunset clause here.

26   65.     The NDA also provided that it was governed by Illinois law.  *See id.*, § I.

27   66.     The NDA explicitly recognizes that monetary damages might well be inadequate to

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

compensate Serenium for breach, and likewise recognizes that New Century consented to the entry

of a temporary restraining order or permanent injunction:

> G.     Equitable Relief.  The parties agree that monetary damages
> would not be a sufficient remedy for breach of the confidentiality
> and other obligations of this Agreement.  Accordingly, in addition
> to all other remedies that either party may have, a party shall be
> entitled to specific performance and injunctive or other equitable
> relief as a remedy for any breach of the confidentiality and other
> obligations of this Agreement.  **Receiving Party consents to the
> issuance of a temporary restraining order or a preliminary or
> permanent injunction ordering Receiving Party to cease and
> desist from any and all activities in contravention of this
> Agreement.**  The parties agree to waive any requirement for a bond
> in connection with any such injunctive or other equitable relief.

67.     The NDA also has an explicitly prevailing party fee-shifting clause ("The prevailing

party… shall be entitled to receive from the losing party a reasonable sum for its attorney's fees

and costs of litigation.").  *Id.*, § I.

68.     The NDA recognized that New Century send all notices or acknowledgements to

Serenium's Palo Alto office.  *Id.*, § I.  That was Serenium's official address of record.

**F.     Defendants Did Not Have Similar Technology Prior to Serenium**

69.     Neither Zhou nor New Century had detailed knowledge or expertise with respect to

pediatric sleep apnea, which at the time was typically not treated within New Century hospitals, but

rather referred to other institutions.

70.     Zhou understood, however, that there was an enormous business opportunity

provided by Serenium's technology.  The population in China, the pre-existing relationship Serenium

had forged with BCH, and the widespread occurrence of both adult and pediatric sleep apnea were

all perfectly poised to bring new patients into New Century's existing and planned hospitals and

clinics, and its nationwide partners across China.

71.     Zhou also represented to Serenium that an arm of New Century called "Panda

Pediatrics" had a "community" of over 1 million registered users and a wide network of doctors

(currently over 1,000 doctors) who provide consultations over the Internet.

72.     Although Serenium was then discussing its technology with a number of other

companies, Zhou insisted that a deal with New Century would be most profitable for both parties, a

conviction that Serenium shared.

73.     Given New Century's established infrastructure for providing pediatric medical services in mainland China, New Century was an attractive business partner for Serenium.

**G.     Under the NDA, Serenium Disclosed All Aspects of its Technology to New Century**

74.     At Zhou's insistence, and after executing the NDA, Serenium disclosed reams of confidential and trade secret information to New Century.

75.     The information disclosed included:

- Custom oximeters (given to New Century directly, which it still has and refuses to return);

- Reams of scored clinical data, all used to train the machine learning algorithm;

- All data inputs generated by the oximeter and sent to the cloud-based platform;

- The critical levels for hypoxia caused by sleep apnea (expressed as a percentage);

- The data categories that must be captured to allow a doctor to treat the condition (including **how** this is done); and

- Protocols for engagement with and follow-on treatment of patients categorized into each diagnostic outcome (i.e. mild, medium, severe diagnoses).

76.     In addition to such technical information, Serenium also provided confidential financial records and business plans to New Century: these documents manifestly persuaded Zhou and New Century that Serenium's technology would both work and prove very profitable.

**H.     New Century Tries to Buy the Rights, and Then Enters Into a Joint Venture Term Sheet**

77.     Appreciating the value of Serenium's technology, New Century began parallel negotiations to essentially buy the rights for China and related technology for a one-time fully paid-up license, or—in the alternative—to negotiate a joint venture between the two parties.

78.     On the paid-up license, New Century offered to pay a one-time licensing fee to secure the rights in China and neighboring countries (ex the USA), known as the territories.

79.     New Century itself priced this paid-up license for the territories at $75 million USD. As New Century offered then:

FIRST AMENDED COMPLAINT FOR, *INTER ALIA*           Case No. 5:20-cv-02132-BLF
TRADE SECRET MISAPPROPRIATION           - 14 -

1

2

3

4

5

Party A [New Century] pays Party B [Serenium] a single **payments of USD $ 75 million in exchange for a paid up license for exclusive use of the Joint Venture** [] in the territories.  Party A safe guards the server and provides administrative access to party B. Party A processes and both parties have authorized use of these cloud services, analytics and algorithm in these approved territories. Party A will indemnify party B, in case up is stolen and used outside the territories.  This option will expire July 31, 2018.

6

### I.      The Term Sheet

7

80.      The parties did not close on these terms, and instead negotiated a joint venture.  The

8

parties' mutual financial projections reflected that both New Century and Serenium expected the

9

joint venture to generate many hundreds of millions of dollars in profits, as stated above.  Serenium

10

thought that the better course was to found a joint venture.

11

81.      The parties had been discussing the possibility of a joint venture since the outset of

12

the relationship, a tender with a fully paid-up license.  To document a joint venture deal, New

13

Century then proposed a Term Sheet.

14

82.      In material part, the term sheet provided as follows:

15

**Core Business Terms between New Century Healthcare Holding Co, Limited and Serenium Inc.**
December 15, 2017

16

17

18

19

In consideration of common business interests of the parties, New Century and Serenium agreed to set up a Joint Venture to provide sleep apnea test related software and hardware technical services as well as data analysis services in China Mainland.  Chinese Hong Kong, Chinese Taipei, Japan and Korea.   The Joint Venture possesses the Cloud Server and takes charge of setting up Cloud Server in the above areas.

20

21

22

23

The Joint Venture share percentages of the parties are: New Century [60%], Serenium [40%].  The investment amount of New Century is RMB 20 Million.  Serenium invests by patents, Ips, experts consulting and training services.  In addition, Serenium allows New Century to acquire no less than [ ] % share of Serenium at a proper time.  The valuation is USD [ ].

24

The investment of New Century in the Joint Venture is based on:

25

1.      New Century receives satisfying reports from Due Diligence;

26

2.      The Joint Venture project is approved by the Board of New Century;

27

3.      Official signed Investment Agreement between the parties;

4.      Dr. David Gozal signed a separate collaboration agreement

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

with New Century;

5.     Other agreed investment terms reaches.

Based on former conferences between the parties, a consensus on Cloud Server and Data Management is as follows:

1.     The Joint Venture pays Serenium a one-time expense at RMB 6.6 Million. The expense is only used for developing Chinese version devices related to [sleep apnea test]. The developing period is no longer than [6] months;
2.     Clinical data of clients belongs to clients and will upload to the Cloud. The uploading procedure is confidential;
3.     Demographic data of clients belong to different parties (i.e. New Century's data belong to New Century, check-up institutions' data belongs to check-up institutions);
4.     Under the permission of Chinese Laws and Clients, clinical data of clients can belong to New Century;
5.     Serenium holds the Cloud analysis, algorithm and AI developments. Serenium wishes to perform clinical trials using the clinical data.

Royalties charges and allocation:
Serenium charges royalties from the Joint Venture based on the upper limited of Chinese Law (calculation method is on Appendix). New Century designated overseas party acquires [25%] of the total royalties charged by Serenium.

83.     New Century and Serenium so agreed to a term sheet for a potential deal to bring Serenium's technology to market. The term sheet contemplated a joint venture between New Century and Serenium. The joint venture would be funded by New Century, which would take a 60% ownership while Serenium would take a 40% ownership. In addition to Serenium's ownership, New Century would pay Serenium a fee and the joint venture would pay Serenium royalties for use of its technology.

**J.     Zhou Unsuccessfully Attempts to Insert Beijing Jiarun Into the Joint Venture**

84.     The Term Sheet expressly contemplated that it would be replaced by a joint venture contract, known as a "Framework Contract."

85.     Zhou accordingly proposed a "Framework Contract" with Serenium.

86.     However, the counterparty to Serenium in the Proposed Framework Contract was **not** New Century, as long discussed, but rather Beijing Jiarun, the Chinese company that does business as "Panda Pediatrics."

87.     At the time, Beijing Jiarun was held out by Zhou and Jia, and the officers of New

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

1   Century, to be part of New Century.  Zhou even named Beijing Jiarun as a "related party" in the

2   Framework Contract he proposed.

3       88.    That Beijing Jiarun was part of New Century was echoed by Jia, New Century's

4   company secretary, who repeatedly explained that the New Century Board of Directors was fully

5   informed of the Proposed Framework Contract, suggesting the Board, too, treated Beijing Jiarun as

6   part of New Century.

7       89.    For example, in a WeChat conversation between Rosen and Jia on January 22, 2018,

8   Jia represented that the New Century Board would be receiving a full presentation about the Proposed

9   Framework Contract involving Serenium and Beijing Jiarun.

10      90.    However, as described below, Serenium has since discovered that these

11  representations by Zhou and New Century's officers about Beijing Jiarun were false, and meant to

12  conceal self-dealing by Zhou.

13      91.    According to Chinese corporate filings, Beijing Jiarun was 100% owned by Zhou's

14  wife, Zhao, until March 2019.  This information was deliberately withheld from Serenium

15  throughout its relationship with New Century and Zhou.  When, unbeknownst to Serenium, Jia was

16  named CEO of Beijing Jiarun in early 2019, Jia continued to work with Serenium and continued to

17  solicit Serenium's trade secrets.  During this time, while Zhao no longer held all shares outright in

18  her own name, she continued to control Beijing Jiarun through a shell company established solely to

19  obscure Zhou's personal connection to Beijing Jiarun.  The shell company, Zhuhai Yunzhong Equity

20  Investment Enterprise (Limited Partnership), also lists other New Century Board members Xin Hong

21  and Xu Han as shareholders. However, in June 2019, New Century acquired 57.5% of Beijing

22  Jiarun's shares from Beijing Jiarun shareholders—in other words, Zhou, as CEO of New Century,

23  bought shares in Beijing Jiarun from himself, his wife, and his subordinates.

24      92.    Regardless, while it had no knowledge at the time of Zhou's attempt at self-dealing,

25  Serenium would not close a contract with Beijing Jiarun as the counter-party for other reasons.

26  Serenium discovered various issues unique to China that posed significant risks to Serenium if it

27  formed a Chinese joint venture.  In particular, because of the manner in which China accounted for

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1  intangible assets, which were the only asset Serenium would be contributing to the joint venture,

2  there was risk that Chinese authorities would not recognize Serenium's ownership interest in the

3  joint venture—a result that could dramatically impact Serenium's ability to profit from the joint

4  venture.

5      93.    Serenium so refused to do a deal with Beijing Jiarun directly as a Chinese joint

6  venture, and the parties appeared to be unable to reach agreement.

7      **K.    The Framework Contract**

8      94.    Given Serenium's flat refusal, Zhou then proposed a Hong Kong-based joint venture

9  holding company, with the right counterparty.  The proposed parties were a separate subsidiary of

10  New Century ("New Century Sub"), and Serenium—identified as a company with its principal

11  place of business in Palo Alto, California.  Defendant New Century was not party to the

12  Framework Contract.

13      95.    In material part, the Framework Contract—essentially a joint venture agreement—

14  set forth a Hong Kong based holding company, owned both by Serenium and New Century

15  (through a subsidiary).  New Century Sub would contribute cash, pay funds up front to Serenium,

16  and commit to using Serenium's technology in its hospitals.  Serenium would contribute its IP and

17  expertise, in return for an equity interest in the holding company, cash up front, and a 9% rolling

18  percentage royalty of all sales revenue.

19      96.    As part of the deal, New Century recognized the importance of Serenium's brand.

20  As the contract put it:

21          9.    To leverage Party B's clinical expertise and worldwide
        reputation, the **brand name in addition to the local product name**
22      **will include "Serenium" or other Party B approved name in all**
        **products and services sold for the Pediatric Cloud Apnea System**,
23      and the brand name, in addition to the local product name, will include
        "Metz Appliance" or other Party B approved name in all product and
24      services sold for the Metz Appliance, in all Cooperation Territories.
        **Decisions to modify this brand name condition, will require the**
25      **unanimous approval of the Holding Company's Board of**
        **Directors.**

26

27      97.    New Century agreed to use New Century Sub to fund the holding company with an

up-front cash payment:

28

FIRST AMENDED COMPLAINT FOR, *INTER ALIA*          Case No. 5:20-cv-02132-BLF
TRADE SECRET MISAPPROPRIATION          - 18 -

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

11.    In the Holding Company, Party A's amount of contribution is RMB (20 million) (or equivalent HKD) upon formation of the Holding Company which equals to 60% of the equity of the Holding Company and Party B contributes with the perpetual exclusive licensing of technical patents, trade secrets, and know-how, experts consulting and training service (as listed in Attachment 1) within the Cooperation Territories, which equals 40% of the equity of the Holding Company, Party B shall guarantee that the consulting and training services provided by Party B shall be sufficient for the medical and marketing personnel of Party A (within 1 year from the establishment of the Holding Company) or the Holding Company to use and interpret the analysis reports derived from Party B's technologies.  1 year after the establishment of the Holding Company, the costs of Party B providing the consulting and training services shall be borne by the Holding Company.  Party A will be paid for the normal operational support by the Holding Company, which includes but is not limited to relevant technology supports, marketing support and distribution services from Party A, this will be paid for by the Holding Company.  Any unsettled issues relating to the normal operational support provided by Party A and the consulting and training services provided by Party B (1 year after the establishment of the Holding Company), such as fees and other conditions, shall be discussed separately by the two parties.

98.    New Century also negotiated an option for its subsidiary to purchase just under 20% of Serenium's equity based on a pre-money valuation of $25 million:

12.    Party B grants an option to Party A to purchase 19.9% of common shares in Serenium Inc. at an appropriate time, and the pre-investment or pre-money value is USD $25 million, and this option will expire July 31, 2018.  Party A may exercise all or part of the options before the expiration date.  There are no other conditions set forth on related to this option grant.

99.    As a critical part of the Framework Contract, New Century Sub acknowledged **in writing** that it had successfully completed its due diligence regarding Serenium's technology:

15.    In compliance with the intent and the spirit of the original term sheet, as agreed by Party A and Party B, starting on December 13, 2017 Party A and Party B conducted a series of detailed phone conference calls and meetings, during which Party B provided all the due diligence materials requested by Party A to Party A.  During these calls and meetings each due diligence item was reviewed and questions replied to, including but not limited to the clinical proof of Party B's intellectual property viability from the Beijing's Children's Hospital trial, to Party A's satisfaction.  Following these disclosures, Party A did not make any additional requests for information and Party A **agrees that all Due Diligence is completed and acceptable by January 16, 2018**.

1    100.    This matters.  In the Framework Contract itself, New Century Sub, with Zhou as

2    signatory, warranted that it had successfully completed its due diligence.

3    101.    The Framework Contract put a strict timetable in place, including the no-later than

4    date for forming the holding company:

5           20.    Party A and Party B will jointly form the Holding Company
            in Hong Kong within sixty (60) days of the signing of this Contract.
6           Before the formation of the Holding Company, documents
            including: (1) shareholder's agreement; (2) articles of association
7           and other relevant company formation documents for establishing
            the Holding Company will be mutually developed and approved by
8           both Party A and Party B, and the license agreement as mentioned
            in Clause 21 will be prepared by both Party A and Party B in the
9           agreed form for signing.

10   102.    As cited above, and in addition to Serenium's equity and rolling royalty, New

11   Century's subsidiary agreed to pay Serenium $1 million USD up-front:

12          24.    In addition to the 40% of equity of the Holding Company
            obtained by Party B, the Holding Company shall pay Party B for
13          technology, patent, and intellectual properties (as listed in
            Attachment 1) a one-time initial license fee ("Initial Payment") in
14          the amount of US $1,000,000, which will be paid in three
            installments: USD $500,000, USD $250,000, and USD $250,000, as
15          below….

16   103.    The Framework Contract was clear on how the parties would share the revenue

17   stream:

18          26.    Operating Revenue share for licensing the patent: The
            Holding Company or the Subsidiaries shall pay Party B 9% of the
19          total end-user sales volume or end-user sales revenues generated
            from licensing and using of Party B's patent and relevant intellectual
20          properties as the royalty share for licensing the patent in US dollars,
            calculated as 9% of sales from the Pediatric Cloud Apnea System
21          and the Metz Appliance subject to State Administration of Foreign
            Exchange (SAFE) requirements and other relevant requirements.  In
22          addition, the Holding Company or the Subsidiaries shall also pay
            Party A 3% of the total end-user sales volume or end-user sales
23          revenues generated from licensing and using of Party A's relevant
            intellectual properties as the royalty share, calculated as 3% of sales
24          from the Pediatric Cloud Apnea System and the Metz Appliance.
            These royalty payments to Party A and Party B will be made in the
25          most tax effective manner.

26   104.    Nine percent is a significant royalty, even in the medical device arena.

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

FIRST AMENDED COMPLAINT FOR, *INTER ALIA*          Case No. 5:20-cv-02132-BLF
TRADE SECRET MISAPPROPRIATION          - 20 -

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1    105.    Appreciating the great value of Serenium's IP, and understanding the value of the

2    Joint Venture, New Century insisted on a "kill clause" to reimburse New Century Sub if Serenium

3    backed out of the deal:

4    27.    Damages: if the product is completed and the Holding
     Company begins its operations, **then Party B cancels the**

5    **authorization/licensing of intellectual property rights and**
     **patent rights, Party B shall pay USD $10 million as damages** to

6    Party A (equals to 10 times the licensing fees of the Cooperation
     Territory), in addition, Party B shall (1) transfer the ownership of

7    the Licensed IP for use only within the Cooperation Territory to the
     Holding Company free of charge; (2) transfer the 40% shares of the

8    Holding Company it owns to Party A free of charge, and (3)
     compensate for all the losses of Party A and the Holding Company.

9    Under such circumstances, without the prior written consent of Party
     A, within 5 years after the transfer of 40% shares of the Holding

10   Company from Party B to Party A aforementioned, Party B and its
     related parties shall not provide any pediatric sleep apnea screening,

11   testing and treatment services by any means (including but not
     limited to establishing subsidiary, branch, or cooperating with a

12   third party) in the Cooperation Territories.

13   **L.    Zhou Kills the Holding Company but Keeps Serenium's Trade Secrets Anyway**

14   106.    Months passed, and New Century's subsidiary still had not formed the holding

15   company contemplated by the Framework Contract.  To prompt New Century to move forward,

16   Serenium was forced to engage regulatory consultants on its own to determine a compliance policy

17   for its product rollout strategy.  During this process, Serenium learned that Chinese regulatory

18   requirements mandated clinical involvement to deliver screening tests to patients.  When Serenium

19   tendered this issue to Zhou, Zhou declared that New Century could still offer the screening test direct-

20   to-consumer, and that the parties could simply ignore these unearthed Chinese regulatory

21   requirements.

22   107.    Serenium refused to disregard Chinese regulatory requirements.  Instead, it pivoted

23   to a different business model in the short term.  Serenium designed a physician-diagnosis model,

24   whereby a physician would review the Serenium test results and offer their independent endorsement

25   of the results.  Serenium disclosed this model to Zhou and New Century.  While this work-around

26   would slightly delay the launch of the technology, it would still allow the Holding Company to bring

27   Serenium's technology to the Chinese market.

28

FIRST AMENDED COMPLAINT FOR, *INTER ALIA*            Case No. 5:20-cv-02132-BLF
TRADE SECRET MISAPPROPRIATION          - 21 -

108.    Despite Serenium's new projections of a slight delay to the overall launch schedule, the physician-diagnosis model was approved by Zhou, Jia, and other corporate officers at New Century in early July 2018.

109.    Serenium remained on track for Chinese FDA approval in 2020 or 2021, after which Serenium's technology could be used as a consumer diagnostic medical product.

110.    Finally, in late July to August 2018, Jia and other New Century employees represented that New Century was prepared to form the holding company.  Plans and presentations were developed and reviewed with Rosen for an investor "road show" supporting New Century's official Interim Report for the first half of 2018.  The road show's purpose was to communicate the optimistic potential for New Century's future by promoting this new holding company and touting the projected treatment of millions of additional children in China.

111.    In preparation for the road show, New Century asked Dr. Gozal, who works in the U.S., to prepare a separate consulting agreement between himself and New Century.  (New Century's interest in concluding a consulting contract with Dr. Gozal in Chicago was contrived to fortify its pipeline of Serenium's trade secret information.)

112.    New Century then prepared a joint press release with Serenium, announcing the formation of the joint business relationship and consulting agreement, and the joint plans to test 50 million patients within the next ten years.  This press release also was reviewed and approved by BCH.  New Century further prepared a disclosure of the Framework Contract to be included into New Century's Interim Report for the first half of 2018.  The Interim Report was scheduled for release following New Century's Board of Directors' meeting on August 28, 2018.

113.    New Century also requested that Serenium send New Century examples of its proprietary oximeter from the United States, which Serenium did in anticipation for the announcement of the joint venture.

114.     New Century requested that Serenium score various sleep studies using its technology, and shipped them to Serenium, in this country.   Serenium scored the sleep studies in California, and returned them to New Century, as requested.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

115.    At the time of the New Century board meeting, preparing to move forward as planned with the launch of the Holding Company, Rosen travelled to New Century's offices in Beijing. Rosen was informed that Zhou was not in China, but would be calling in to the board meeting from Los Angeles, where he was visiting one of his children in college.

116.    However, at the August 28, 2018 board meeting, New Century, at Zhou's direction (who was in the U.S. at the time) and with the Board's approval, resolved not to form the Holding Company.

117.    Following the board meeting, New Century did not issue the planned press release, execute the consulting agreement with Dr. Gozal, or disclose the Framework Contract in the Interim Report, as it had represented to Serenium it would do.  It performed none of the obligations called for by the Framework Contract.

118.    Zhou made this decision because he intended to disclose Serenium's trade secrets to Beijing Jiarun for use in launching its own internet-based pediatric sleep services.

119.    With Serenium's proprietary oximeters, which Serenium sent from California, New Century could wrongfully reverse engineer the devices that provided input for Serenium's diagnostic algorithm.  Retention of the sleep studies scored by Serenium in California provided additional insight into Serenium's trade secret diagnostic methods.  However, Zhou wanted Serenium to provide yet more information about its trade secrets so that Beijing Jiarun and New Century could use this information too in providing their own in-house adult and pediatric sleep diagnostics and treatment.

120.    Following the board meeting, New Century purported to need further proof of the efficacy of Serenium's technology, beyond the existing clinical trial with 432 patients from BCH.

121.    Operating in good faith, Serenium continued to share, from its Palo Alto, San Diego, and Chicago offices, its proprietary information, business plans and methods, testing equipment, and trade secrets to evince its system's proven effectiveness.

122.    Significantly, in October 2018, Serenium trained approximately 200 doctors—represented to be employees of New Century—in how to use Serenium's system to diagnose and

treat pediatric and adult sleep apnea.  Serenium also trained a subset of these doctors in BCH's sleep lab facility. *See* "Medical staff in our hospital participated in the lectures of Chicago otolaryngology medical experts remotely," dated October 21, 2018, available at: http://url.ie/17789 (last visited April 22, 2020) (top photograph depicts room of trainees in Beijing, with Rosen in front row; bottom photograph depicts training session with Dr. Robert Thomas, with Rosen again in the front row).





123.    Although the event was described as a great success and touted on New Century's website and in social media, *see id.*, New Century omitted any reference to Serenium, and Zhou still refused to form the Holding Company.

**M.    Zhou Fails to Return Serenium's Trade Secrets**

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

124.     After Zhou still refused to form the Holding Company in late 2018, relations became increasingly heated between Serenium and New Century.

125.     New Century officers, at Zhou's direction, began to invent causes for the delay, and complained of issues with the technology that had no basis in fact.

126.     Jia, for himself and on behalf of Zhou, threatened Serenium that if they did not deliver their product, New Century would terminate the Framework Contract and, notwithstanding the NDA, attempt to provide pediatric sleep testing through a competitor.

127.     Following further unsuccessful discussions and negotiations, in March 2019, New Century Sub purportedly terminated the Framework Contract, citing certain conditions precedent allegedly not being met.  Serenium responded that it had met all relevant deadlines, but the relationship had clearly broken down by this point.

128.     Although New Century Sub purported to terminate the relationship, New Century failed to return and/or destroy Serenium's trade secrets as required by the NDA.  Indeed, despite Serenium's explicit and repeated requests that Zhou, Jia, and New Century return Serenium's proprietary oximeters, Defendants have—to this day—refused to do so.  Indeed, New Century explicitly told Serenium that it was holding Serenium's IP "hostage."

129.     New Century is now diagnosing and treating patients using the trade secrets disclosed by Serenium.  Additionally, New Century is providing pediatric insurance services in partnership with several Chinese insurance companies that now cover insured sleep diagnostics and services in China—a particularly unconventional offering among insurers.

130.     New Century publicly offers sleep diagnosis as a nationwide service.  It would be incapable of delivering nationwide sleep disorder diagnosis through PSG alone as New Century's only sleep lab partner is located in Beijing.  Instead, after acquiring a controlling interest in Beijing Jiarun, New Century now advertises the provision of telemedicine (e.g., its pediatric platform, "Panda Pediatrics") and nationwide remote consultation with its Beijing physician specialists. It is clear that New Century and Beijing Jiarun are utilizing Serenium's screening tools, data-driven analysis, and training to provide sleep diagnostics and treatment throughout China from their sleep

lab's home base in Beijing.  This market approach is almost identical to that planned with Serenium.

**N.   Proof of Misappropriation: Beijing Jiarun Uses Serenium's Trade Secrets**

131.   Serenium later discovered that Beijing Jiarun is using Serenium's trade secrets to provide its own pediatric sleep services.  Prior to Serenium providing its trade secrets to New Century, Beijing Jiarun never offered sleep-related services.  However, now, Beijing Jiarun provides online patient consultations through its Panda Pediatrics app, a product that it did not have prior, and many of the New Century doctors previously trained under NDA by Serenium in pediatric sleep apnea in October 2018 are identified by Beijing Jiarun as providing patient consultations on its behalf.  That is, Beijing Jiarun is using the doctors Serenium trained, along with Serenium's proprietary technology, to test and treat patients.  The company is doing exactly what the joint venture intended to do, but now simply without its former partners.

132.   Beijing Jiarun is purporting to offer parents the ability to monitor their children's sleep through its App.  Moreover, it is marketing its App (both a consumer version and a pediatrician version) by displaying a watch oximeter similar to the one used and tested by Serenium.  It also references the use of "wearable smart devices and AI intelligent algorithms" to monitor sleep quality.

133.   Beijing Jiarun is scaling rapidly, and based on public reports, expects to double its revenues by the next fiscal year.  Beijing Jiarun is selling millions of dollars of services exploiting Serenium's misappropriated trade secrets.

134.   Additional events suggest that Zhou and his companies further misappropriated Serenium's trade secrets.

135.   For example, on December 22, 2018, Serenium's Chief Technology Officer, Shimon Shmueli left Serenium.  Shmueli, a San Diego resident, had direct access to Serenium's algorithm, the one major trade secret not shared in full with New Century.

136.   In ongoing negotiations at the time, New Century mentioned they had been in contact with Shmueli.

137.   Shmueli later informed Serenium's CEO that he was joining or forming an unidentified "joint venture" that would compete with Serenium.  Other than Serenium, there are no

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

other companies known to have developed this sort of system for screening for pediatric sleep apnea, nor are there any published studies supporting this type of system other than the studies supporting Serenium's system.

138.    When Serenium then demanded return of its company laptop, Shmueli deleted all files and re-formatted the hard drive before sending the laptop back to Serenium's offices.

**O.    New Century Officers and Zhao Facilitated the Misappropriation Out of Self-Interest**

139.    Zhou's conduct was supported and assisted by other New Century officers (and ratified by its Board of Directors).

140.    Jia, New Century's Company Secretary, is also Beijing Jiarun's CEO.

141.    In March 2019, in an apparent effort to obscure his own control of Beijing Jiarun and to reward executive officers at New Century, Zhou changed the ownership of Beijing Jiarun. Zhao's direct ownership was significantly reduced to 9.5%. The other new owners, at least nominally, were Jia, at 4.5%, and another entity, Zhuhai Yunzhong Equity Investment Enterprise Limited Partnership (hereinafter, "Zhuhai"), with controlling ownership of 86% of shares. New Century has since acquired 57.5% of Beijing Jiarun, but Zhuhai remains a large minority shareholder.

142.    Zhuhai has five limited partners, with Zhao owning 49%, Jia owning 13.5%, and three other New Century executive officers, Xin Hong (New Century's Chief Operation Officer), Zhou Hong (New Century's Chief Medical Officer), and Xu Han (New Century's Chief Financial Officer) owning 12.5% each.

143.    Thus, Jia, a New Century officer with access to Serenium's trade secrets, profits personally from helping Beijing Jiarun misappropriate Serenium's trade secrets.[2]

---

[2] Zhou, Xin Hong, and Xu Han all sit on New Century's Board of Directors. Given the extensive business dealings between New Century and Beijing Jiarun, including Board approval of the Framework Contract, and the failure to disclose any such dealings in any of New Century's corporate filings, the Board clearly possesses knowledge of the misappropriated material's disclosure to

(continued…)

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

144.    Zhao, Zhou's wife, was not an officer of New Century.  However, in addition to owning 100% of Beijing Jiarun's shares, she was an officer of Beijing Jiarun until March 2019.  Zhao has knowledge of Beijing Jiarun's misappropriation of Serenium's trade secrets, and benefits personally from the continuing misappropriation of Serenium's trade secrets.

145.    All Defendants were involved in New Century's refusal to return Serenium's trade secrets, and each is aware that New Century and Beijing Jiarun are using Serenium's disclosed trade secrets without permission.

146.    This course of conduct by each Defendant has now cost Serenium the opportunity to bring its technology to the Chinese market.

**P.      New Century and Beijing Jiarun Attempt to Erase Evidence of Wrongdoing**

147.    After Serenium filed its original complaint on March 27, 2020, New Century and Beijing Jiarun, through its officer, Xu Han, attempted to erase evidence of its misappropriation from New Century's and Han's social media and web pages.  These posts show clear use of Serenium's trade secrets, which is presumably why Han deleted them after Serenium filed its complaint.

148.    As discussed above (*see, e.g.,* ¶¶ 22 & 130), New Century uses Beijing Jiarun to provide the online platform for the types of online app-based screening that they had previously discussed jointly providing with Serenium.  The telemedicine capabilities of Beijing Jiarun's platform (under any of its numerous brand names) directly implicate use of Serenium's technology throughout Defendants' system of healthcare providers nationwide.  Believing Serenium to be all but bankrupted and driven out of business, Defendants have liberally advertised services utilizing Serenium's technology on both official and personal social media pages.

149.    On or around March 26, 2020, Xu Han—New Century's CFO and the head of New Century's Chengdu hospital—reshared an old post from July 4, 2019 that announced the launch of

Beijing Jiarun, and has abetted it.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

New Century's "Remote Consultation Platform." *See* July 4 post, circled in below left photo; Han's repost in below right photo.



150.     The article describing the "Remote Consultation Platform" (the link to which is circled in the above screenshots) featured the same press photographs New Century regularly uses to depict Beijing Jiarun's branded "Panda Pediatrics" telemedicine system.  *Compare* left screenshot (below) from Han's repost *with* right screenshot (below) from a Panda Pediatrics post by Zhou on March 4, 2020.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

 

151.   The Remote Consultation Platform was simply Beijing Jiarun's online telemedicine platform operating under yet another brand name.

152.   As Beijing Jiarun began providing sleep apnea diagnostics and sleep treatments only after New Century received Serenium's trade secrets, the New Century CFO's public statement that Beijing Jiarun's telemedicine platform is being used in New Century's Chengdu hospital is a further admission of New Century and Beijing Jiarun's continuous misappropriation of Serenium's technology.  The WeChat post also advertises New Century's physicians consulting out of Beijing from the remote consultation platform.  Many of these physicians personally attended (either live or virtually) or benefitted from Serenium's October 2018 training program in Beijing regarding the field of sleep medicine and sleep apnea diagnostics and treatments.

153.   By April 4, 2020, one week after Serenium filed its original complaint, news of the suit had reached New Century's executives, and Han deleted the late March repost from his profile. The earlier July 4, 2019 post thumbnail was still visible on Han's timeline, but the post itself was unavailable, having been "deleted by the author."

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

154.    After scrubbing his social media pages, Han also directed New Century's Chengdu location to take down its list of prices and services offered through the telemedicine platform.  The link at the bottom of the article now returns a "404 error" from New Century Chengdu hospital's services domain.  *See* (https://shop41562935.youzan.com/wscshop/feature/emptypage).  The "404 error" indicates that the page on New Century Chengdu hospital's website that described the price and availability of its telemedicine services, including sleep apnea diagnostics and treatment, was removed from New Century's servers after Serenium filed its complaint.

155.    This pattern of artifice, within days of Serenium filing this Complaint, is itself evidence of misappropriation.

## FIRST CLAIM

### (Breach of Written Contract Against New Century, Zhou, and Jia)

156.    Plaintiff incorporates by reference paragraphs 1 through 155 of this Complaint as if fully stated herein.

157.    Serenium was a California corporation with its principal place of business in Palo

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

Alto, California; Serenium's principal place of business remains Palo Alto, California. New Century entered into a Nondisclosure Agreement ("NDA") with Serenium on November 24, 2017; the NDA's effective date was November 25, 2017. Serenium executed the NDA in California. The NDA constituted a valid and enforceable contract between Serenium and New Century. The NDA is attached hereto as Ex. A, and incorporated by reference.

158. Serenium performed or substantially performed under the NDA and/or any non-performance by Serenium was excused.

159. New Century and its officers and agents were subject to the NDA.

160. The NDA is reasonable and serves to protect Plaintiff's confidential information and trade secrets, customer relationships and goodwill, and its investments in labor and resources.

161. Serenium disclosed Serenium Confidential Information to New Century under the NDA, including, but not limited to: (1) detailed technical information about how Serenium's screening system worked; (2) Serenium's proprietary modified oximeters; (3) clinical data underlying the creation of Serenium's algorithm; (4) hundreds of files constituting business models, methods, and ideas about how to market Serenium's system and how to monetize the diagnosis and treatment of sleep apnea in China; (5) a business model for how the joint venture could use the Serenium system by including doctors in the diagnosis and treatment while the system was waiting for Chinese approval as a direct-to-consumer or patient system; and (6) physician sleep test score reports for the system tested with New Century. The Confidential Information disclosed under the NDA includes Serenium trade secrets.

162. Provisions regarding confidentiality "survive the termination" of the NDA. *See id.*, § E. Zhou and Jia were aware that they were subject to the provisions of the NDA, as officers of New Century. Zhao was aware that her husband, Zhou, was subject to the NDA.

163. New Century, Zhou and Jia (the "NDA Defendants") breached the NDA, by, among other things: (1) using Serenium Confidential Information to assess whether Beijing Jiarun, which was not a New Century related entity, would like to be part of an agreement with Serenium for distribution of Serenium's services, and disclosing Serenium Confidential Information to Beijing

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1    Jiarun; (2) using Serenium Confidential Information, including certain information identified as trade

2    secrets, in connection with Defendants' own sleep apnea diagnostic and treatment systems, as

3    opposed to solely in relation to New Century's assessment of whether to form a separate formal

4    business venture with Serenium; (3) disclosing Serenium Confidential Information to New Century

5    employees and agents who did not have a need-to-know in connection with evaluating a potential

6    business transaction between Serenium and New Century; (4) failing to return or destroy all

7    Serenium Confidential Information; and (5) exercising ownership over Serenium Confidential

8    Information.

9         164.   Pursuant to the NDA, the NDA Defendants were obligated to "limit access to any

10   Confidential Information to the Receiving Party's employees and agents …[,] safe guard all

11   Confidential Information by using a reasonable degree of care, but not less than that degree of care

12   used by the Receiving Party in safeguarding its own similar information or material[,] and [] use all

13   Confidential Information solely for purposes of determining whether or not Participant[, i.e., New

14   Century,] would like to be part of an Agreement with Company [(Serenium)] for the distribution of

15   Company's services." *See* NDA, § B.  The NDA Defendants' disclosure of Serenium Confidential

16   Information to Beijing Jiarun, and use of Serenium Confidential Information to evaluate a transaction

17   involving Beijing Jiarun—a non-New Century related entity—violated Section B of the NDA.

18        165.   Pursuant to the NDA, the NDA Defendants were obligated to "limit access to any

19   Confidential Information to the Receiving Party's employees and agents … who have a need-to-

20   know in connection with the evaluation of the potential business transaction, and only for use in

21   connection therewith …[,] safe guard all Confidential Information by using a reasonable degree of

22   care, but not less than that degree of care used by the Receiving Party in safeguarding its own similar

23   information or material[,] and [] use all Confidential Information solely for purposes of determining

24   whether or not [New Century] would like to be part of an Agreement with [Serenium] for the

25   distribution of Company's services." *See* NDA, § B.  The NDA Defendants' use, and disclosures to

26   employees and agents, of Serenium Confidential Information, including certain information

27   identified as trade secrets, in connection with Defendants' own sleep apnea diagnostic and treatment

28

system, as opposed to solely in relation to New Century's assessment of whether to form a separate formal business venture with Serenium, violated Section B of the NDA.

166.   Pursuant to the NDA, the NDA Defendants, "[u]pon the earlier of the termination or expiration of [the NDA] or [Serenium's] request" were obligated to "return to [Serenium] all of [Serenium's] Confidential Information or warrant in writing that [New Century] has destroyed such Confidential Information". *See* NDA, § E.   Serenium explicitly and repeatedly requested that Defendants return Serenium Confidential information, the NDA Defendants breached the NDA, and New Century purported to terminate its relationship with Serenium.   Yet, in violation of Section E of the NDA, the NDA Defendants have not returned or destroyed Serenium Confidential Information.

167.   Pursuant to the NDA, the NDA Defendants agreed "that [Serenium] has all rights to or in the Confidential Information and no license or other rights are granted or conveyed by [Serenium] in the Confidential Information." *See* NDA, § F.   The NDA Defendants' use, and disclosures to employees and agents, of Serenium Confidential Information in connection with Defendants' own sleep apnea diagnostic and treatment system, without Serenium's permission, violated Section F of the NDA, as did the NDA Defendants' disclosure of Serenium Confidential Information to Beijing Jiarun, and use of Serenium Confidential Information to evaluate a transaction with Beijing Jiarun.

168.   Serenium suffered damages as a direct and proximate result of the NDA Defendants' violations of the NDA.   The damages suffered by Serenium includes, without limitation, the loss of its business opportunity in China.   Serenium will continue to be damaged as a direct and proximate result of the NDA Defendants' breaches of the NDA.   The NDA Defendants have also been unjustly enriched by their use of Serenium's Confidential Information in violation of the NDA.

169.   The NDA Defendants will continue to breach the NDA as described above unless enjoined from doing so by this Court.   Serenium faces real, substantial and irreparable injury of a continuing nature owing to the NDA Defendants' continuing breaches of the NDA for which Serenium has no adequate remedy at law.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

**SECOND CLAIM**

**(Misappropriation of Trade Secrets Pursuant to 18 U.S.C. §§ 1836(b) and 1837 Against All Defendants)**

170.    Serenium incorporates by reference paragraphs 1-155, 157, 161 and 163-167 of this Complaint as if fully stated herein.

171.    Serenium was a California corporation with its principal place of business in Palo Alto, California; Serenium's principal place of business remains Palo Alto, California.  Serenium is the owner of valid trade secrets improperly acquired by Defendants, trade secrets which were developed in the United States.

172.    Serenium's proprietary confidential technical, financial, and business information disclosed to the Defendants, as further described above, *see, e.g.*, ¶¶ 14 & 75-76, constitutes trade secrets under 18 U.S.C. § 1839(3).  These trade secrets were disclosed under the NDA between Serenium and New Century.  *See., e.g.,* ¶¶ 59, 74, & 121; *see also* Ex. A, § D ("'Confidential Information' shall mean **all information disclosed under this Agreement**, including, without limitation: (a) any data … that is competitively sensitive material, and not generally known to the public, including … information relating to … finance … business plans … (b) any scientific or technical information … that is commercially valuable and secret … and (c) **all confidential or proprietary** concepts, documentation … data … inventions … know-how … and trade secrets ….") (emphasis added).  These trade secrets were secret when disclosed under the NDA.

173.    These trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from their disclosure or use.  *See, e.g.*, ¶¶ 12, 40-41, 43, 45, 49-50, & 105. Serenium Confidential Information, including the trade secrets at issue here, formed the backbone of Serenium's technology and business plans, and its possession and use by Defendants here caused, and continues to cause, significant competitive damage to Serenium.  Throughout its corporate history, Serenium has undertaken reasonable measures to keep secret its proprietary confidential information, including treating the information as highly confidential, marking the information

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

1   "Confidential," monitoring Serenium facilities, maintaining password controls for network and

2   system access, providing this information to third parties only under NDA, and otherwise limiting

3   access to its material to Serenium employees.  Serenium took care not to disclose the trade secrets at

4   issue here in publications or public filings.  For example, the articles referenced in paragraphs 43-44

5   above do not disclose the asserted trade secrets.  Further, Serenium provided Confidential

6   Information to New Century in confidence, only after execution of the NDA, and only subject to the

7   NDA.

8       174.    Defendants misappropriated Serenium's trade secrets.  For example, Defendants used

9   Serenium's trade secrets, without express or implied consent, as further detailed above.  *See, e.g.,* ¶¶

10  164-167.  Defendants knew or had reason to know that they could not use Serenium's trade secrets

11  in this way, as the NDA expressly provided that, for example, New Century "use all Confidential

12  Information solely for purposes of determining whether or not [New Century] would like to be part

13  of an Agreement with [Serenium] for the distribution of [Serenium]'s services."  *See* Ex. A., § B.

14  Defendants also disclosed Serenium's trade secrets without express or implied consent.  *See, e.g.,* ¶¶

15  164-165 & 167.  Defendants knew or had reason to know at the time of Defendants' disclosures that

16  Defendants had a duty to maintain the secrecy of Serenium's trade secrets, as the NDA expressly

17  provided that, for example, New Century: "limit access to … [New Century's] employees and agents

18  … who have a need-to-know in connection with the evaluation of the potential business transaction,

19  and only for use in connection therewith; … take appropriate action by agreement with its employees

20  and agents … having access … to fulfill [New Century's] obligations under this Agreement; … [and]

21  safeguard all Confidential Information by using a reasonable degree of care, but not less than that

22  degree of care used by [New Century] in safeguarding its own similar information …."  *See* Ex. A.,

23  § B.  Defendants also knowingly acquired Serenium's trade secrets by improper means, including by

24  breach of a duty to maintain secrecy.  Defendants' use, disclosure, and acquisition of Serenium's

25  trade secrets constitutes misappropriation under 18 U.S.C. §§ 1836(b), 1837 and 1839(5-6).

26      175.    Defendants Zhou, Jia, Beijing Jiarun, and Zhao knew or had reason to know that New

27  Century and/or another Defendant acquired Serenium's trade secrets by improper means.

28

FIRST AMENDED COMPLAINT FOR, *INTER ALIA*          Case No. 5:20-cv-02132-BLF
TRADE SECRET MISAPPROPRIATION          - 36 -

1    Defendants Zhou, Jia, Beijing Jiarun, and Zhao knew or had reason to know that their knowledge of

2    Serenium's trade secrets derived from or through a person who owed a duty to Serenium to maintain

3    the secrecy of Serenium's trade secrets and limit the use of Serenium's trade secrets.  New Century,

4    and Zhou and Jia as New Century officers, were obligated, pursuant to the NDA, to maintain the

5    secrecy of Serenium's trade secrets and limit the use of Serenium's trade secrets.  Zhou signed the

6    NDA as New Century's "CEO & Chairman," and as set forth above, Jia, New Century's Corporate

7    Secretary, directly participated in discussions with Serenium under the NDA.  Zhao knew or had

8    reason to know of the NDA and New Century, Zhou, and Jia's duties.  Zhao is Zhou's wife and she

9    was a 100% owner, and an officer of, Beijing Jiarun.  Beijing Jiarun knew or had reason to know of

10   the NDA and New Century, Zhou, and Jia's duties, for at least the reason that Jia is its CEO, and

11   New Century, Zhou and Jia falsely held it out to Serenium as a New Century subsidiary in 2018.

12        176.    Serenium's trade secrets misappropriated by Defendants relate to products and/or

13   services used in, or intended for use in, interstate or foreign commerce.  For example, Serenium

14   operates across state lines, with a presence in both California and Illinois.  Further, Serenium

15   intended to commercialize its technology, which constitutes or uses its trade secrets, in not just the

16   U.S., but in China.  *See, e.g.*, ¶¶ 49-59.

17        177.    Serenium, a U.S. company, developed its trade secrets in the U.S.  Defendants

18   communicated with Serenium's U.S. employees and officers, while those officers and employees

19   were in the U.S., to secure the disclosure of Serenium trade secrets to Defendants under an NDA

20   governed by the law of a U.S. state and executed by Serenium in another U.S. state.  Serenium sent

21   Serenium trade secrets misappropriated by Defendants from the U.S. to China.  Defendants sent

22   material (including raw sleep studies) and money to Serenium in the U.S. to encourage the continued

23   disclosure of Serenium trade secrets to Defendants, trade secrets Defendants misappropriated.

24   Defendants solicited consulting services from the U.S. in an effort to encourage Serenium to continue

25   to disclose under NDA trade secrets Defendants would misappropriate.  Defendants conducted

26   business related to their plan to misappropriate Serenium's trade secrets while in the U.S.  Defendants

27   communicated with a former U.S. Serenium officer and employee in an effort to aid Defendants in

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

1

their misappropriation efforts.  As further detailed through Sections I through V of the Complaint,

2

Defendants committed acts in furtherance of the misappropriation alleged herein in the United States.

3

*See, e.g.*, ¶¶ 26, 111, 113-116, 118-121 & 135-138 above.

4

178.    The NDA was entered into in November 2017.  *See* Ex. A, Preamble ("THIS

5

AGREEMENT, effective this 25th day of November, 2017"); *see also id.*, Signature Blocks

6

(showing the NDA was signed on November 24, 2017).  Defendants' misappropriation of Serenium's

7

trade secrets occurred after May 11, 2016, i.e., after enactment of the Defend Trade Secrets Act of

8

2016.  Defendants' misuse of Serenium's trade secrets, without express or implied consent, is

9

ongoing.  For example, both New Century and Beijing Jiarun continue to provide pediatric sleep

10

services using Serenium's trade secrets, including through the Panda Pediatrics branded application.

11

179.    Serenium suffered damages as a direct and proximate result of Defendants'

12

misappropriation of Serenium's trade secrets.  The damages suffered by Serenium include, without

13

limitation, the loss of its business opportunity in China.  Serenium will continue to be damaged as a

14

direct and proximate result of the Defendants' misappropriation.  The Defendants have also been

15

unjustly enriched by their misappropriation of Serenium's trade secrets.

16

180.    Defendants' misappropriation and misconduct was willful and malicious.  For

17

example, Defendants intentionally breached the use and disclosure limitations imposed by the NDA,

18

deliberately exercised ownership over Serenium's trade secrets and/or intentionally acquired

19

Serenium's trade secrets by improper means, in a conscious effort to harm Serenium's competitive

20

position and gain a competitive advantage over Serenium, and even to drive Serenium out of the

21

market and out of business, in reckless disregard for Serenium's rights in its trade secrets.

22

181.    Defendants' use of Serenium's trade secrets, without express or implied consent, in

23

connection with Defendants' own sleep apnea diagnostic and treatment system is ongoing.

24

Defendants' continuing misuse and/or disclosure of Serenium's trade secrets caused and continues

25

to cause irreparable harm to Serenium for which Serenium has no adequate remedy at law.  An

26

injunction prohibiting Defendants from further use and/or disclosure of Serenium's trade secrets is

27

necessary to provide Serenium complete relief.

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

FIRST AMENDED COMPLAINT FOR, *INTER ALIA*                    Case No. 5:20-cv-02132-BLF
TRADE SECRET MISAPPROPRIATION            - 38 -

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### THIRD CLAIM

### (Misappropriation of Trade Secrets Pursuant to California Civil Code §§ 3426, *et seq.* Against All Defendants)

182.    Serenium incorporates by reference paragraphs 1 through 155, 157, 161, 163-167, and 177 of this Complaint as if fully stated herein.

183.    Serenium was a California corporation with its principal place of business in Palo Alto, California; Serenium's principal place of business remains Palo Alto, California.  Serenium is the owner of trade secrets improperly acquired by Defendants, trade secrets which were developed, at least in-part, in Santa Clara and San Diego, California.  Serenium disclosed its trade secrets to Defendants under an NDA Serenium executed in California. As set forth above, Defendants knowingly availed themselves of California, including through acts in furtherance of the misappropriation set forth herein.  *See, e.g.,* ¶¶ 26-27, 114, 115-116, 118-121, 135-138 & 177 (discussing acts committed in the U.S., including California).  Defendants knowingly caused injury to Serenium in California through the misappropriation of Serenium's trade secrets.  *See id.*  No foreign person has been injured by Defendants' misappropriation; for example, no Chinese entity has been injured by Defendants' misappropriation of Serenium's trade secrets.

184.    Serenium's proprietary confidential technical, financial, and business information disclosed to the Defendants, as further described above, *see, e.*g., ¶¶ 14 & 75-76, constitutes trade secrets under Cal. Civ. Code § 3426.1(d).  These trade secrets were disclosed under the NDA between Serenium and New Century.  *See., e.g.*, ¶¶ 59, 74, & 121; *see also* Ex. A, § D ("'Confidential Information' shall mean **all information disclosed under this Agreement**, including, without limitation: (a) any data … that is competitively sensitive material, and not generally known to the public, including … information relating to … finance … business plans … (b) any scientific or technical information … that is commercially valuable and secret … and (c) **all confidential or proprietary** concepts, documentation … data … inventions … know-how … and trade secrets ….") (emphasis added).  These trade secrets were secret when disclosed under the NDA.

185.    These trade secrets derive independent economic value from not being generally known to the public, or to others who can obtain economic value from their disclosure.  *See, e.g.,* ¶¶

Hosie Rice LLP
600 Montgomery Street, 34ᵗʰ Floor
San Francisco, CA 94111

1    12, 40-41, 43, 45, 49-50, & 105.  Serenium Confidential Information, including the trade secrets at

2    issue here, formed the backbone of Serenium's technology and business plans, and its possession

3    and use by Defendants here caused, and continues to cause, significant competitive damage to

4    Serenium.  Throughout its corporate history, Serenium has undertaken reasonable efforts to maintain

5    the secrecy of its proprietary information, including treating the information as highly confidential,

6    marking the information "Confidential," monitoring Serenium facilities, maintaining password

7    controls for network and system access, providing this information to third parties only under NDA,

8    and otherwise limiting access to its material to Serenium employees.  Serenium took care not to

9    disclose the trade secrets at issue here in publications or public filings.  For example, the articles

10   referenced in paragraphs 43-44 above do not disclose the asserted trade secrets.  Further, Serenium

11   provided Confidential Information to New Century in confidence, only after execution of the NDA,

12   and only subject to the NDA.

13           186.    Defendants misappropriated Serenium's trade secrets.  For example, Defendants used

14   Serenium's trade secrets, without express or implied consent, as further detailed above.  *See, e.g.,* ¶¶

15   164-167.  Defendants knew or had reason to know that they could not use Serenium's trade secrets

16   in this way, as the NDA expressly provided that, for example, New Century "use all Confidential

17   Information solely for purposes of determining whether or not [New Century] would like to be part

18   of an Agreement with [Serenium] for the distribution of [Serenium]'s services."  *See* Ex. A., § B.

19   Defendants also disclosed Serenium's trade secrets without express or implied consent.  *See, e.g.*, ¶¶

20   164-165 & 167.  Defendants knew or had reason to know at the time of Defendants' disclosures that

21   Defendants had a duty to maintain the secrecy of Serenium's trade secrets, as the NDA expressly

22   provided that, for example, New Century: "limit access to … [New Century's] employees and agents

23   … who have a need-to-know in connection with the evaluation of the potential business transaction,

24   and only for use in connection therewith; … take appropriate action by agreement with its employees

25   and agents … having access … to fulfill [New Century's] obligations under this Agreement; … [and]

26   safeguard all Confidential Information by using a reasonable degree of care, but not less than that

27   degree of care used by [New Century] in safeguarding its own similar information …."  *See* Ex. A.,

28

FIRST AMENDED COMPLAINT FOR, *INTER ALIA*                    Case No. 5:20-cv-02132-BLF
TRADE SECRET MISAPPROPRIATION              - 40 -

§ B.  Defendants also knowingly acquired Serenium's trade secrets by improper means, including by breach of a duty to maintain secrecy.  Defendants' use, disclosure, and acquisition of Serenium's trade secrets constitutes misappropriation under Cal. Civ. Code § 3426.1(b).

187.    Defendants Zhou, Jia, Beijing Jiarun, and Zhao knew or had reason to know that New Century and/or another Defendant acquired Serenium's trade secrets by improper means. Defendants Zhou, Jia, Beijing Jiarun, and Zhao knew or had reason to know that their knowledge of Serenium's trade secrets derived from or through a person who owed a duty to Serenium to maintain the secrecy of Serenium's trade secrets and limit the use of Serenium's trade secrets.  New Century, and Zhou and Jia as New Century officers, were obligated, pursuant to the NDA, to maintain the secrecy of Serenium's trade secrets and limit the use of Serenium's trade secrets.  Zhou signed the NDA as New Century's "CEO & Chairman," and as set forth above, Jia, New Century's Corporate Secretary, directly participated in discussions with Serenium under the NDA.  Zhao knew or had reason to know of the NDA and New Century, Zhou, and Jia's duties.  Zhao is Zhou's wife and she was a 100% owner, and an officer of, Beijing Jiarun.  Beijing Jiarun knew or had reason to know of the NDA and New Century, Zhou, and Jia's duties, for at least the reason that Jia is its CEO, and New Century, Zhou and Jia falsely held it out to Serenium as a New Century subsidiary in 2018.

188.    Serenium suffered damages as a direct and proximate result of Defendants' misappropriation of Serenium's trade secrets.  The damages suffered by Serenium include, without limitation, the loss of its business opportunity in China.  Serenium will continue to be damaged as a direct and proximate result of the Defendants' misappropriation.  The Defendants have also been unjustly enriched by their misappropriation of Serenium's trade secrets.

189.    Defendants' misappropriation and misconduct was willful and malicious.  For example, Defendants intentionally breached the use and disclosure limitations imposed by the NDA, deliberately exercised ownership over Serenium's trade secrets and/or intentionally acquired Serenium's trade secrets by improper means, in a conscious effort to harm Serenium's competitive position and gain a competitive advantage over Serenium, and even to drive Serenium out of the market and out of business, in reckless disregard for Serenium's rights in its trade secrets.

190.    Defendants' continuing misuse and/or disclosure of Serenium's trade secrets caused and continues to cause irreparable harm to Serenium for which Serenium has no adequate remedy at law.  An injunction prohibiting Defendants from further use and/or disclosure of Serenium's trade secrets is necessary to provide Serenium complete relief.

## PRAYER FOR RELIEF

WHEREFORE, Serenium prays for entry of judgment as follows:

191.    Judgment in Serenium's favor and against Zhou, Jia, Zhao, New Century, and Beijing Jiarun on all causes of action alleged herein;

192.    That the NDA Defendants breached the NDA;

193.    That Defendants have wrongfully misappropriated Serenium's trade secrets;

194.    That this Court issue preliminary and final injunctions enjoining the Defendants, their officers, agents, servants, employees and attorneys, and any other person in active concert or participation with them, prohibiting them from: continuing to use Serenium's trade secrets; continuing to use Serenium's Confidential Information; continuing to disclose Serenium's trade secrets; continuing to disclose Serenium's Confidential Information; continuing to breach the proprietary, confidentiality, use limitation and return/destroy provisions of the NDA; continuing to exercise ownership over Serenium's trade secrets; and continuing to exercise ownership over Serenium's Confidential Information;

195.    That this Court issue preliminary and final injunctions mandating that the Defendants, their officers, agents, servants, employees and attorneys, and any other person in active concert or participation with them, return to Serenium, or destroy, all Serenium Confidential Information and/or trade secrets;

196.    That this Court require Defendants to file with this Court, within thirty (30) days after entry of final judgements, a written statement under oath setting forth in detail the manner in which Defendants have complied with the injunctions;

197.    That Serenium be granted damages in an amount to be proven at trial, but not less than the jurisdictional limit of this Court;

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

198.   That Defendants be ordered to disgorge, restore and/or make restitution to Serenium for all sums constituting unjust enrichment from their wrongful conduct, as allowed by law according to proof;

199.   That Serenium is the prevailing party in this action brought for enforcement of the NDA, and for "a reasonable sum for [Serenium's] attorney's fees and costs of litigation," pursuant to Section I of the NDA;

200.   That Defendants account for and pay to Serenium all damages caused by the misappropriation of Serenium's trade secrets which, pursuant to 18 U.S.C. § 1836(b)(3)(B), includes actual loss and any unjust enrichment not addressed in computing damages for actual loss, or a reasonable royalty in lieu of damages measured by another method;

201.   That Defendants' misappropriation of Serenium's trade secrets was willful and malicious, and for exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C), and reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D);

202.   That Defendants account for and pay to Serenium all damages caused by the misappropriation of Serenium's trade secrets, which pursuant to Cal. Civ. Code § 3426.3, includes actual loss and any unjust enrichment not taken into account in computing actual loss, or a reasonable royalty if neither damages nor unjust enrichment is provable;

203.   That Defendants' misappropriation of Serenium's trade secrets was willful and malicious, and for exemplary damages pursuant to Cal. Civ. Code § 3426.3(c), and reasonable attorneys' fees and costs (including expert expenses) pursuant to Cal. Civ. Code § 3426.4;

204.   That Serenium be granted both pre- and post-judgment interest, at the maximum legal rates provided by statute or law, on any amounts awarded;

205.   That this Court award Serenium its costs and disbursements in this action, including reasonable attorneys' fees; and

206.   That Serenium be granted such other and further relief as may be just and proper.

Dated:  April 22, 2020

/s/ *Spencer Hosie*
SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1    DIANE S. RICE (CA Bar No. 118303)
     drice@hosielaw.com
2    BRANDON C. MARTIN (CA Bar No. 269624)
     bmartin@hosielaw.com
3    DARRELL R. ATKINSON (CA Bar No. 280564)
     datkinson@hosielaw.com
4    FRANCESCA M. S. GERMINARIO (CA Bar No.
     326208)
5    fgerminario@hosielaw.com
6    HOSIE RICE LLP
     600 Montgomery Street, 34th Floor
7    San Francisco, CA 94111
     (415) 247-6000 Tel.
8    (415) 247-6001 Fax

9
10   *Attorneys for Plaintiff*
     *SERENIUM, INC.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

FIRST AMENDED COMPLAINT FOR, *INTER ALIA*          Case No. 5:20-cv-02132-BLF
TRADE SECRET MISAPPROPRIATION          - 44 -

1

## DEMAND FOR JURY TRIAL

2
      Serenium demands a trial by jury on all causes of action, claims or issues in this action that

3
are triable as a matter of right to a jury.  Serenium also respectfully requests leave to amend this

4
Complaint to conform to the evidence, if such amendment is needed for trial.

5
                                  Respectfully submitted,

6

7
Dated:  April 22, 2020                         /s/ *Spencer Hosie*
                                    SPENCER HOSIE (CA Bar No. 101777)

8
                                    shosie@hosielaw.com
                                    DIANE S. RICE (CA Bar No. 118303)

9
                                    drice@hosielaw.com
                                    BRANDON C. MARTIN (CA Bar No. 269624)

10
                                    bmartin@hosielaw.com
                                    DARRELL R. ATKINSON (CA Bar No. 280564)

11
                                    datkinson@hosielaw.com
                                    FRANCESCA M. S. GERMINARIO (CA Bar No.

12
                                    326208)

13
                                    fgerminario@hosielaw.com
                                    HOSIE RICE LLP

14
                                    600 Montgomery Street, 34th Floor

15
                                    San Francisco, CA 94111
                                    (415) 247-6000 Tel.

16
                                    (415) 247-6001 Fax

17
                                    *Attorneys for Plaintiff*

18
                                    *SERENIUM, INC.*

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111