# EXHIBIT A

**Between**

**New Century Healthcare (International) Co. Limited**

与 **and**

**Serenium Inc**

关于成立持股平台公司

**Establishment of Holding Company**

之

框架合同

**Framework Contract**

【2018 年 4 月 [13] 日】

**【April [13], 2018】**

D. R.

# 框架合同

## Framework Contract

甲方：New Century Healthcare (International) Co. Limited（或其指定的关联公司）

Party A: New Century Healthcare (International) Co. Limited (or any of its designated affiliates)

地址：Unit 3214, Cosco Tower, Grand Millennium Plaza, 183 Queen's Road, Central Sheung Wan, HK

Address: Unit 3214, Cosco Tower, Grand Millennium Plaza, 183 Queen's Road, Central Sheung Wan, HK

法定代表人：Zhou Jason

Legal Representative: Zhou Jason

联系人：贾晓锋

Contact Person: Jia Xiaofeng

联系电话：(+86)135 1106 6560

Contact No.: (+86)135 1106 6560

电子邮箱地址：xiaofeng.jia@ncich.com.cn

Email: xiaofeng.jia@ncich.com.cn


乙方：Serenium Inc.

Party B: Serenium Inc.

地址：美国加利福尼亚州帕罗奥多威尔基路 4065 号，邮编 94306

Address: 4065 Wilkie Way, Palo Alto, CA 94306

法定代表人：David Rosen

Legal Representative: David Rosen

联系人：David Rosen

Contact Person: David Rosen

联系电话：(+1) 847 894 1391

Contact No.: (+1) 847 894 1391

电子邮箱地址：DavidR@SereniumScreen.com

Email: DavidR@SereniumScreen.com


鉴于 Whereas,

1. 甲方 New Century Healthcare (International) Co. Limited 为香港上市公司（股票代码：HK.1518）的一

$D_i R$

家关联公司，从事医疗科技行业。甲方拥有医疗技术推广渠道优势。

1. As New Century Healthcare (International) Co. Limited ("Party A") is a related company of Hong Kong listed company (Stock Code: HK.1518) engaged in medical technology. Party A is with the advantage of promotion channels for medical technology;

2. 乙方 Serenium Inc.为注册于美国特拉华州的 C 类企业（EIN 号：47-2257662）。乙方许可并提供【睡眠呼吸暂停筛查、测试（"儿童睡眠呼吸暂停系统"）及治疗方法（"Metz Appliance"）】。乙方持有与【睡眠呼吸暂停筛查、测试和治疗】有关的专利、知识产权、商业机密及专有技术（包括特有的分析方法、基于云端的介入系统、分析及测试相关试剂盒、睡眠呼吸暂停的治疗方法和生物标志物检测等技术），开展与【睡眠呼吸暂停筛查、监测和治疗】有关的临床测试、科研、全球培训及推广、医生和牙医培训以及云端数据分析服务。乙方开发通过互联网交付的产品和服务。乙方持有世界范围的临床数据，并已为所有全球区域开发了筛查和诊断系统。乙方许可特定区域内的知识产权，但为安全和保质起见，乙方仅为被授权的合作伙伴运营该等云、分析和算法。

2. Party B, Serenium Inc., is an American Delaware State C Corporation (EIN # 47-2257662). Serenium Inc. is licensing and providing [sleep apnea screening, testing (the "Pediatric Cloud Apnea System") and treatment solutions ("Metz Appliance")]. Serenium Inc. holds [sleep apnea screening, testing and treatment] related patents, intellectual properties, trade secrets and know-how (including proprietary analytics, cloud based engagement systems, analytic testing kits, treatment solutions for sleep apnea, biomarkers, etc.), and provides [sleep apnea screening, testing and treatment] related clinical trials, research, worldwide education and promotion, physicians and dental training, Cloud based data analysis, etc. Serenium Inc. develops products and services delivered over the internet. Serenium Inc. has worldwide clinical data and has developed a screening and diagnostic system for all global territories. Serenium Inc. licenses intellectual properties in specific territories, but for safe keeping and quality delivery, Serenium operates these cloud, analytics and algorithms for approved partners.

3. 持股平台公司架构将方便其向境内外投资方融得各市场所需要的资金。在前述此种情况下，第三方资金可能会被引入，甲方、乙方所拥有的持股平台公司股份比例将会被稀释。

3. The Holding Company structure will have flexible access to local partner capital and external capital for all the markets as needed.   In such cases, third party funds will be contributed and could dilute the ownership positions of Party A and Party B.

4. 基于双方共同的商业利益，甲、乙方决定设立一家持股平台公司（"持股平台公司"），在中国内地、香

*D. R.*

港特别行政区、澳门特别行政区、台湾地区、日本和韩国(以下简称"合作区域")开展睡眠呼吸暂停软硬件业务和数据分析服务,持股平台公司将通过在每一个合作区域内成立一个运营子公司("子公司")的方式在上述地区提供睡眠呼吸暂停的筛查、测试和治疗服务。成立前述子公司时,持股平台公司可在适宜情形下选择当地能够为持股平台公司或其子公司提供运营支持以及潜在资金资源的市场合作伙伴。持股平台公司也同样可以在满足保持实际运营控制权的前提下,选择在成立子公司时引入其他外部资金合作伙伴。

4.  Based on the common commercial benefits of the Parties, Party A and Party B decide to establish this Holding Company to carry out sleep apnea related software and hardware business and data analysis services in the mainland of China, Hong Kong SAR, Macao SAR, Taiwan region, Japan and South Korea (hereinafter referred to as "Cooperation Territories").  In these Cooperation Territories, the Holding Company will establish an operating subsidiary ("Subsidiary") per territory to provide the operation of sleep apnea screening, testing and treatment in the territories mentioned above.  In establishing these Subsidiaries, when appropriate the Holding Company may choose additional local market partners who could contribute to local operational support and potentially financial resources for the Holding Company or such a Subsidiary.  The Holding Company can also choose to add external financial partner(s) support in the establishment of such Subsidiaries, while maintaining overall ownership control of the Holding Company's activities.

5.  双方就此已于 2017 年 11 月 24 日签订保密协议。

5.  There is an existing confidentiality agreement between the Parties (dated November 24, 2017).


现就双方的权利义务约定如下:

**The Parties hereby agree as follows regarding their rights and obligations:**


一、持股平台公司股份相关约定

**I. Relevant Agreements on the Equity of Holding Company**

6.  双方在持股平台公司中的股份比例为:甲方(包括甲方的任何附属公司或合作伙伴)持股【60%】,乙方(包括乙方的任何附属公司或合作伙伴)持股【40%】。对于持股平台公司在日本、韩国设立的子公司,甲乙双方最终将按 50%:50%比例(无论直接或间接持有)享有权益(若该等子公司包括外部合作方,甲乙双方亦可按其他同等比例享有权益)。除日本、韩国外,对于持股平台公司在合作区域内其他区域设

*D. R.*

立的子公司，甲乙双方最终将按60%：40%的比例（无论直接或间接持有）享有权益（若该等子公司包括外部合作方，则甲乙双方的相对持股比例应保持不变）。

6.   The proportion of the equity of the Parties in the Holding Company is as follows: Party A (including any of its affiliated companies or business partners) [60%] and Party B (including its affiliated companies or business partners) [40%]. Party A and Party B will ultimately have equal equity interest (whether directly or indirectly) of 50%：50% (or other equal amount if outside third partners are included in entering these markets) in the Subsidiaries established by the Holding Company in Japan and South Korea. For other Subsidiaries established by the Holding Company within the Cooperation Territory other than in Japan and Korea, the ultimate equity interest of Party A and Party B (whether directly or indirectly) in the Holding Company will be 60%：40% (if outside third partners are included in entering these markets, the comparative shareholding ratio between the parties shall be the same).

7.   持股平台公司董事会包括三名成员，其中2名由甲方任命，1名由乙方任命。

7.   The Holding Company Board of Directors will be made of 3 members, including 2 members from Party A and 1 member from Party B.

8.   甲方指定持股平台公司董事会的董事长，乙方指定持股平台公司董事会的副董事长。持股平台公司的董事会将在持股平台公司设立后尽快聘任持股平台公司的总经理。

8.   Party A selects the Chairman of the Board of Directors of the Holding Company, and Party B selects the Vice Chairman of the Board for the Holding Company. The Board of Directors of the Holding Company will engage the General Manager of the Holding Company who will be hired as soon as practical upon the establishment of the Holding Company.

9.   为最大化利用乙方的医疗资源以及全球声誉，在全部合作区域范围内，所有儿童睡眠呼吸暂停系统相关的产品及服务品牌名称，在当地使用的产品名称以外需同时包含"Serenium"或其他乙方认可的名称。所有"Metz Appliance"相关的产品及服务品牌名称，在当地使用的产品名称以外需同时包含"Metz Appliance"或其他乙方认可的名称。变更前述品牌名称的构成条件，需得到持股平台公司董事会的一致同意。

*D. R.*

9. To leverage Party B's clinical expertise and worldwide reputation, the brand name in addition to the local product name will include "Serenium" or other Party B approved name in all products and services sold for the Pediatric Cloud Apnea System, and the brand name, in addition to the local product name, will include "Metz Appliance" or other Party B approved name in all product and services sold for the Metz Appliance, in all Cooperation Territories. Decisions to modify this brand name condition, will require the unanimous approval of the Holding Company's Board of Directors.

10. 以下行为或决定须经持股平台公司董事会一致批准通过,其余董事会决议事项经 2/3 董事同意即可通过:

10. The following actions or decisions require the unanimous approval by of the Board of Directors of the Holding Company:

  i. 增加持股平台公司董事会人数;

  i. Adding any Directors to the Board of Directors of the Holding Company;

  ii. 出售持股平台公司或其子公司的大部分资产(即出售持股平台公司或其子公司超过 50%的资产);

  ii. substantial sale of the assets of the Holding Company or the Subsidiaries (any sale of greater than 50 % of the assets of the Holding Company or the Subsidiaries);

  For the other actions or decisions of the Board, the approval by 2/3 of the Board of Directors of the Holding Company will be required.

11. 持股平台公司中,甲方在持股平台公司成立之时的出资额为人民币【2000 万元】(或等值港币),并由此持有持股平台公司 60%的股份;乙方以技术专利、商业机密及专有技术在合作区域内的永久排他许可使用权、专家咨询服务和培训服务(具体如附件 1 所示)出资,占持股平台公司 40%的股份(持股平台公司成立 1 年内,乙方提供的咨询和培训服务须保证甲方或持股平台公司的医疗和市场人员可以正常使用和解读乙方技术并导出相应的分析报告。持股平台公司成立 1 年后,乙方提供咨询和培训服务的费用由持股平台公司另行承担)。持股平台公司需就甲方提供的普通运营支持(包括但不限于甲方提供的相关技术服务、营销支持和分销服务)向甲方另外支付报酬。前述甲方提供普通运营支持服务以及乙方在持股平台公司成立 1 年后提供的咨询、培训服务的相关费用标准及其他条件,由双方另行书面约定。

11. In the Holding Company, Party A's amount of contribution is RMB [20 million] (or equivalent HKD) upon formation of the Holding Company which equals to 60% of the equity of the Holding Company

*D. R.*

and Party B contributes with the perpetual exclusive licensing of technical patents, trade secrets, and know-how, experts consulting and training service (as listed in Attachment 1) within the Cooperation Territories, which equals to 40% of the equity of the Holding Company. Party B shall guarantee that the consulting and training services provided by Party B shall be sufficient for the medical and marketing personnel of Party A (within 1 year from the establishment of the Holding Company) or the Holding Company to use and interpret the analysis reports derived from Party B's technologies. 1 year after the establishment of the Holding Company, the costs of Party B providing the consulting and training services shall be borne by the Holding Company.   Party A will be paid for the normal operational support by the Holding Company, which includes but is not limited to relevant technology supports, marketing support and distribution services from Party A, this will be paid for by the Holding Company. Any unsettled issues relating to the normal operational support provided by Party A and the consulting and training services provided by Party B (1 year after the establishment of the Holding Company), such as fees and other conditions, shall be discussed separately by the two parties.

12. 乙方授予甲方期权，允许其在适当的时机购买乙方普通股份，股份比例为【19.9】%，乙方的投前估值为【2500万】美元。该期权于 2018 年 7 月 31 日到期。甲方有权在到期日前行使全部或部分期权。本期权的行使不附带其他条件。

12. Party B grants an option to Party A to purchase 19.9% of common shares in Serenium Inc. at an appropriate time, and the pre-investment or pre-money value is USD $ 25 million, and this option will expire July 31, 2018. Party A may exercise all or part of the options before the expiration date. There are no other conditions set forth on related to this option grant.

13. 乙方在合作区域内排他许可持股平台公司（为免疑义，持股平台公司应有权向其子公司分许可该等云服务、分析和算法）使用实施相关的儿童睡眠呼吸暂停系统云服务、分析和算法，持股平台公司向乙方支付共计 100 万美元首期许可使用费（支付方式详见本合同第三条第 25 款）；之后，持股平台公司每年应向甲方和乙方分别支付年许可使用费（费率分别为 3%和 9%，具体详见本合同第三条第 26 款）。双方应在持股平台公司成立时签署正式的全部技术、专利、知识产权等的授权（许可）协议。

13. Party B grants the Holding Company the right to operate the pediatric cloud services, analytics and the algorithm on an exclusive basis in the Cooperation Territories (for the avoidance of doubt, the

*D. R.*

Holding Company shall have the right to grant its Subsidiaries the sublicense to operate the cloud services, analytics and the algorithm), for which the Holding Company shall pay a consideration of USD $ 1 million as first payment (as provided in Clause III 25), afterwards, the Holding Company will pay royalty fees annually to Party A (at a rate of 3%) and Party B (at a rate of 9%), as provided in Clause III 26. Both Parties shall sign formal authorization (licensing) agreements for all technology, patents, and intellectual properties upon the formation of the Holding Company.

14. 关于相关知识产权的许可、使用、转让等需要另行签订正式的许可、使用、转让协议，该等协议的生效以及在其履行期限内的继续生效不因乙方在持股平台公司的持股比例变化而变化。

14. Formal licensing, use and transfer agreements shall be signed for the licensing, use and transfer of related intellectual property rights. The effectiveness of such agreements and the validity of such agreements within the period of their performance shall not be changed by Party B's shareholding status in the Holding Company.

## 二、甲方出资的先决条件
## II. Prerequisites for Party A's Contribution

15. 甲方已于 2018 年【1】月【16】日前对乙方完成满意的尽职调查；

15. Party A completed satisfactory due diligence over Party B by January 16, 2018;

尽职调查费用由甲方垫付，如持股平台公司成立，尽职调查费用由持股平台公司承担，如持股平台公司不成立，费用由甲方承担，乙方应当配合甲方进行尽职调查。

If the Holding Company is established, then the Holding Company shall assume the fee for due diligence paid by Party A at first. But if the Holding Company is not established, then Party A shall assume the fee. Party B shall cooperate with Party A's due diligence.

根据甲乙双方同意的初始条款清单的意图和精神，自 2017 年 12 月 13 日起，双方开展了一系列细节电话会议和商谈，期间乙方已向甲方提供了其所有要求的尽职调查材料。在电话会议和商谈期间双方已审核每一条尽职调查项目，包括但不限于从北京儿童医院获取的乙方知识产权临床证明，且满足甲方要求。

*D. R.*

进行该等披露后，甲方未继续提出任何额外信息要求，且同意所有尽职调查已于 2018 年【1】月【16】日完成并认可。

In compliance with the intent and the spirit of the original term sheet, as agreed by Party A and Party B, starting on December 13, 2017 Party A and Party B conducted a series of detailed phone conference calls and meetings, during which Party B provided all the due diligence materials requested by Party A to Party A.  During these calls and meetings each due diligence item was reviewed and questions replied to, including but not limited to the clinical proof of Party B's intellectual property viability from the Beijing's Children's Hospital trial, to Party A's satisfaction. Following these disclosures, Party A did not make any additional requests for information and Party A agrees that all Due Diligence is completed and acceptable by January 16, 2018.

16. 持股平台公司的设立以及本合同的签署事宜已于 2017 年【1】月【18】日前获得甲方董事会的最终批准。

16. The establishment of the Holding Company and this Framework Contract obtained the final approval by the board of directors of Party A before January 18, 2018.

17. 双方应签署正式的合同，其中包括但不限于本合同。

17. The Parties shall sign a formal contract, which will incorporate this Framework Contract Agreement.

18. 达成其他双方约定的投资交割条件。

18. Other conditions for investment delivery agreed between the Parties.

三、基于持股平台公司双方（甲方、乙方）前期沟通，双方对持股平台公司的运营以及云端服务器和数据的管理达成如下约定：

III. Based on the preliminary communication between the Parties of the Holding Company (Party A and Party B), the Parties reach the following agreements on the operation of the Holding Company and management of cloud server and data:

19. 本合同于 2018 年 4 月 13 日签署。

D. R.

19. This Framework Contract Agreement will be signed and founded by April 13, 2018.

20. 位于香港的持股平台公司将由甲、乙双方于本合同签署之日起六十（60）日内共同设立。持股平台公司

成立前，甲、乙双方将共同准备并批准以下因设立持股平台公司所需的文件，包括（1）股东协议；（2）

公司章程和其他公司成立文件，并且双方还将确定第 21 条所述的授权（许可）使用协议的签署版本。

a）持股平台公司将在中国境内设立外商独资企业（"中国 WFOE"）。在合作区域内，持股平台公司将

以较为节税的方式设立其他子公司。

b）中国 WFOE 的运营计划将在持股平台公司成立后由其董事会通过。其他子公司的运营计划将在

2018 年内通过。

i.运营计划将以标明包括市场开发、市场调研、销售、监管、法律合规、当地知识产权费用、临床费用、

总经理（津贴、房租及工资）、当地运营团队费用以及其他费用在内的全部支出。

ii 上述中国 WFOE 或其子公司的全部支出如有甲方、乙方或其他相关合作伙伴代为支付的情况，将

由其原价透明地向相关子公司收取。

c）持股平台公司将及时选择并任命一位总经理。

d）持股平台公司将拥有并运营应用服务器；算法服务器由持股平台公司所有，但乙方拥有排他接入权，

并由其负责运营该服务器。

20. Party A and Party B will jointly form the Holding Company in Hong Kong within sixty (60) days of the signing of this Contract. Before the formation of the Holding Company, documents including: (1) shareholder's agreement; (2) articles of association and other relevant company formation documents for establishing the Holding Company will be mutually developed and approved by both Party A and Party B, and the license agreement as mentioned in Clause 21 will be prepared by both Party A and Party B in the agreed form for signing.

a)   The Holding Company will form the China Wholly Foreign Owned Enterprise or WFOE.   In the Cooperative Territories, the Holding Company will establish Subsidiaries in a tax efficient manner.

b)   Operating Plan for China WFOE be approved upon formation of the Holding Company by the Board.   Approval of the Operating Plans for the other Subsidiaries will be completed later in 2018.

i.   The Operating Plan will identify all the costs such as marketing, market research, sales, regulatory, legal, local IP fees, clinical, general manager (benefits, housing and salary), local operating team, and other local costs.

ii. All such costs incurred by the China WFOE or Subsidiaries from Party A, Party B or other related Subsidiary partners will be transparently charged at-cost to the related Subsidiaries.

c) The Holding Company will select and approve a General Manager in a timely manner.

d) The Holding Company will own and operate the application server; the algorithm server will be owned by the Holding Company, while Party B will have exclusively accesses and operates the algorithm server.

21. 持股平台公司成立后将批准中国境内运营计划并签署正式的、与"儿童睡眠呼吸暂停系统"和"Metz Appliance"相关的技术、专利、知识产权（具体如附件 1 所示，以下简称"被许可知识产权"）的授权（许可）使用协议。乙方确认已于本合同签署前将该等知识产权中的专利向中国国家知识产权局提交专利登记申请，并承诺于本合同签署后尽快完成登记程序。

21. Upon the formation of the Holding Company, the Operating Plans will be approved for China, and the License Agreement for the licensing of the technology, patents and intellectual properties related to "Pediatric Cloud Apnea System" and "Metz Appliance" (as listed in Attachment 1, hereinafter as "Licensed IP") will be signed. Prior to the signing of this Contract, Party B confirms that it has submitted the application for the registration of the licensed patents in mainland China to State Intellectual Property Office of the PRC, and covenants to complete the registration procedure as soon as practical following the execution of this Contract.

22. 中国 WFOE 将在持股平台公司成立后六十（60）日内成立（若因政府部门审批/备案原因导致未能如期完成设立的，则该期限相应顺延）。

22. Form the China Wholly Foreign Owned Enterprise or WFOE by the Holding Company within sixty (60) days (this period may be extended due to the reason of approval procedure of the regulatory authority) of the Holding Company's formation.

23. 中国境内服务器运营模式（详见附件 2 示意图）

a）甲方的境内关联方北京嘉润云众健康科技有限公司（"嘉润云众"）将拥有并运营全部服务器，包括 ICP 服务器。嘉润云众将拥有中国大陆互联网信息业务和增值业务许可证。

b）嘉润云众将为乙方的专利算法及分析独立拥有并运营一个电脑服务器。前述独立服务器将被乙方独家管

*D. R.*

理、获取并控制。

c) 中国 WFOE 将提供当地市场运营服务（市场开发、销售、监管、法律合规、临床以及其他当地服务），并将从嘉润云众获得相应的 ICP 服务。

d) 就嘉润云众向乙方及中国 WFOE 提供的服务，嘉润云众将按市场价格收取服务费，具体由双方另行约定。

23. Server operations in China (see diagram in Attachment 2):

   a) Beijing Jiarun Yunzhong Health Technology Co., Ltd.("Jiarun Yunzhong"), a related party of Party A, will own and operate all servers, including the ICP server. Jiarun Yunzhong will own the ICP license for mainland China.

   b) Jiarun Yunzhong will own and operate a separate computer server for Party B's proprietary analytics and algorithms.   This separate server will be exclusively managed, accessed and controlled by Party B.

   c) The China WFOE will provide the local market operating activities (marketing, sales, regulatory, legal, clinical, and other local services), and will access the ICP services from Jiarun Yunzhong.

   d) For the services provided by Jiarun Yunzhong to China WFOE and Party B, China WFOE shall pay service fee to Jiarun Yunzhong at arm's length.


24. 乙方除获得持股平台公司 40%股份外，持股平台公司就使用乙方的相关技术、专利和知识产权（具体如附件 1 所示）另须支付一次性的首期许可使用费 100 万美元（"首期付款"），共分三期支付，分别为 50 万美元、25 万美元和 25 万美元，具体所述：

24. In addition to the 40% of equity of the Holding Company obtained by Party B, the Holding Company shall pay Party B for technology, patent, and intellectual properties (as listed in Attachment 1) a one-time initial license fee ("Initial Payment") in the amount of US $1,000,000, which will be paid in three installments: USD $500,000, USD $250,000, and USD $250,000, as below:


专利使用费：持股平台公司成立后向乙方支付专利许可使用费，以获取与儿童睡眠呼吸暂停系统（不包括运营和保护云服务、分析和算法，该等内容由乙方独家运营，供持股平台公司在合作区域内独家使用）和 Metz Appliance（不包括 Metz Appliance 设备的生产，其将由乙方许可的实验室独家完成）相关的专利、知识产权、专有技术和商业机密的许可，以及科学研究、算法、应用软件的开发更新及在合作区域进一步开发上述产品和服务的中文版本。

Fees for using patents: After establishment, the Holding Company shall pay Party B the fees for

D, R.

licensing the patents, for the licensing of other intellectual properties, know-how and trade secrets about the Pediatric Cloud Apnea System (with the exception for the operation and safe keeping of the cloud services, analytics and the algorithm, which will be operated exclusively by Serenium Inc, for the exclusive use of the Holding Company in the Cooperation Territories), Metz Appliance (with the exclusion of the production of the Metz Appliance, which will be exclusively done by a Serenium Inc. approved laboratory), and development and update of scientific research, algorithm and application software and the further development of the Chinese version of aforementioned products and services in Cooperation Territories.

25. 支付条款如下：

25. The **terms of payment** are listed as follows:

第一期付款

The first installment:

双方签订合同后的七十二（72）小时内，甲方应向或安排第三方向乙方支付款项：50 万美元。收到上述款项后，乙方将授权持股平台公司使用其儿童睡眠呼吸暂停系统和 Metz Appliance 及相关服务的专利、知识产权、专有技术及商业机密。

Within seventy-two (72) hours from the signing of this Framework Contract, Party A shall pay or arrange payment through a third party the sum of USD $ 500,000 to Party B.   Upon receipt of said sum, Party B shall authorize the Holding Company to use the licensed patents, intellectual properties, know-how and trade secrets of Pediatric Sleep Apnea Cloud System and the Metz Appliance.

第一期付款由甲方代持股平台公司支付。持股平台公司完成设立后，应向甲方返还该笔第一期款项。

The first installment shall be paid by Party A on behalf of the Holding Company. The Holding Company shall pay the first installment back to Party A upon its establishment.

第二期付款：

The second installment:

持股平台公司成立后五（5）日内，持股平台公司向乙方支付 25 万美元。

Within five (5) days upon the formation of the Holding Company, the Holding Company shall pay USD $ 250,000 to Party B.

第三期付款：

The third installment:

在持股平台公司验收并测试云系统合格，且云端系统、产品和服务达到商业化状态后，持股平台公司向乙方支付最后一期 25 万美元。为免歧义，"商业化状态"是指在 500 人次的患者测试中系统故障率不超过 5%，而"系统故障"是指系统无法为患者生成并发送结果。

Upon the acceptance and testing of the Cloud system by the Holding Company, and the commercial sales of the Cloud system, product and service, the Holding Company shall pay the last installment, of USD $ 250,000, to Party B. For the avoidance of doubt, "commercial sales" means a maximum system failure rate of 5% in a group of 500 tests with patients and "system failure" means the inability of the system to produce a result and deliver the result to the patients.

第一期付款后的 180 天内，若第三期付款条件仍未满足的，则持股平台公司应通知乙方，并可额外延长 90 天给乙方来遵守和交付产品的开发，满足第三期付款条件。若该 90 天时间过后，第三期付款条件仍未满足，则甲方有权解除本合同。如果发生前述情形导致本合同被甲方解除，乙方应向持股平台公司或甲方退还已支付的全部费用并承担相应的违约责任， 且在该等情况下，持股平台公司和/或甲方不对乙方的专利权、知识产权或产品享有任何权利和主张。

Within 180 days after the payment of the first installment, if the conditions precedent as stipulated for the third installment have not been satisfied, then the Holding Company shall notify Party B, and may grant Party B 90 days to comply and deliver such products development. After such 90 days' time period, if the conditions precedent for the third installment have not been satisfied, then Party A shall have the right to terminate this Contract. If this Contract is terminated by Party A under these conditions, then Serenium Inc. shall refund all fees to the Holding Company or Party A and Party B shall be liable for breach of contract. Under such circumstance, the Holding Company and/or Party A shall have no rights and no recourse to any of Serenium Inc.'s patents, intellectual property, or products.

首期许可使用费共 100 万美元，按照如上约定分三期支付。此外，持股平台公司在合作区域独家被许可使用被许可知识产权（具体如附件 1 所示），需向乙方支付按销售额计收的许可使用费，具体如下所述，乙方的收款账户参考附件 3。

The one-time initial license fee for licensing intellectual properties is USD $ 1 million in total, and shall be paid in the aforesaid three installments. In addition, there are recurring I payments to be paid by

*D. R.*

the Holding Company for using the Licensed IP (as listed in Attachment 1) in the Cooperation Territory as noted below. Payment instructions to Party B are in Attachment 3.

26. 专利许可营业收入分成：受制于中国国家外汇管理局(SAFE)的要求及其他相关要求，持股平台公司或其子公司应以美元形式向乙方支付专利及相关知识产权许可使用费，金额为该等被乙方许可使用的专利及相关知识产权所产生的销售总额或销售收入的 9%，具体为儿童睡眠呼吸暂停系统的终端用户销售额和 Metz Appliance 的终端用户销售额的 9%。此外，持股平台公司或其子公司还应向甲方支付知识产权许可使用费，金额为被甲方许可使用的知识产权所产生的销售总额或销售收入的 3%，具体为儿童睡眠呼吸暂停系统的终端用户销售额和 Metz Appliance 的终端用户销售额的 3%。前述支付给甲方和乙方的知识产权许可使用费将以较为节税的方式予以支付。

甲方和乙方一致同意，乙方将被许可知识产权（具体如附件 1 所示）的所有权转让给持股平台公司并且放弃收取上述许可使用费，将有助于提高持股平台公司的 IPO 估值。基于使得持股平台公司的 IPO 估值最大化的目标，以下安排将适用：

（1）持股平台公司进行 IPO 时，乙方将放弃其向持股平台公司收取 9%许可使用费的权利，并且甲方将放弃其向持股平台公司收取 3%许可使用费的权利；

（2）如果根据公允意见，持股平台公司的 IPO 估值高于或等于四十（40）亿港币，则乙方将无偿向持股平台公司转让被许可知识产权；

（3）如果根据公允意见，持股平台公司的 IPO 估值低于四十（40）亿港币，则持股平台公司应当按照以下计算公式，向乙方支付其因转让被许可知识产权而获得的对价：

（a）如果在 IPO 时，乙方在持股平台公司的持股比例等于或大于 40%，则无须向乙方支付任何对价；

（b）如果在 IPO 时，乙方在持股平台公司的持股比例低于 40%，则持股平台公司应当向乙方支付的对价应等于【40% － 乙方在持股平台公司的实际持股比例】X【四十（40）亿港币 － 公允意见对持股平台公司的估值】的乘积。

（4）本协议一经签署以及本协议签署后的任何时候，作为乙方在持股平台公司 IPO 之后转让被许可知识产权的对价，甲方以及任何第三方（包括但不限于甲方的任何关联方，但不包括持股平台公司及其子公司）同意永远不在合作区域内开发、销售、使用或者分销任何与持股平台公司提供的、或者预期提供的产品和服务相竞争的产品和服务。

*D. R.*

26. Operating Revenue share for licensing the patent: The Holding Company or the Subsidiaries shall pay Party B 9% of the total end-user sales volume or end-user sales revenues generated from licensing and using of Party B's patent and relevant intellectual properties as the royalty share for licensing the patent in US dollars, calculated as 9% of sales from the Pediatric Cloud Apnea System and the Metz Appliance subject to State Administration of Foreign Exchange (SAFE) requirements and other relevant requirements.   In addition, the Holding Company or the Subsidiaries shall also pay Party A 3% of the total end-user sales volume or end-user sales revenues generated from licensing and using of Party A's relevant intellectual properties as the royalty share, calculated as 3% of sales from the Pediatric Cloud Apnea System and the Metz Appliance. These royalty payments to Party A and Party B will be made in the most tax effective manner.

Party A and Party B agree that the transfer of the Licensed IP (as stated in Attachment 1) from Party B to the Holding Company and the elimination of the royalty payments of the abovementioned licenses will favorably improve the Holding Company's IPO valuation. In recognition of the goal to maximize the Holding Company's IPO valuation, the following plan will apply:

(1) Upon the IPO of the Holding Company, Party B will forgo its 9% royalty and Party A will forgo its 3% royalty as mentioned above;

(2) If the IPO valuation of the Holding Company is higher than or equal to four (4) billion Hong Kong Dollar (HKD) as determined by a Fairness Opinion, then there will be no consideration provided to Party B for transferring the Licensed IP to the Holding Company.

(3) If the IPO valuation of the Holding Company is lower than four (4) billion Hong Kong Dollar (HKD) as determined by a Fairness Opinion, then the Holding Company shall pay Party B a consideration for transfer of the Licensed IP calculated based on the following formula:

(a) In case Party B owns 40% or more of the equity ownership of the Holding Company at the time of the IPO, then the consideration to Party B will be zero;

(b) In case Party B's equity ownership of the Holding Company is below 40%, then the difference between this 40% equity and Party B's actual equity ownership at the time of the IPO, will be multiplied by the difference of the four (4) billion HKD and the Fairness Opinion's valuation of the Holding Company. This resulting total will be the consideration to be paid by the Holding Company to Party B.

(4) Upon the signing of this Contract and at any time thereafter, in consideration for Party B's transfer

*D. R.*

of the Licensed IP to the Holding Company, Party A and any third parties (including but not limited to any affiliates of Party A, but excluding the Holding Company and its Subsidiaries), agree to never develop, sell, use or distribute any products or services within the Cooperation Territory that compete with the products and services envisioned or provided by the Holding Company.

27. 损害赔偿：若产品完成且持股平台公司开始运作，乙方取消授权知识产权及专利权，则乙方须向甲方支付一千万美元的赔偿（10 倍于合作区域的首期许可使用费），同时乙方须：（1）无偿地将合作区域内被许可知识产权的所有权转让给持股平台公司，并且仅供持股平台公司在合作区域内使用；（2）其持有的持股平台公司 40%的股份无偿转让给甲方；（3）并赔偿甲方及持股平台公司由此遭受的全部损失。在前述情形下，未经甲方事先书面同意，乙方及其关联方在将其持股平台公司中的股份转让给甲方后的 5 年内不得在合作区域内以任何方式（包括但不限于设立子公司、分支机构，或与第三方合作）提供儿童睡眠呼吸暂停筛查、测试和治疗服务。

27. Damages: if the product is completed and the Holding Company begins its operations, then Party B cancels the authorization/licensing of intellectual property rights and patent rights, Party B shall pay USD $10 million as damages to Party A (equals to 10 times the licensing fees of the Cooperation Territory), in addition, Party B shall (1) transfer the ownership of the Licensed IP for use only within the Cooperation Territory to the Holding Company free of charge; (2) transfer the 40% shares of the Holding Company it owns to Party A free of charge; and (3) compensate for all the losses of Party A and the Holding Company. Under such circumstances, without the prior written consent of Party A, within 5 years after the transfer of 40% shares of the Holding Company from Party B to Party A aforementioned, Party B and its related parties shall not provide any pediatric sleep apnea screening, testing and treatment services by any means (including but not limited to establishing subsidiary, branch, or cooperating with a third party) in the Cooperation Territories.

28. 乙方将与持股平台公司合作，以在中国大陆及其他合作区域改善其专利和知识产权的相关程序，包括但不限于根据专利合作条约(PCT)办理相关手续。在合作区域内，持股平台公司应支付该等专利和知识产权改善以及该等改善相关服务所导致的直接费用（根据持股平台公司运营计划确定）。若在前述合作中形成由乙方和持股平台公司共同参与研发的新的知识产权，则该等新知识产权应由乙方和持股平台公司共有；由乙方独自研发的新知识产权由乙方独自拥有，由持股平台公司独自研发的新知识产权由持股平台公司独自拥有。

*D. R.*

28. Serenium Inc. will work with the Holding Company to improve the related procedures of its patent and intellectual properties in the mainland of China and other Cooperation Territories, including but not limited to the handling of relevant formalities under PCT, and the direct costs for such patent and intellectual property improvements and related services for such improvements as approve by the Holding Company's Operating plan will be paid by The Holding Company in the Cooperation Territory. During the cooperation aforementioned, if any new intellectual property is Jointly created by the Holding Company and Party B, it shall be jointly owned by Party B and the Holding Company. If any new intellectual property is created independently by Party B, it shall be owned by Party B; likewise, the new intellectual property created independently by the Holding Company, shall be owned by the Holding Company.

29. 客户临床数据属于客户，会上传至云端(为免疑义，中国大陆服务器由嘉润云众拥有，境外服务器由持股平台公司所有)，但数据传输应保密，且相关数据的应用应当符合相关法律规定。

29. Customers' clinical data belong to themselves and will be uploaded to the cloud (for the avoidance of doubt, the servers in the mainland China are owned by Jiarun Yunzhong and the servers outside of China are owned by the Holding Company). But the data transmission is confidential and the application of related data shall comply with relevant laws and regulations.

30. 客户的统计数据归属于不同的合作方（甲方用户的统计输出数据属于甲方，体检机构的统计数据属于体检机构），这些数据在可适用法律许可范围内，匿名分享给乙方以便未来发展相关的产品和服务。为保障安全运行，乙方将保留结果分析及算法，以便保护全部知识产权，并将继续在合作区域许可持股平台公司使用该知识产权。

30. The statistical data of customers belong to the different partners (the statistical output data of Party A's users belong to Party A and those of the physical examination organizations belong to the physical examination organizations). And these data will be shared to Party B anonymously within the scope permitted by applicable laws for development of relevant products and services in future, and for safe keeping and operating, Party B will retain the resulting analysis and algorithms to protect the overall intellectual property and will continue to license the intellectual property to the Holding Company for use in the Cooperation Territory.

D. R.

31. 客户的临床数据，在中国法律且客户个人允许的情况下，可以属于甲方。

31. When allowed by Chinese laws and customers themselves, customers' clinical data may belong to Party A.

32. 乙方拥有云端分析的算法和 AI 开发，希望能够利用云端数据进行临床测试。

32. Party B has the algorithm for cloud analysis and AI development, hoping to use the cloud data for clinical testing.

四、甲方或乙方的退出：
IV. Party A or Party B's Quit

33. 乙方及乙方股东可以选择在【5】年之内以合理的估值转让乙方持有的持股平台公司股份或乙方自身的股份，甲方均拥有优先购买权，且该等优先购买权和后续付款必须在 90 日内完成。

33. Party B and its shareholders may choose to transfer the share of the Holding Company or Party B itself at a reasonable estimated value within [5] years and Party A has the right of first refusal to the transferred shares, and such right of first refusals and subsequent payments must be completed in 90 days.

34. 甲方及甲方股东可以选择在【5】年之内以合理的估值转让甲方持有的持股平台公司股份，乙方均拥有优先购买权，且该等优先购买权和后续付款必须在 90 日内完成。

34. Party A and its shareholders may choose to transfer the share of the Holding Company at a reasonable estimated value within [5] years and Party B has the right of first refusal to the transferred shares, and such right of first refusals and subsequent payments must be completed in 90 days.

五、其他约定
V. Other Agreements

D.R.

35. 任何对本合同下的权利和/或义务进行的授权、出售、再许可或转让，均应经双方书面同意。

35. Granting, selling, sublicensing or assignment of any rights and/or obligations under this Contract shall be agreed by both Parties in writing.

36. 本文全部条款经双方确认后，由律师负责起草后续投资合同，未尽事宜在后续投资文件中约定，约定内容以正式合同为准。

36. After the confirmation of all provisions hereof by the Parties, the lawyer is responsible for drafting the follow-up investment contracts. Matters not mentioned herein will be agreed in the follow-up investment documents and the final contents agreed shall be subject to formal contracts.

37. 各方承诺，除非经其他方事先书面同意或按照法律、政府或者法院的要求，本合同任何一方不得向任何第三方（各方的专业顾问除外）透露涉及本次交易的有关信息以及本合同签署及履行过程中所知悉的其他方的商业秘密。各方对上述信息负有持续保密义务，在本合同终止后的一年内仍然有效。

37. Each Party undertakes that it will not disclose to any third party (other than professional advisor of each Party) any information relevant to this transaction and other party's trade secrets acknowledged during the signing and fulfillment of this Contract unless otherwise agreed in written or required by law, government or court. Each Party is obliged to keep the information above in confidentiality, and this term shall remain valid within one year after the termination of this Contract.

38. 通知

38. Notice

本合同项下的所有通知应通过传真、快递服务或挂号邮件传送。各方之间的通知及往来信函应发送至以下所述的相应地址或传真号码（或收件人提前七（7）天向其他方发出书面通知说明的其他地址或传真号码）：

All notices hereunder shall be sent by fax, express service or registered mail. The notices and correspondences between the Parties shall be sent to the corresponding address or fax number as follows (or other address or fax numbers that the recipient notifies the other parties in written seven (7) days in advance):

*D. R.*

甲方：

地址：中国北京市海淀区地锦路 7 号院 14 号楼 5 层 501-04

邮政编码：100089

收件人：贾晓锋

电子邮箱地址：xiaofeng.jia@ncich.com.cn

Party A:

Address: 501-504, Floor 5, Building 14, No. 7 yard of Dijin Road, Haidian District, Beijing, 100089,China

Attention: Jia Xiaofeng

Email: xiaofeng.jia@ncich.com.cn


乙方：

地址：美国加利福尼亚州帕罗奥多威尔基路 4065 号 Serenium Inc

邮政编码：94306

收件人：David Rosen

电子邮箱地址：DavidR@SereniumScreen.com

Party B:

Address: Serenium Inc, 4065 Wilkie Way, Palo Alto, CA 94306, USA

Attention: David Rosen

E-mail: DavidR@SereniumScreen.com


根据本合同上述约定发出或送达的各份通知，在以下情况下视为已发出或送达：(i) 通知如果交快递递送或交专人递送或挂号邮寄发出的，则以设定为通知的地址在发送或拒收之日为有效送达日；(ii) 通知如果是以传真发出的，则以成功传送之日为有效送达日(应以自动生成的传送确认信息为证)。(iii) 如果是以电子邮件的形式发送的，以数据电文到达对方邮箱为准。

Each notice sent or delivered according to the preceding article hereof shall be regarded as sent or delivered under the following circumstances: (i) If delivered by express or personally or sent by registered mail, then the date of service or rejection to the notified address shall be regarded as the valid date of service; (ii) If sent by fax, then the date of successful service shall be regarded as the valid date of service (with automatically generated delivery confirmation message as evidence); (iii) If sent by e-mail, then it shall be subject to the time when the data message arrives at the e-mail of the

*D.R.*

recipient.

39. "**不可抗力**"指在本合同签署后发生的、本合同签署时不能预见的、其发生与后果无法避免或克服的、或该方无法控制的、妨碍任何一方全部或部分履约的所有事件，上述事件仅包括七级及以上级别地震、红色预警及以上级别台风和战争。

39. "**Force Majeure**" refers to any and all events that occur after signing of this Contract, that cannot be foreseen at the time of signing this Contract, whose occurrence and consequence cannot be avoided or overcome or in control of by the Party, and which will obstruct performance of this Contract of either Party wholly or partially, including only 7.0-magnitude and above earthquakes, red alerts and above typhoons and wars.

如果发生不可抗力事件，影响一方履行其在本合同项下的义务，则在不可抗力造成的延误期内中止履行，而不视为违约。

If one Party cannot perform its obligations hereunder due to force majeure, then it shall not be regarded as breaching of the Contract if it suspends the performance of the obligations within the term delayed by force majeure.

宣称发生不可抗力的一方应迅速书面通知另一方，并在其后的 15 日内提供证明不可抗力发生及其持续的足够证据。

The Party claiming for force majeure shall immediately notify the other Party in written and provide sufficient evidences to prove the occurrence and continuing of the force majeure within 15 days thereafter.

如果发生不可抗力事件，各方应立即开始协商，以找到合理的解决办法，并且应尽一切合理努力将不可抗力的后果减小到最低限度。如不可抗力的发生或后果对持股平台公司运作造成重大妨碍，时间超过六（6）个月，并且各方没有找到合理的解决办法，则任何一方可按照本合同第七条的规定终止本合同。

In case of force majeure, the Parties shall immediately start negotiation to seek a reasonable solution and shall make every reasonable effort to minimize the consequences of force majeure. If the occurrence or consequence of the force majeure materially hinders the operation of the Holding Company for more than six (6) months, and neither Party has found a reasonable solution, then either Party may terminate this Contract in accordance with Article VII hereof.

*D.L.*

六、违约责任

**VI. Responsibility of Default**

40. 本合同各方均应严格遵守本合同的规定，以下每一件事件均构成违约事件：

40. The Parties hereto shall strictly comply with the provisions hereof. Any of the following events shall constitute an event of default.

　　（1）如果本合同任何一方未能履行其在本合同项下的义务或承诺，以致于其他方无法达到签署本合同的目的；

Where either Party hereto fails to perform its obligations or undertakings hereunder, making the other Party impossible to reach the target for signing of this Contract;

　　（2）如果本合同任何一方在本合同中所作的任何陈述和保证在任何实质性方面不真实、不准确、不完整或具有误导性。

Where there are untrue, inaccurate, incomplete or misleading representations and warranties in any material respects made by either Party hereto.

41. 违约救济

41. Relief for breach

本合同签署后，若发生违约事件，则守约方有权要求违约方在合理的期间内予以纠正。违约方逾期仍未纠正的，守约方有权单方终止本合同，并追究违约方的违约责任。

After signing of this Contract, in case of a default event, the non-breaching party shall be entitled to require the breaching party to make correction within a reasonable period. The non-breaching party shall be entitled to terminate the Contract unilaterally and investigate the default liability of the breaching party if the breaching party fails to make correction within the period.

七、合同终止

**VII. Termination of Contract**

D.R.

42. 下列情况下本合同终止：

42. This Contract shall be terminated under the following circumstances:

（1）本合同各方经协商一致，并书面确认终止的：

（1）It is agreed and confirmed in written by the Parties hereto after negotiation;

（2）双方依据本合同签署正式合同的：

（2）The Parties sign formal contract based on this Framework Contract;

（3）甲方尽职调查后选择终止与乙方合作的：

（3）Party A chooses to terminate its cooperation with Party B after due diligence;

（4）如果乙方在此合同期限内被清算，则儿童睡眠呼吸云端操作（算法的云和分析）将无偿被转移到持股平台公司，以供在合作区域使用：

（4）If Serenium Inc is liquidated during this Contract, then the Pediatric Cloud apnea operation (cloud and analytics of the algorithm), will be transferred to the Holding Company free of charge for use in the Cooperation Territory;

（5）双方若未能在持股平台公司成立时签署正式的全部技术、专利、知识产权等（具体如附件 1 所示）的授权（许可）协议，任意一方可以解除本合同。

（5）If both Parties cannot sign the formal authorization (licensing) agreements for all technology, patents, and intellectual properties (as stated in Attachment 1) upon the formation of the Holding Company, either party has the right to terminate this Contract.


除非双方另有约定，如果本合同被解除，乙方应向持股平台公司或甲方退还已支付的全部费用，且在该等情况下，持股平台公司和/或甲方不对乙方的专利权、知识产权或产品享有任何权利和主张。

Unless otherwise agreed by the Parties, if this Contract is canceled, then Serenium Inc. shall refund all fees to the Holding Company or Party A, and under such circumstance, the Holding Company and/or Party A shall have no rights and no recourse to any of Serenium Inc.'s patents, intellectual property, or products.


八、语言文本、法律适用与争议解决

VIII. Languages, Applicable Laws and Dispute Resolution

43. 本合同用中英文两种语言书写，如有冲突以中文文本为准。

43. This Contract is made in both Chinese and English; in case of any conflict, the Chinese version shall prevail.

44. 本合同受中华人民共和国法律管辖并依其解释。

44. This Contract shall be governed by and construed in accordance with the laws of the People's Republic of China.

45. 如果各方之间因本合同产生任何争议、纠纷或索赔，各方应尽一切合理努力通过友好协商解决。如果未能解决，因本合同引起的或与本合同有关的任何争议，均提请北京仲裁委员会按照其仲裁规则进行仲裁。仲裁裁决是终局的，对双方均有约束力。仲裁语言为中文。

45. The Parties shall make all reasonable efforts to resolve any controversies, disputes or claims arising out between the Parties through friendly negotiation. If negotiation fails, any disputes arising from or with connection to this Contract shall be brought to Beijing Arbitration Commission for arbitration in accordance with its rules of arbitration. The arbitral award shall be final and binding upon the Parties. The arbitration language shall be Chinese.

（以下无正文）

(The remainder of this page is intentionally left blank)

D. R.

（框架合同签字页）

(signature page of the Framework Contract)

甲方 Party A

New Century Healthcare (International) Co. Limited

签字 Signature/盖章 Chop：

乙方 Party B

Serenium Inc.

签字 Signature/盖章 Chop：

$D. \Lambda.$

附件 1

Attachment 1

乙方用作向持股平台公司出资的技术专利、商业机密及专有技术在合作区域内的永久排他许可使用权、专家咨询服务和培训服务，具体包括：

I.  根据框架合同约定，以下技术专利、商业机密及专有技术在合作区域内的永久排他许可使用权：
如框架合同约定，拟被持股平台公司适当用于检测儿童睡眠呼吸暂停的 Serenium 专有的算法（即睡眠呼吸暂停系统的主要资产）；
诊断儿科障碍性睡眠呼吸暂停的系统和方法 国际公布号 WO 2017031489 A1 申请（申请号：PCT/US2016/048009）
基于云的脉搏血氧定量系统和方法（包括可选头带组成部分） 国际公布号 WO2017049283 A1 申请（申请号：PCT/US2016/052479）

II. 根据框架合同约定，持股平台公司将会对如下由乙方保护的商业秘密、专有技术在合作区域内享有独家使用权：
检测睡眠呼吸暂停严重性的方法和装置 专利公布号： US2012/0296182 A1; 申请号：13/561,011
通过氧气饱和度记录自动检测障碍性睡眠呼吸暂停的方法、系统和装置，专利号：US 8,862,195 B2; 申请号：13/044,846
口腔矫正，专利号：US 8,485,197 B2; 申请号：12/846,988

针对障碍性睡眠呼吸暂停的口腔矫正，国际公布号 WO2013043524 A1；申请号：PCT/US2012/055705。

III. 专家咨询服务

乙方将派出员工提供咨询服务，以协助及开发合作区域内的商业计划。
该等服务不包括差旅费、住宿费，亦不包括为了商业计划开发之目的产生的外部第三方费用，该等费用将由持股平台公司承担。
其他咨询服务由双方另行讨论确定。

三、培训服务

【培训服务待双方讨论确定。】

The perpetual exclusive licensing of technical patents, trade secrets, and know-how, experts consulting and training service contributed by Party B to the Holding Company, in the Cooperative Territories, including:

I.  The perpetual exclusive licensing, in accordance with this Contract, of the following technical patents, trade secrets, and know-how in the Cooperative Territories for:

*D. R.*

Serenium's proprietary algorithm(s), the key asset for the Pediatric Cloud Apnea System, for detecting sleep apnea in children for appropriate use as noted in the Framework Contract by the Holding Company.

System and method of diagnosing pediatric obstructive sleep apnea  WO 2017031489 A1; Application (Application Number: PCT/US2016/048009).

Cloud based pulse oximetry system and method including optional headband component  WO 2017049283 A1 Application (Application Number: PCT/US2016/052479).

II.   The Holding Company will have exclusive access to, in accordance with this Contract, the trade secrets and know-how secured by Party B in the Cooperative Territories for:

Method and Apparatus for Monitoring Sleep Apnea Severity, Pub No. US 2012/0296182 A1; Application No.: 13/561,011.

Method, System and Apparatus for Automatic Detection of Obstructive Sleep Apnea from Oxygen Saturation Recordings, Patent No. US 8,862,195 B2:   Application No.: 13/044,846.

Dental Orthotic, Patent No.: US 8,485,197 B2; Application No.: 12/846,988.

Anti-obstructive airway dental orthotic, Publication No. WO2013043524 A1:   Application No.: PCT/US2012/055705.

III.  Consulting service

Consulting services from Party B's employees to assist and develop the local business plans in the Cooperative Territories.

These services exclude travel and accommodations for local visits, and external third-party costs for the development of the business plan and will be billed at-cost to the Holding Company.

Other Consulting services will be discussed and agreed upon by the Parties.

IV.    Training service

To be discussed and agreed upon by the Parties.

*D. R.*

附件 2

Attachment 2

Structural Flow Chart/架构图

Description in Operating Plan Overview, section 23
针对合同第 23 条的运营计划概览之描述



D. R.

附件 3

Attachment 3

向Serenium Inc.付款的通知

Payment Instructions for International Payments to Serenium Inc.

Here are CNY (Chinese RMB) / CNH (Chinese offshore RMB, Hong Kong) payment instructions to Serenium Inc. in the USA:

以下是给美国 Serenium Inc. 的 CNY (人民币)/CNH（离岸人民币，香港）的支付指令：

Receiving Bank / Correspondent Bank (Pay to):

Standard Chartered Bank, Hong Kong

Address: STANDARD CHARTERED TOWER, FLOOR 15, 388 KWUN TONG ROAD, KWUN TONG, Hong Kong

SWIFT Code: SCBLHKHH

Beneficiary Bank:

Silicon Valley Bank

Address: 3003 Tasman Drive, Santa Clara, CA 95054, USA

SWIFT Code: SVBKUS6S

Routing & Transit #:   121140399

Beneficiary: Serenium Inc

Account Number:    3301045901

In case needed, Serenium Inc's USA Bank, Silicon Valley Bank, contact information:

Miguel Aguilera

Foreign Exchange Trader

3003 Tasman Drive

Santa Clara, CA   95054

Phone 408 654-7259

Mobile 415-350-5390

Fax 408 496-2569

maguilera@svb.com

*D. R.*

（框架合同签字页）

(signature page of the Framework Contract)

甲方 Party A

New Century Healthcare (International) Co. Limited

签字 Signature/盖章 Chop： 

ZHOu Jason

乙方 Party B

Serenium Inc.

签字 Signature/盖章 Chop：

（框架合同签字页）

(signature page of the Framework Contract)

甲方 Party A

New Century Healthcare (International) Co. Limited

签字 Signature/盖章 Chop：

ZHOU Jason



乙方 Party B

Serenium Inc.

签字 Signature/盖章 Chop：