

ATTORNEYS AT LAW

Transamerica Pyramid, 34th Floor
600 Montgomery Street
San Francisco, CA  94111
Tel.: 415.247.6000   F: 415.247.6001

August 26, 2020

**VIA ECF**

Hon. Nathanael Cousins
United States District Court
280 South 1st Street, Courtroom 5 – 4th Floor
San Jose, CA  95113

      Re:    *Serenium, Inc. v. Jason Zhou et al.*, Case No. 5:20-cv-02132-BLF (NC)

Dear Judge Cousins:

      Plaintiff Serenium submits this brief in response to Defendants' August 19, 2020 supplemental brief regarding Serenium's Cal. Code of Civ. Proc. § 2019.210 Trade Secret Disclosure.

      New Century's dense critique of Serenium's 2019.210 disclosure ("2019") reduces to three points: (1) Serenium must identify the secret portions of its algorithm with greater detail; (2) Serenium should identify written communications with New Century (sent over 15 months) with secret information called out specifically (evidently across all trade secret categories), *see* New Century Brief ("Br.") at 4 ("Serenium must specifically define what it contends was provided, to which of the Defendants, and what portion thereof it contends is a trade secret"); and, (3) Serenium must specify which secrets are "compilations" and which not.

      New Century's Brief is perhaps a little hard to follow, as it departs from the five categories of trade secrets set forth in the 2019, and as previously briefed and argued to the Court.  In the service of clarity, Serenium will organize this response by the five trade secrets set out in the disclosure.  But two framing points prior:

      First, these parties had an in-depth relationship over 15 months.  Serenium sent literally thousands of emails, PowerPoints, and WeChat messages to New Century, many containing confidential and trade secret information.  *See, e.g.,* Declaration of Michael Cory Zwerling In Support of Serenium's Opposition to Defendants' Motion to Dismiss (ECF 31-1).  This written record matters: it proves what Serenium gave New Century, when, and how.  For example, Serenium's Trade Secret Category No. 1 addresses, in part, a 400 person Beijing Children's Hospital study and trade secret data and conclusions concerning this study.  *See* 2019 at 3:21-22; *see also* 3:2-7 & 6:20-25.  New Century **knows** what it received on this trial, as Serenium sent it

Hosie | Rice LLP
ATTORNEYS AT LAW

Hon. Nathanael Cousins
August 26, 2020
Page 2

the documents.  New Century **has** in its files—right now—the documents communicating this data.  (Just as it now has the nine sleep kits.  Just as it has the data relating to its use of those sleep kits.)

Second, as this Court is aware, it is pragmatically impossible for a plaintiff to write a 2019 disclosure a defendant will accept, at least initially.  The statute was designed to ensure that a plaintiff designate its trade secrets with "reasonable particularity," so as to cabin discovery, prevent meritless fishing expeditions, and ensure a level playing field.  But, over the years, defendants have weaponized the 2019 disclosure obligation.  They try to use a 2019 dispute (and feigned confusion about the metes and bounds of alleged secrets) to conduct a **mini-trial** on the merits.  So, it is here.

I.      **THE FIVE CATEGORIES**.

   A.      **Patient Data, Analysis, and Conclusions**.

Trade Secret Category No. 1 consists, in-part, of data and analysis from two distinct sources: (1) a 400-patient study at Beijing Children's Hospital; and, (2) data and scoring for 16 patients using the sleep kits that Serenium gave to New Century.

On the 400-patient study, the 2019 describes what Serenium gave to New Century.  New Century has the documents and data Serenium gave to New Century on this study.  It knows exactly what was provided, when, and how.

If, however, this Court thinks that more is needed here, Serenium can amend to add detail, and identify for New Century the key documents and data on point (even though those identical documents are even now sitting in New Century's files).

On the data generated by the 16 sleep kit trials, *see* Br. at 4, ¶¶ "ITS Category 1.2" & "ITS Category 1.2a," New Century wholesale ignores what Serenium's 2019 actually says.  *See* 2019 at 3:23-27.  With full knowledge of the data for the 16 patients going in, and the scored confidential output for the same 16 patients from the algorithm, New Century could reverse-engineer the algorithm.  *See* 2019 at 7:15-23.  There is no dispute that New Century received the scored, correlative data; Serenium sent it to New Century by email and an attached Zip file in September 2018.  New Century has this data now.  What does New Century **not** understand about Serenium's position on what it did, had, and learned from its use of Serenium's sleep kits on 16 actual patients?  (New Century itself picked the 16, and used the sleep kits on these 16 people).  Since New Century indubitably has the scored output for the 16 patients, its attack on that data as not being secret or not being valuable is perforce a merits argument.

New Century evidently does not challenge Serenium Trade Secret No. 1.4.  *See* 2019 at 4:15-28.  (Serenium concedes that Trade Secret No. 1.3 could be made clearer.  *See* 2019 at

Hosie | Rice LLP
ATTORNEYS AT LAW

Hon. Nathanael Cousins
August 26, 2020
Page 3

3:28-4:14.)

### B. Algorithm.

New Century's principal complaint on Category Two—the proprietary algorithm—is that Serenium failed to draw a crisp enough line between what was public and what not. If this Court concurs with New Century, Serenium can add significant exactitude here.

On its specific criticisms, however, New Century consistently **misquotes** Serenium's 2019, and then attacks its own misquotation. It takes a sentence from, *e.g.*, the "background" section, and then pretends that this language reflects Serenium's claimed secret. **But, Serenium carefully enumerated the asserted Trade Secrets in bold, numbered paragraphs.** This is plain on the face of the document.

To cite several examples:

On the 25 Hz sample rate, Serenium's 2019 has a sentence in the "background" section (not the bold enumerated Trade Secrets) with respect to a sampling rate. *See* 2019 at 5:16-17. This is the only place the 2019 mentions a 25 Hz sampling rate. **It is not cited anywhere in the bolded enumerated Category Two trade secrets.** Defendants need to attack the Trade Secrets Serenium actually asserts, not those it did not.

As another example, Defendants argue that "in the Category Two description, Serenium claims that selection of just two inputs out of 23 is warranting of trade secret protection." Br. at 2. Defendants cite to page 5 of the 2019. Defendants appear to reference the statement at page 5, lines 19-20 of the 2019. This statement is, again, in the 2019's "background" section, not the bolded enumerated Category Two trade secret section.

### C. Sleep Kits.

Apart from the "combination" point, Serenium is at a loss to understand New Century's complaint on Trade Secret Category No. 3, the sleep kits. It has these kits, even as we write. (They are now in defense counsel's PRC office). It used these kits to collect data for 16 patients—this was work New Century did, and it knows what it did. New Century sent the raw data to Serenium to be scored by Serenium in California, and received the results back by email. It knows what it sent, as New Century sent the data, and it knows what it received as it has the email and attached Zip file.

As counsel explained at the hearing, the various aspects of the sleep kits were designed to be used together. This is explicit in the 2019. *See, e.g.,* 2019 at 10:20, 11:11-12, 12:1 & 12:18. Serenium does not know if this makes the sleep kit a "compilation" under New Century's definition. But if New Century says that this means, for example, that the software on the

Hosie | Rice LLP
ATTORNEYS AT LAW

Hon. Nathanael Cousins
August 26, 2020
Page 4

phones was itself not secret, this is wrong.

### D. <u>Business Model</u>.

Today, a stock index fund is an obvious and public idea. It was not always so. One person came up with this new business model (John C. Bogle), and that idea had huge value. A new business model can have real value.

Serenium provided reams of information (in writing) to New Century on Serenium's business model. This is set forth over pages in Serenium's 2019. *See* 2019 at 15-22. Perhaps New Century can prove that this was an obvious approach. Perhaps it can persuade the jury that New Century would have had the same idea the next month. But, these are all **merits** fights for a different day. A plaintiff does not prove its case on a 2019: it simply discloses the metes and bounds of its trade secrets. Serenium has done so.

### E. <u>Financials</u>.

So, too, on financial data. New Century knows what was disclosed, as it has the mirror-image of Serenium's document set. Its Brief reflects a **merits** attack: well the data are too old to have value, New Century has rights in the information, etc. Perhaps; perhaps not. But, this too, is a fight for a different day.

In any event, and if this Court concurs, Serenium can identify exemplary financial data and documents it provided to New Century.

Very truly yours,

 */s/ Spencer Hosie*
Spencer Hosie

Cc: Defense Counsel