1

2

3          **UNITED STATES DISTRICT COURT**

4          **NORTHERN DISTRICT OF CALIFORNIA**

5          **SAN JOSE DIVISION**

6

7    SERENIUM, INC.,                          Case No.  20-cv-02132-BLF

8                    Plaintiff,

9          v.                                 **ORDER GRANTING DEFENDANTS'
                                              MOTION TO DISMISS WITH LEAVE**
10   JASON ZHOU, et al.,                       **TO AMEND**

11                   Defendants.               [Re:  ECF 27]

12

13          Before the Court is Defendants' Motion to Dismiss under Fed. R. Civ. P 12(b)(2) and (6)

14   or to Compel Arbitration. ECF 27. The Court held a hearing on this motion on September 24,

15   2020. For the reasons discussed at the hearing and below, the Court GRANTS the Defendants'

16   Motion to Dismiss for Lack of Personal Jurisdiction WITH LEAVE TO AMEND.

17   **I.      BACKGROUND**

18          Serenium, a start-up company with its operational headquarters in Palo Alto, California,

19   was founded to develop technology relating to diagnosis and treatment of sleep apnea. ECF 14,

20   First Amended Complaint ("FAC") ¶ 1. Serenium claims that it was approached by Defendant

21   Jason Zhou ("Zhou"), a billionaire with interests in the British Virgin Islands, Cayman Islands,

22   Hong Kong, and China. FAC ¶¶ 6, 56. Zhou is the CEO of Defendant New Century Healthcare

23   Holding Co. Limited ("New Century"), which operates a number of hospitals in China. FAC ¶ 6.

24   The parties entered into negotiations regarding a potential business relationship, and, after a

25   meeting with New Century in Beijing, Serenium disclosed its proprietary technology pursuant to a

26   non-disclosure agreement ("NDA") to New Century. FAC ¶¶ 7-8, 59, 74-76. The NDA provided

27

28

that it was "governed by Illinois law." FAC ¶¶ 65.

During the course of the parties' relationship, Zhou proposed that Serenium enter into a joint venture with Defendant Beijing Jiarun Yunzhong Health Technology Company Ltd. ("Beijing Jiarun"), which was held out as part of New Century. FAC ¶¶ 9, 86-88. Zhou claimed that Beijing Jiarun did business as "Panda Pediatrics." FAC ¶ 9. Zhou later proposed that Serenium and New Century International, a New Century subsidiary,[1] form a jointly owned holding company in Hong Kong aimed at "bring[ing] Serenium's technology to China and other Asian countries." FAC ¶ 10. The Holding Company would allegedly be funded by New Century International, while Serenium would contribute the technology. *Id*. Serenium agreed, and the venture was formalized in the "Framework Contract." *Id*.  Beijing Jiarun provided the joint venture with secure computer hosting services in China and was named as a "related party" on the Framework Contract. FAC ¶ 10, 87. "Throughout 2018, and pursuant to the NDA, Serenium provided Zhou and New Century with "large amounts of proprietary information and trade secrets, including many trade secrets relating to its technology and business plan." FAC ¶ 11. During this time Serenium worked closely with Defendant Jia Xiaofeng ("Jia"), who was Zhou's "right-hand man," New Century's corporate secretary, and Beijing Jiarun's CEO. *Id*.

After lengthy negotiations, Zhou and Jia purportedly failed to take agreed-on steps to further the proposed business relationship and refused to return Serenium's proprietary technology. FAC ¶¶ 12-14. Serenium thereafter discovered that Beijing Jiarun was not part of New Century, as represented, but was a separate company owned and controlled by Zhou's wife, Defendant Juan Zhao ("Zhao"). FAC ¶ 15, 91. New Century has subsequently obtained a

---

[1] The FAC does not name the subsidiary. However, in Defendants' Motion to Dismiss, they refer to the subsidiary as "New Century Healthcare (International) Co." and "New Century International." *See* ECF 27 at 4. In their response memorandum, Plaintiffs do not dispute that this is the name of the subsidiary. *See, e.g.,* ECF 31 at 2.

controlling interest in Beijing Jiarun, and both companies allegedly are using Serenium's technology to offer diagnoses and treatment for sleep apnea in competition with Serenium. FAC ¶¶ 16-17. Serenium sued New Century, Zhou, and Jia for breach of contract for violating the NDA, *see* FAC ¶¶ 156-169, and Zhou, Jia, Zhao, New Century, and Beijing Jiarun for misappropriation of trade secrets under 18 U.S.C. §§ 1836(b) and 1837, *see* FAC ¶¶ 170-181 and California Civil Code §§ 3426, et seq., *see* FAC ¶¶ 182-190.

## II.    DISCUSSION

### A.    Lack of Personal Jurisdiction, Fed. R. Civ. P. 12(b)(2)

When a defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction over each defendant is proper. *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015). "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal  citations omitted). For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* at 801 (9th Cir. 2004) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Where there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. *See* Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. *See Panavision*, 141 F.3d at 1320 (citing Cal. Civ. Proc. Code § 410.10). For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant

forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316 (internal quotation marks and citation omitted).

The extent of "minimum contacts" required to find personal jurisdiction depends on whether specific or general personal jurisdiction is asserted. Because the parties do not contest the absence of general jurisdiction, the Court considers whether it has specific jurisdiction over the Defendants. *See* ECF 27 at 2-3; ECF 31 at 3 (describing where the Defendants work and live); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (requiring that a defendant engage in "continuous and systematic general business contacts" for the court to exercise general personal jurisdiction).

Courts in the Ninth Circuit employ a three-prong test when determining whether a nonresident defendant may be subject to specific personal jurisdiction in a forum: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802.

As an initial matter, the Court notes that many of the factual allegations Serenium offers to establish personal jurisdiction over the Defendants fail for lack of specificity. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction."). The FAC contends that the "Defendants repeatedly availed themselves of the privilege of doing business in [California], including entering several contracts with Serenium," but often fails to particularize which Defendant engaged in this availment, repeatedly referring to the Defendants collectively. *See, e.g.,*

United States District Court
Northern District of California

FAC ¶ 26c ("The Defendants initiated and participated in many calls"), ¶ 26d ("The Defendants sent raw sleep studies from Beijing to Palo Alto and San Diego"), ¶ 26e ("The Defendants entered into contracts with Serenium"), ¶ 26j ("The Defendants misappropriated Serenium's trade secrets"). Similarly, Serenium alleges that "all Defendants . . . engaged in a concerted conspiracy to misappropriate Serenium's trade secrets," but fails to detail specific acts that each Defendant took to further such a conspiracy, let alone explain how such steps established personal jurisdiction in California. FAC ¶ 27. The Court does not consider these generalized allegations in determining whether it has jurisdiction over each Defendant.

### i.   Breach of Contract Claim: Zhou, Jia, and New Century

In cases sounding in contract, the Court applies "a 'purposeful availment' analysis and ask[s] whether a defendant has 'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 802). "[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir.2008). Rather, this test requires that the defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Id*. (internal citation and quotation omitted). "[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are relevant to this inquiry, but in all cases, the "contact" must rise above "random, fortuitous, or attenuated" conduct within the forum. *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). Critically, "the relationship between the nonresident defendant, the forum, and the litigation 'must arise out of contacts that the defendant himself creates with the forum State.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation

marks omitted).

Defendants contend Serenium has failed to satisfy the purposeful availment test as there were only three in-person meetings between the parties, all of which took place in Beijing, and all future conduct contemplated by the parties concerned a business venture in Asia. ECF 27 at 7-9. They also argue that under Ninth Circuit law, communications between the parties in and of themselves do not qualify as purposeful activity. ECF 27 at 9. Serenium argues that over the course of the parties' numerous interactions, New Century, Zhou, and Jia purposefully availed themselves of the privilege of conducting business in California. ECF 31 at 8-13. In particular, they argue that in signing the NDA agreement and agreeing to form a sustained relationship with Serenium, the Defendants "necessarily contemplated sustained contacts with California." ECF 31 at 12.

The Court disagrees with Serenium's reasoning. It does not follow that sustained contacts with California—or even the contemplation of sustained contacts—inevitably flowed from the Defendants' business relationship with Serenium. In *Walden v. Fiore*, the Supreme Court "made clear" that courts "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods*, 571 U.S. at 1070. Thus, "mere injury to a forum resident is not a sufficient connection to the forum," nor is defendant's knowledge of plaintiff's "'strong forum connections' ... combined" with the "foreseeable harm" the plaintiff suffered in the forum. *Walden*, 571 U.S. at 289-90.

Despite this guidance, Serenium's theory of jurisdiction hinges upon the numerosity of the contacts between, on one hand, Serenium and its employees and, on the other, New Century, Zhou, and Jia. *See, e.g.*, ECF 31 at 9. Serenium explains that over the fifteen months the parties worked together, its employees communicated frequently with New Century and its employees (to include Zhou and Jia), ultimately developing a burgeoning business relationship. But while Serenium further alleges that Zhou, Jia, and New Century were drivers of this relationship, they do

6

not allege specific facts that speak to how Defendants formed a "substantial connection" with the state of California. *See Burger King*, 471 U.S. at 475 (quoting *McGee v. Int'l Life Ins. Co*., 355 U.S. 220, 223 (1957)); *see, e.g., Picot*, 780 F.3d at 1213 ("the fact that a contract envisions one party discharging its obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract.").

Declarations from Serenium CEO Michael Zwerling and Chairman David Rosen color in additional details about the relationship between Serenium and New Century, but largely fail to focus on the Defendants' dealings with California. For example, Zwerling contends that while he was working out of Palo Alto, California he had numerous phone calls with and "sent over 250 emails" to New Century, Zhou, and Jia, often at their request, ECF 31-1 at ¶¶ 6, 9, 13-14, 20, 22, 24, 49-50, 65-66; participated via video in a meeting between Serenium and New Century in China, *id.* at ¶ 9; executed the NDA in Palo Alto after Zhou signed it in China, *id.* at ¶ 12; sent confidential due diligence information to New Century, Zhou, and Jia at the behest of Zhou, Jia, or an employee of Jia's, *id.* at ¶¶ 14-18; discussed product development with Jia, at Jia's behest, *id*. at ¶ 26; prepared financial models and the Framework Contract for the proposed joint venture, *id*. ¶¶ 29-31, 32-52; and sent New Century proprietary sleep kits and later scored the kits after New Century used and sent them back in California, *id.* ¶¶ 8, 56-60. Rosen identifies a similar pattern of conduct. *See, e.g*., ECF 34 at ¶ 5-6 (Rosen sent over 500 communications to and participated in numerous meetings and teleconferences with New Century, Zhou, and Jia), ¶¶ 8-9, 17-18 (Rosen met with Zhou and New Century in Beijing two times), ¶¶ 21-27 (after Zhou and Jia brought up the idea of a joint venture to Rosen, the parties began to prepare the Framework Contract), ¶¶ 36-38 (Serenium CTO Shimon Shmueli flew to Beijing to explain the company's technology at the request of Zhou and Jia).

The Court agrees with Serenium that its contacts with Zhou, Jia, and New Century are significant. But the Ninth Circuit has concluded that the "ordinary 'use of the mails, telephone, or

other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'" *Medimpact*, 2020 WL 1433327, at *8 (quoting *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (internal quotation marks omitted)). And a common thread among these contacts is that none of them occurred in California and none of them concerned a business venture in California. *See E\*Healthline.com, Inc. v. Pharmaniaga Berhad*, 2018 WL 5296291 at *5 (E.D. Cal. Oct. 23, 2018) (finding it significant that a venture's "potential plans[] and discussions were based on an entirely overseas venture"). Instead, Defendants' actions suggest that they availed themselves of the privilege of conducting activities within China or Hong Kong. Serenium itself admits that China "provided a perfect market for Serenium's technology," motivating the joint venture. FAC ¶¶ 51-55. The in-person meetings between the parties occurred in Beijing, China, not California. FAC ¶¶ 59, 115-116, 122. The parties entered the NDA agreement to allow New Century and Zhou to evaluate Serenium's technology and the feasibility of a collaboration between the companies in the Chinese market. FAC ¶¶ 56-59, 62.

Serenium does allege that, as part of the joint venture, it set up a San Diego Development Center, which it shut down when the partnership went downhill. ECF 31-1 at ¶¶ 11, 27. But Serenium does not allege facts to illustrate how New Century, Zhou, or Jia's conduct served the work of this California-based center as opposed to how the center served the China-based joint venture. There is nothing that indicates the center was discussed during negotiations between the parties. Similarly, there is nothing that suggests New Century contemplated the center as a future consequence of the joint venture. *See, e.g.*, ECF 31-1 at ¶ 27 ("As Serenium began preparing to open its San Diego Development Center, we *internally* discussed potential hires . . . ") (emphasis added). In sum, Serenium fails to allege specific facts that support a conclusion that New Century, Zhou, and Jia each "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto*, 539 F.3d at 1017.

The soundness of the Court's conclusion is illuminated by *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015). In *Picot*, California-resident Picot and Michigan-resident Weston entered into an agreement to develop and sell an electrolyte formula for use in hydrogen fuel cells. *Id*. at 1209. Under the agreement, defendant Weston would "develop the technology, arrange for its testing, and assist in fund-raising and marketing" in Michigan while Picot would "fulfill[] his obligations . . . by seeking out investors and buyers in California." *Id*. at 1212-1213. In addition to his work in Michigan, Weston made two trips to California "to develop and market the technology" pursuant to the parties' contract. *Id*. at 1213. Despite this, the Court held that Weston's "transitory presence" in California was insufficient to establish personal jurisdiction there. It also concluded that Picot's own conduct in California did not alter its jurisdictional analysis, explaining that "the fact that a contract envisions one party discharging its obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." *Id*.; *see also Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1253-55 (9th Cir. 1980) ("It is not sufficient that the plaintiff is a California resident . . . or that an act outside California imposes an economic burden on a California resident."). So too here. This Court cannot exercise jurisdiction over Zhou, Jia, and New Century by virtue of the fact Serenium decided to discharge some of its contractual obligations in California.

The Court GRANTS Defendants' Motion to Dismiss Serenium's breach of contract claims for lack of personal jurisdiction with respect to New Century, Zhou, and Jia.

### ii.   Tort Claims: all Defendants

In cases sounding in tort, courts apply the purposeful direction or "effects test," which requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot*, 780 F.3d. at 1214 (internal quotation marks and citation omitted). The effects test is derived from

the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), which "stands for the proposition that purposeful availment is satisfied even by a defendant whose only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (internal quotation marks and citation omitted).

"A showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803. Just as with contract claims, district courts must look at "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. In doing so, the court determines whether the alleged injury is specific to the plaintiff or whether it is "tethered to [the forum state] in any meaningful way." *Id.* at 290.

### a.  New Century

Defendants posit that "every act undertaken by New Century that allegedly gives rise to Serenium's tort claims took place in China" and "[n]ot a single relevant action [by New Century] has a meaningful connection to this forum nor would the impact of the alleged tortious activity be felt in this forum." ECF 27 at 9. They further argue that even if their acts did cause Serenium harm, "that injury is not uniquely felt in this jurisdiction." ECF 27 at 10. Serenium responds that New Century "expressly aimed at the forum state" when it "entered into an NDA with a California company . . . had hundreds of hours of call and teleconference hours with a California company . . . had numerous emails and WeChat messages with a California company . . . sent and received patient data with a California company . . . [and] asked that Serenium send proprietary sleep kits to be sent to China." *See* ECF 31 at 14. It also explains that the injury it alleges was felt in California because "[a]fter New Century defaulted, as it had taken what it declined to purchase, Serenium abandoned its San Diego facility." ECF 31 at 15.

10

The second prong of the effects test is fatal to this inquiry because Serenium fails to allege significant conduct by New Century directed expressly at California. In *E*Healthline.com, Inc. v. Pharmaniaga Berhad*, 2018 WL 5296291 (E.D. Cal. Oct. 23, 2018), the Court considered a dispute between E*Healthline.com, a healthcare software company headquartered in California, Pharmaniaga, a Malaysian company that developed and sold medical products, and Modern, an investment company based in Saudi Arabia. *Id.* at *1. The three entities contemplated forming a joint venture to develop a pharmaceutical facility in Saudi Arabia. *Id.* In exploring the venture, the trio signed NDAs, pursuant to which E*Healthline.com provided confidential information and trade secrets to Pharmaniaga, primarily over the phone, teleconference, or email. *Id.* at *1, *5. At E*Healthline.com's request, Pharmaniaga sent two employees to California for a meeting, although no trade secrets were exchanged then. *Id.* at *5. When the venture fell apart, E*Healthline.com sued Pharmaniaga for the misappropriation of trade secrets and insisted that the district court had jurisdiction over Pharmaniaga in California because, among other things, Pharmaniaga "purposely directed their tortious action at California and engag[ed] in [misappropriation of confidential information] targeted at a plaintiff whom Pharmaniaga and Modern knew to be a resident of California." *Id.* at *1-2, *5 (internal quotation marks omitted, alterations in original). The district court, however, concluded that E*Healthline.com "failed to show any significant activities from Pharmaniaga directed at the forum" because there were no allegations that "any confidential information was misappropriated at the one California meeting" and "all choices of law, potential plans, and discussions were based on an entirely overseas venture, with no contemplation that California would play a role in any of it." *Id.* at *5.

The allegations in Serenium's complaint mirror those in *E*Healthline.com, Inc. v. Pharmaniaga Berhad*. Serenium, a company headquartered in California, entered into a joint venture with New Century, a company based overseas. Dealings between the companies concerned an overseas joint venture, with no contemplation that California, as opposed to

11

Serenium, would play any central role in the venture. Just as E*Healthline.com sent its trade secrets to Pharmaniaga in Malaysia pursuant to an NDA governed by law outside the forum state, Serenium sent its trade secrets to New Century in China pursuant to an NDA governed by law outside the forum state. And here, unlike in *E*Healthline.com, Inc. v. Pharmaniaga Berhad*, there is not a single in-person visit in the United States, let alone California, between Serenium and any employee of New Century. Serenium cannot hail New Century into court in California under these facts. *See also Medimpact*, 2020 WL 1433327, at *9 (defendant did not expressly aim its conduct at California where the alleged misappropriation "was conducted outside of California such as in the countries of Ghana and Saudi Arabia").

The Court is also unconvinced that Serenium's alleged injury, the theft of its trade secrets, is "tethered to [California] in any meaningful way." *Walden*, 571 U.S. at 290. Serenium contends that it "opened new offices and hired new employees" in San Diego to support the joint venture. *See* ECF 31-1 ¶¶ 11, 53. But Serenium doesn't plead any facts in its complaint that explain the import of the center to the joint venture or that New Century interacted with this center. *See, e.g.*, ECF 31-1 at ¶ 23 ("in anticipation of a business relationship with New Century, Serenium began *internally* discussing hiring additional employees in California") (emphasis added), ¶ 27 ("As Serenium began preparing to open its San Diego Development Center, we *internally* discussed potential hires . . . ") (emphasis added). Indeed, the only particularized joint venture-related activities Serenium attributes to the San Diego Development Center is downloading the Serenium app onto Android phones to create sleep kits and scoring sleep kit data from China. ECF 31-1 at ¶¶ 57, 59. On these alleged facts, the Court cannot conclude that this injury would be felt in any meaningful way in California, as opposed to Illinois, for example, where Serenium's technology appears to have been researched and developed and where Rosen lives. FAC ¶ 2, 39-42; ECF 34 at 4.

Serenium relies on a smattering of cases in which the court found the requisite minimum

contacts "on a factual record far less robust than that here." ECF 31 at 14. None of these cases carries the day for Serenium. In *DiscoverOrg Data, LLC v. Quantum Mkt. Research Inc*., a Delaware corporation with a principal place of business in Nevada stole over 9,300 files from plaintiff's Washington-based servers. 2019 WL 5618670, at *1 (W.D. Wash. Oct. 31, 2019). The district court discussed purposeful direction inquiry within the context of internet torts, to include the presence of the plaintiff's servers in the forum and additional contacts between the defendant and the forum. *Id*. at 3*-4*. Here, Serenium voluntarily sent its trade secrets to China, where the alleged misappropriation occurred. Nor is this case akin to *Cray Inc. v. Raytheon Co.*, where the district court concluded it had personal jurisdiction over non-forum defendant Raytheon Company ("Raytheon") in a correction of inventorship claim. 179 F. Supp. 3d 977, 987 (W.D. Wash. Apr. 5, 2016). There, Washington-based plaintiff Cray Inc. ("Cray") entered into a contract with Sandia National Laboratories to develop supercomputing technology. *Id*. at 980. As part of this contract, Cray submitted "confidential and propriety information" to an oversight committee on which James Ballew, a Raytheon employee, sat. *Id*. Separately, Cray disclosed proprietary information to Raytheon under three NDAs so the company could evaluate the possibility of using Cray products. *Id*. Raytheon and Ballew later filed two patent applications relying on the information Cray disclosed. *Id*. at 980-91. The Washington district court's conclusion was derived from the fact that the technology at issue was developed in Washington and that Raytheon solicited proprietary information from Cray and its employees in Washington as well as through Ballew, who "worked and interacted with Cray employees residing in Seattle" during his participation on the oversight committee. *Id*. at 988. Although Serenium alleges New Century solicited trade secret information from Serenium, it does not explicitly allege that its trade secrets were developed in California. *See* FAC ¶¶ 38-40 (suggesting the technology was developed in Illinois). And a character similar to Ballew does not feature in Serenium's narrative, whereby a New Century employee abused his or her legitimate position on an oversight committee to gain access to and solicit confidential

information from Serenium employees. *See also Way.com, Inc. v. Singh*, 2018 WL 6704464, at *1 (N.D. Cal. Dec. 20, 2018) (finding personal jurisdiction where a California-based company alleged that a former California-based employee removed trade secret information from its California-based repositories and provided that information to his new employer, the defendant). Finally, in *Philippe Charriol Int'l Ltd. v. A'lor Int'l Ltd.*, the Swiss defendant developed a 25-year business relationship with the California-based plaintiff in which the defendant "traveled to California, and frequently contacted [plaintiff's] personnel in California to conduct business via Skype videoconferencing, phone, email, and written communications." 2014 WL 12284076, at *5- *6 (S.D. Cal. May 2014).

Accordingly, the Court GRANTS Defendants' Motion to Dismiss Serenium's trade secret misappropriation claims for lack of personal jurisdiction with respect to New Century.

### b.  Zhou and Jia

As an initial matter, the Court concludes that because this Court lacks jurisdiction over New Century, it necessarily lacks personal jurisdiction over Zhou and Jia. However, the Court briefly addresses the parties' dispute about whether Zhou and Jia are protected under the fiduciary shield doctrine. *See* ECF 27 at 15-16; ECF 31 at 16.

Individuals are generally "not subject to personal jurisdiction based on acts undertaken in his or her corporate capacity" unless (1) the corporation "has no separate existence such that it might be treated as the alter ego" of the individuals or (2) "where individual defendants are 'primary participants in an alleged wrongdoing.'" *Richmond Techs. Inc. v. Aumtech Bus. Solutions*, 2011 WL 2607158, at *6 (N.D. Cal. Jul 1. 2011). Because Serenium does not contest that it did not allege an alter ego theory, *see* ECF 31 at 16-17, the Court addresses whether Serenium "allege[s] a viable theory of liability under which a suit might be brought against [Zhou or Jia] individually. *See Click v. Dorman Long Tech., Ltd.*, 2006 WL 2644889, at *4 (N.D. Cal. Sept. 14, 2006).

United States District Court
Northern District of California

Serenium fails to allege facts that illustrate that Zhou was a primary participant in the alleged trade secret misappropriation. With respect to Zhou, Serenium has not alleged that Zhou himself committed any tortious acts—only that he contacted Serenium to begin the parties' collaboration, attended meetings with Serenium in China, solicited confidential information from Serenium pursuant to the NDA, and proposed the parties form a joint venture. FAC ¶¶ 26a-b, 56, 59, 74, 94; *see Click*, 2006 WL 2644889, at *4 (no personal participation where "Plaintiffs allege only that defendant Wade's actions . . . in California are "tortious" in nature, appearing to rely on [] broad allegations . . . "). The Court, however, disagrees with Defendants' characterization of Jia's "case" as "even weaker" than that of Zhou's. ECF 40 at 8. Although the FAC itself is thin on facts about Jia's conduct, Zwerling's declaration is abound with such details. *See generally*, ECF 31-1 at ¶¶ 55-73 (Zwerling declaration); *see also* ECF 27-10 at ¶ 9-10 (Jia declaration). The Court is also unconvinced by Defendants' reliance on *Click* for the proposition that only "the key decision maker" can be liable under this exception. ECF 40 at 8. The Court in *Click* declined to apply principal participant liability to an individual defendant who was neither an executive officer, director, or primary shareholder. 2006 WL 2644889 at *5. Here, Jia is the secretary of New Century and works directly with Zhou, the CEO and Chairman. FAC ¶¶ 11, 23. And Rosen's declarations suggesting that Zhou was the key decision maker, *see* ECF 34 at ¶¶ 49, 53 (Rosen declaration), is not necessarily inconsistent with Jia's alleged role as primary participant in the misappropriation, *see* ECF 27-10 at ¶ 9-10 (Jia declaration).

The Court cautions that the above guidance does not serve as a decision, conditional or otherwise, on this issue, but rather serves to promote judicial efficiency in Serenium's amendment of the complaint. That being said, the Court GRANTS Defendants' Motion to Dismiss Serenium's trade secret misappropriation claims for lack of personal jurisdiction with respect to Zhou and Jia.

### c. Beijing Jiarun and Zhao

Serenium's case against Beijing Jiarun and Zhao is even less persuasive. Serenium

contends that this Court should assume jurisdiction over Beijing Jiarun because when Jia acted Beijing Jiarun acted" and "Jia acquired Serenium's trade secrets for Beijing Jiarun." *See* ECF 31 at 17. As discussed above, the Court has concluded Serenium's allegations against Jia are insufficient to establish jurisdiction over him and, even if it had not, the Court cannot impute Jia's actions as an agent of New Century onto Beijing Jiarun simply because he is an officer of both companies. *See United States v. Bestfoods*, 524 U.S. 51, 69-70 (1998) (it is a "well established principle of corporate law that directors and officers holding positions [in two corporations] can and do 'change hats' to represent the two corporations separately . . . ." (alterations omitted)).

Serenium suggests that Zhao has the requisite number of minimum contacts with California by virtue of her status as the CEO of Beijing Jiarun, meaning that "she either knew or had to know of the misappropriation, and is a proper Defendant." ECF 31 at 17. This theory is deficient not only because the Court has declined to credit Serenium's theory of jurisdiction over Beijing Jiarun, but also because Serenium fails to plead either a specific act by Zhao or an alter ego relationship between Zhao and Beijing Jiarun. *See Calder*, 465 U.S. at 790 ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there."); *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir.1989) ("a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person"); *see also Richmond*, 2011 WL 2607158, at *6 (outlining exceptions to fiduciary shield doctrine).

The Court GRANTS Defendants' Motion to Dismiss Serenium's trade secret misappropriation claims for lack of personal jurisdiction with respect to Beijing Jiarun and Zhao.

### iii.    Consent and Fed. R. Civ. P. 4(k)(2)

Serenium's surviving arguments are that Defendants consented to personal jurisdiction or that jurisdiction is proper under Fed. R. Civ. P 4(k)(2), the nationwide jurisdiction provision. *See*

United States District Court
Northern District of California

ECF 31 at 4-7, 11; ECF 31 at 18-19. Both arguments fail. Serenium's contention that Defendants consented to jurisdiction by virtue of the NDA providing for "U.S. equitable remedies" fails as a factual matter. ECF 31 at 11. Temporary restraining orders and injunctions are not unique to United States courts. ECF 31-2 at 5 (NDA § G); *see generally* John H. Langbein, Renée Lettow Lerner, & Bruce P. Smith, History of the Common Law: the Development of Anglo-American Legal Institutions (2009) (explaining the history of equitable remedies in England). Second, jurisdiction under Fed. R. Civ. P 4(k)(2) is generally only appropriate where the Defendant has voluminous contacts across the United States. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461-62 (9th Cir. 2007) (jurisdiction under Fed. R. Civ. P 4(k)(2) inappropriate where defendant had "limited contacts" with the United States). Serenium cannot cure its flimsy allegations of Defendants' contacts California with even flimsier allegations of Defendants' contacts with Illinois.

### B. Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id*. However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id*.

Although Defendants request that the Court dismiss the complaint with prejudice, ECF 27 at 32, they do not identify any factor counseling against granting Serenium leave to amend. Because Serenium may cure the deficiencies the Court had identified for the first time in this

Order, the Defendants' Motion is GRANTED WITH LEAVE TO AMEND.

### C.      Failure to State a Claim, Fed. R. Civ. P. 12(b)(6)

Because the Court grants the Defendants' motion to dismiss based on a lack of personal jurisdiction, it does not consider whether Serenium failed to state a claim under Fed. R. Civ. P. 12(b)(6). *See* ECF 27 at 16-20.

### D.      Motion to Compel Arbitration

Because the Court grants the Defendants' motion to dismiss based on a lack of personal jurisdiction, it does not consider their motion in the alternate to compel arbitration. *See* ECF 27 at 20-23.

### III.    ORDER

For the reasons discussed herein,

(1)      The Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND;

(2)      Serenium shall file a second amended complaint within 60 days of this order.


**IT IS HEREBY ORDERED.**


Dated: October 23, 2020

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

18